FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
1:26 pm, Aug 08, 2025
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

**JEREMY LANG,**

     **Plaintiff,**

**v.**

**TRANSPORTATION SECURITY ADMINISTRATION (TSA);**

**KRISTI L. NOEM, in her official capacity as Secretary of the Department of Homeland Security;**

     **Defendants.**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Jeremy Lang, appearing pro se, files this Complaint against the Transportation Security Administration (TSA), and Kristi L. Noem, in her official capacity as Secretary of the Department of Homeland Security, and in support thereof alleges as follows:

Throughout this Complaint, Plaintiff refers to the actions and knowledge of specific officials at TSA Denver, including but not limited to: Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera, Supervisory Human Resources Specialist (SHRS) Diane DiCarlo, Federal Security Director (FSD) Lawrence Nau, Transportation Security Managers (TSMs) Bobbi White, Allen Elliott, Connie Lempcke, Jeremy Scott Stetson, and Paul Griego, Assistant Federal

Security Director (AFSD) Jeff Podolski, Supervisory Transportation Security Officer (STSO)

Michael McGuire, and TSA Chief Medical Officer (OCMO) Dr. Fabrice Czarnecki (collectively

referred to herein as "TSA Denver Leadership"). These individuals are not named as defendants

in either their individual or official capacities. They are identified solely for the purpose of

establishing the agency's knowledge, intent, and causative conduct underlying the claims

asserted in this action.

## I. INTRODUCTION

1. Plaintiff brings this action under the Fifth Amendment to the United States Constitution for

   the unlawful deprivation of protected property interests without procedural due process, and

   under 5 U.S.C. §§ 2302, 7702, and 5596 for prohibited personnel practices, mixed-case

   actions involving discrimination in conjunction with appealable adverse actions, and

   recovery of back pay, benefits, and interest from unjustified personnel actions, together with

   related provisions addressing interference with federal employment benefits and systemic

   agency misconduct. While not asserting primary claims under the Rehabilitation Act,

   Americans with Disabilities Act (ADA), or Family and Medical Leave Act (FMLA), Plaintiff

   conditionally pleads such claims to the extent they are found not preempted by the Aviation

   and Transportation Security Act (ATSA), 49 U.S.C. § 44935 note. Although some courts,

   such as *Scull v. Wolf*, 2020 WL 7480961 (D. Colo.), have interpreted the ATSA to preempt

   such claims, Plaintiff asserts Scull is non-binding and its interpretation of ATSA is

   inconsistent with, or narrowed by, more recent Tenth Circuit authority, including

   *Walkingstick Dixon v. Oklahoma ex rel*. Reg'l Univ. Sys. of Okla. Bd. of Regents, 125 F.4th

   1321 (10th Cir. 2025), and *Exby-Stolley v. Board of County Commissioners*. Plaintiff also

cites *Hennagir v. Utah Department of Corrections* and *Kathy D. v. Department of Homeland Security*, EEOC OFO Appeal No. 0720100011 (2012) as persuasive authority supporting these claims in the federal employment context. References to ADA standards are made solely through the Rehabilitation Act pursuant to 29 U.S.C. § 794(d). Plaintiff demands a jury trial under Fed. R. Civ. P. 38 and supports all claims with authenticated exhibits and a sworn declaration.

## II. JURISDICTION, VENUE, SOVEREIGN IMMUNITY, AND PRESERVATION OF RIGHTS

2. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question). Venue is proper in this District pursuant to 28 U.S.C. § 1391, as the events giving rise to these claims occurred at Denver International Airport in Colorado. Sovereign immunity is waived under the Administrative Procedure Act, 5 U.S.C. § 702, which authorizes equitable relief against federal agencies, and the Back Pay Act, 5 U.S.C. § 5596(b), which permits the recovery of back pay, benefits, and interest where an agency action is found unjustified or unwarranted. Plaintiff's claims include the unlawful deprivation of protected property interests without the procedural safeguards required by the Fifth Amendment, including continued federal employment and statutory employment-related benefits such as retirement contributions under the Thrift Savings Plan and health-care coverage under the Federal Employees Health Benefits (FEHB) program.

Equitable relief sought under the APA includes front pay in lieu of reinstatement, where reinstatement is impracticable due to Plaintiff's post-termination disqualification or other

legally recognized barriers to federal reemployment. This relief is directly tied to the

unlawful deprivation of Plaintiff's protected property interest in continued federal

employment and the associated statutory benefits, including retirement contributions and

health insurance, without adequate procedural safeguards in violation of the Fifth

Amendment.

Plaintiff further preserves all rights to appellate review of any jurisdictional determinations,

including but not limited to preemption, exhaustion, and sovereign immunity defenses. This

includes review of any finding that would foreclose Plaintiff's ability to seek redress for the

unlawful deprivation of his constitutionally protected property interests, including continued

federal employment and the employment-related benefits defined by statute, without the due

process of law guaranteed by the Fifth Amendment.

3. This Court also has jurisdiction under the "mixed case" framework recognized in

   *Kloeckner v. Solis*, 568 U.S. 41 (2012), which permits direct review by a United States

   District Court when a federal employee challenges an adverse employment action that

   includes allegations of discrimination, retaliation, or the deprivation of constitutionally

   protected property interests—such as continued federal employment and statutory

   benefits—without due process, following a final agency decision. Venue is proper under

   28 U.S.C. § 1391(e), as the events giving rise to this action occurred at Denver

   International Airport in Colorado, where Plaintiff was employed and where the adverse

   actions took place.

4. Plaintiff elected to proceed under the Equal Employment Opportunity Commission

   (EEOC) mixed-case complaint process pursuant to 5 U.S.C. § 7702(a)(2), (3) and 29

C.F.R. § 1614.302, following adverse employment actions by the Transportation Security

Administration (TSA), a federal agency. Plaintiff did not pursue an appeal before the

Merit Systems Protection Board (MSPB) and instead exhausted all required

administrative remedies through the EEOC route, including receipt of a final decision

from the Office of Federal Operations (OFO) on May 21, 2025. Plaintiff now brings this

civil action within 90 days of receipt of the OFO's final decision, as permitted by the

OFO's notice and authorized by 5 U.S.C. § 7702(e)(1) and 42 U.S.C. § 2000e–16(c).

5. The EEOC completed its investigation and issued a Report of Investigation (ROI) in

2018. The EEOC's Office of Federal Operations (OFO) later issued a final decision on

May 21, 2025, denying relief.

6. Plaintiff timely filed this civil action in the U.S. District Court within the required 90-day

period after receiving the OFO's final decision, as authorized by *Kloeckner v. Solis*, 568

U.S. 41 (2012), which holds that a mixed-case complaint resolved through the EEOC

route may be appealed directly to federal district court without prior MSPB review.

7. All counts in this Complaint arise from the same nucleus of operative facts described in

the administrative complaint, the Report of Investigation (ROI), and the OFO decision.

Plaintiff raises constitutional and statutory claims under 5 U.S.C. §§ 7702, 2302, 5596,

and related provisions, which were not separately adjudicated by the EEOC but are

preserved here pursuant to the Supreme Court's holding in *Kloeckner v. Solis*, 565 U.S.

260 (2012). These claims include the unlawful deprivation of Plaintiff's protected

property interest in federal employment and employment-related benefits, without the

procedural safeguards required by the Fifth Amendment. The EEOC's administrative and

appeal process, as demonstrated in cases like *Blount v. Department of Homeland Security*,

EEOC Appeal No. 0120091316, 2011 WL 714322 (E.E.O.C. Feb. 18, 2011), provides the

framework within which such claims may arise and eventually be reviewed in federal

court.

8.  To the extent any claim is deemed untimely or not fully exhausted, Plaintiff asserts that

equitable tolling may be warranted based on the protracted approximately eight-year

administrative exhaustion period (initiated in 2017) during which the record became

tainted, Plaintiff's good faith reliance on EEOC procedures, lengthy pro se efforts, and

the newly discovered evidence of material corruption, omission, and spoliation of the

administrative record in October 2024 during its transmittal to the Office of Federal

Operations, as detailed in Count 7. These circumstances, which effectively prevented

Plaintiff from complying with deadlines despite diligent efforts, are consistent with

federal precedent on the availability and conditions for equitable tolling, including *Irwin*

*v. Department of Veterans Affairs*, 498 U.S. 89 (1990) (holding equitable tolling applies

to suits against the government, but sparingly), and other relevant federal authority.

9.  Supplemental Allegations to Preserve Claims Under ATSA and Sovereign-Immunity

Waivers:

a. Plaintiff held a non-probationary position as a Transportation Security Officer (TSO),

which conferred a constitutionally protected property interest in continued employment, as

recognized in TSA Management Directive 1100.63-1 and applicable collective bargaining

provisions (see Exhibit A).

b. The "notwithstanding" clause in the Aviation and Transportation Security Act (ATSA), 49 U.S.C. § 44935 note, does not override the Fifth Amendment's due process protections. The ATSA does not explicitly abrogate constitutional rights or eliminate statutory remedies available to federal employees.

c. Sovereign immunity is waived for the specific forms of relief sought by Plaintiff, including:

i. Back Pay Act, 5 U.S.C. § 5596(b) — permits recovery of back pay, benefits, and interest;

ii. Administrative Procedure Act (APA), 5 U.S.C. § 702 — authorizes equitable relief against federal agencies, including reinstatement, record correction, and front pay in lieu of reinstatement.

d. In addition, Plaintiff cites the following statutory provisions to support administrative remedies requested as part of the relief. While these do not waive sovereign immunity, they authorize the specific corrections sought if Plaintiff prevails:

i. Thrift Savings Plan (TSP), 5 U.S.C. § 8474(e) — authorizes correction of TSP records and redeposit of prematurely withdrawn retirement funds;

ii. Federal Employees Health Benefits Act (FEHBA), 5 U.S.C. §§ 8902(k), 8909 — governs the continuation of federal health coverage and authorizes administrative recovery of unpaid benefits.nt.

e. Pursuant to 5 U.S.C. § 7702(e) and the Supreme Court's holding in *Kloeckner v. Solis*, 568 U.S. 41 (2012), TSA screeners retain the right to bring mixed-case complaints directly in

federal district court where adverse personnel actions are coupled with discrimination or
retaliation claims.

f. EEOC precedent in *Kathy D. v. Department of Homeland Security*, OFO Appeal No.
0720100011, held TSA liable for failing to accommodate a back injury, reinforcing TSA's
continuing obligations under the Rehabilitation Act (see Exhibit B).

g. Plaintiff will submit the following exhibits in support of these allegations:

    i. Audio transcript of the August 11, 2017 recorded meeting with TSA management
(Exhibit C);

    ii. Visual timeline illustrating the sequence of protected activity, TSA responses, AWOL
charges, and termination (Exhibit D).

h. TSA's stated justification for Plaintiff's removal—purportedly based on his "inability to
maintain a regular work schedule"—was pretextual. The agency's decision was rooted in
unsupported "safety" concerns related to Plaintiff's prescribed PTSD medication, despite no
individualized risk assessment and no actual medical evidence of danger. On November 6,
2017, Plaintiff's treating physician, Dr. James R. Hill, submitted a formal TSA OCMO
medical questionnaire recommending a four-week light duty assignment while Plaintiff
transitioned off Ativan (lorazepam). TSA Denver failed to accommodate the request or
initiate an individualized functional assessment, despite clear documentation of Plaintiff's
worsening health condition. Section 1.13 of TSA Management Directive 1100.63-1 requires
the agency to "provide restrictions" for employees taking benzodiazepines; it does not
mandate discontinuation of medication or prohibit return to duty. While prohibiting Plaintiff

from returning to work, the agency simultaneously charged him with over 400 hours of

AWOL—penalizing him for absences directly caused by TSA's own directives and its delay

in processing light duty. Plaintiff was medically cleared in early 2018 and posed no

legitimate security threat. Comparator employees (e.g., TSO Virginia Hyde and TSO

Herschel Craig) were not subjected to similar scrutiny or adverse action for comparable or

more severe medical circumstances.

i. To preserve all available avenues for relief, Plaintiff conditionally pleads claims under the

Rehabilitation Act and FMLA in the "Supplemental Counts" section. These claims are

asserted only if the Court finds they are not preempted by the ATSA. All primary claims are

otherwise grounded in statutory and constitutional law that is not preempted.

### **II-A. Constitutional and Statutory Framework (Including ATSA Preemption)**

10. Plaintiff does not assert a cause of action under *Bivens v. Six Unknown Named Agents*, 403

   U.S. 388 (1971). Instead, Plaintiff brings constitutional claims under the Fifth Amendment's

   Due Process Clause through the remedial framework of Title 5 and 28 U.S.C. § 1331,

   consistent with *Bush v. Lucas*, 462 U.S. 367 (1983), and its progeny. No damages are sought

   against any federal official in an individual capacity; all relief is directed at the agency level.

11. Plaintiff further clarifies that no claims are brought under the Rehabilitation Act, ADA, or

   FMLA except as conditionally pleaded, and only to the extent the Court finds such claims

   not preempted by the Aviation and Transportation Security Act (ATSA), 49 U.S.C. § 44935

   note. While some district courts — such as *Scull v. Wolf*, 2020 WL 7480961 (D. Colo.) —

   have found such claims preempted when brought by TSOs, Plaintiff respectfully contends

*Scull* is non-binding and inconsistent with more recent and controlling authority from the

Tenth Circuit, including *Walkingstick Dixon v. Oklahoma*, *Exby-Stolley v. Board of County*

*Commissioners*, and *Hennagir v. Utah Department of Corrections*.

12. All primary claims are asserted under statutory provisions applicable to federal employees,

including 5 U.S.C. §§ 2302 and 7702, and grounded in the Fifth Amendment's due process

protections, which remain applicable to all federal personnel actions.

13. Preservation of Spoliation Claims:

Plaintiff further alleges that material spoliation of evidence occurred during the required

administrative exhaustion process before the Equal Employment Opportunity Commission

(EEOC) and the Office of Federal Operations (OFO), while Plaintiff was legally compelled to

pursue his claims through those channels as a prerequisite to judicial review. This misconduct

included the alteration, omission, and corruption of critical portions of the Record of

Investigation (ROI), materially prejudicing Plaintiff's ability to fairly present his claims

concerning the deprivation of protected property interests—specifically, his continued federal

employment and the statutory employment benefits to which he was entitled. The destruction and

manipulation of administrative evidence constitutes a separate and independent violation of

Plaintiff's Fifth Amendment right to procedural due process. Plaintiff expressly preserves all

claims, defenses, equitable tolling arguments, and requests for sanctions or adverse inferences

related to the spoliation misconduct described herein, and reserves the right to seek full judicial

scrutiny of these violations under applicable federal authority.

## III. PARTIES

14.    Plaintiff Jeremy Lang is a male adult citizen of the United States residing in Thornton,

Colorado. He was employed as a Transportation Security Officer (TSO) at Denver

International Airport from approximately October 2012 until his termination on or about

December 28, 2017. Plaintiff served for over five years and was fully vested in federal

retirement and health benefits. He brings this action to challenge violations of federal

personnel law, denial of due process, and retaliation following the exercise of protected

rights.

15.    Defendant the Transportation Security Administration (TSA) is a federal agency operating

within the U.S. Department of Homeland Security, with headquarters at 601 South 12th

Street, Arlington, Virginia. TSA maintains operational control over airport security functions

at Denver International Airport, located at 8500 Peña Boulevard, Denver, Colorado. TSA is

subject to the provisions of Title 5 of the United States Code and the Fifth Amendment to the

U.S. Constitution and is responsible for compliance with applicable federal laws and internal

agency policies. No claims are asserted under the Rehabilitation Act unless and until the

Court finds such claims not preempted by the Aviation and Transportation Security Act

(ATSA), 49 U.S.C. § 44935 note.

16.    Defendant Kristi L. Noem is sued solely in her official capacity as Secretary of the

Department of Homeland Security, the agency head responsible for the administration of the

Transportation Security Administration. Plaintiff does not assert any claims against Secretary

Noem in her personal capacity. All relief sought is against the United States and its agencies

under applicable statutory waivers of sovereign immunity, including 5 U.S.C. § 702 (APA), 5 U.S.C. § 7702(c) (mixed case review), and other relevant provisions such as 5 U.S.C. §§ 5596, 8474(e), and 8909.

17.    The following TSA Denver officials are identified solely to establish agency knowledge, discriminatory motive, and causation. Plaintiff does not bring claims against these individuals in their personal or official capacities, and no individual liability is asserted:

- Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera

- Supervisor Human Resources Specialist (SHRS) Diane DiCarlo

- Federal Security Director (FSD) Lawrence Nau

- Assistant Federal Security Director (AFSD) Jeff Podolski

- Transportation Security Managers (TSMs): Bobbi White, Allen Elliott, Connie Lempcke, Jeremy Scott Stetson, and Paul Griego

- Supervisor Transportation Security Officer (STSO) Michael McGuire

- Office of Chief Medical Officer (OCMO): Dr. Fabrice Czarnecki

18.    Defendant is an agency of the United States government and is therefore subject to the sovereign, statutory, and constitutional obligations applicable to federal employers. These include compliance with 5 U.S.C. §§ 2302, 7702, 8474, and the Fifth Amendment's due process protections.

## PRELIMINARY STATEMENT

This civil action arises from the wrongful termination of Plaintiff Jeremy Lang, a former Transportation Security Officer (TSO) at Denver International Airport, by the Transportation Security Administration (TSA), a component agency of the Department of Homeland Security. Plaintiff alleges a systemic pattern of procedural due process violations, prohibited personnel practices, retaliation for protected activity, denial of medical accommodation, and improper handling of federally protected leave—all culminating in his removal from federal service in violation of his constitutional and statutory rights. TSA's adverse actions not only violated Plaintiff's rights but also left Plaintiff without income, health coverage, or access to essential medical care, resulting in lasting harm that continues to this day.

At the core of this case is TSA Denver's retaliatory and procedurally deficient response to Plaintiff's use of Family and Medical Leave Act (FMLA)-protected leave, medical disclosures, and requests for light duty accommodation for a diagnosed back injury and PTSD. In a written notice dated December 30, 2016, TSA formally advised Plaintiff that he was eligible for renewal of FMLA leave effective October 1, 2016, and that he was allocated 240 hours of leave (comprising annual, sick, or Leave Without Pay (LWOP)) under his certification. However, as reflected in agency records (Exhibit F52), Plaintiff was ultimately credited with only 8 hours of LWOP and 8 hours of annual leave for the entirety of 2017, leaving over 220 hours of approved FMLA leave unaccounted for. This discrepancy occurred despite Plaintiff's timely submission of OPM Form 71s and supporting medical documentation.

In a June 29, 2017 email, Transportation Security Manager Paul Griego wrote: "It is my understanding that your FMLA is for your family member. If you wish to be covered under FMLA for yourself you will need to submit the proper documentation." This statement disregarded Plaintiff's valid FMLA certification for his son's serious health condition and his statutory entitlement to take leave for his own serious medical condition under 29 U.S.C. § 2612(a)(1)(D) (Exhibit F12). This misrepresentation led to further confusion, denial of leave protections, and compounding AWOL charges. In July 2017, Plaintiff was placed on a leave restriction letter authored by STSO Michael McGuire, which cited prior-year leave usage as justification, even though that leave had been approved under FMLA and supported by medical documentation. This retaliatory scrutiny further undermined Plaintiff's ability to access protected leave in 2017 and contributed to the escalating administrative pressure. Later, in a 2020 declaration, Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera falsely asserted that Plaintiff had failed to explain why it took three months to request retraction of the FMLA leave—even though TSM Bobbi White's sworn affidavit confirms Plaintiff made the request on June 29, 2017—and that Herrera himself was involved in processing it.

Later that year, following multiple fitness-for-duty evaluations, TSA became aware that Plaintiff was taking Ativan (lorazepam), a prescribed benzodiazepine medication used to treat PTSD. At that point, TSA instructed Plaintiff not to return to duty unless he submitted a doctor's letter confirming he was no longer taking the medication. Despite Plaintiff's physician submitting a light duty request during the tapering period (Exhibit F24), TSA ignored the request and continued to charge Plaintiff with AWOL. Section 1.13 of TSA Management Directive 1100.63-1 states that the agency should "provide restrictions" for employees taking benzodiazepines—not

require discontinuation or total removal from duty (Exhibit F52). TSA's decision to mandate
Plaintiff's absence while simultaneously penalizing it reflects not only pretext and retaliation, but
also a wholesale breakdown of due process protections.

Comparator employees, including TSO Virginia Hyde and TSO Herschel Craig, were not
subjected to comparable scrutiny despite using similar types of leave and, in some cases,
disclosing medical conditions. TSA Denver management made no inquiry into their prescription
medications, medical status, or leave approvals—demonstrating selective enforcement and
retaliatory targeting of Plaintiff. This disparate treatment supports an inference of pretext and
unlawful discrimination, especially when coupled with TSA's knowledge of Plaintiff's protected
EEO activity and disability-related documentation (Exhibit F52, F61).

Plaintiff's repeated attempts to rectify the situation—including audio-recorded meetings with
management, medical clearance forms, and documented HR communications—were obstructed
or ignored. Notably, in a legally recorded meeting on August 11, 2017, Deputy Assistant Federal
Security Director Miguel Herrera told Plaintiff, "The leave gets approved and you move
forward," even though the agency continued to withhold approval and ultimately cited the leave
as AWOL. This contradiction underscores the bad faith and confusion orchestrated by TSA
Denver's leadership.

Multiple sworn affidavits submitted by TSA Denver managers confirm a troubling lack of
procedural safeguards in Plaintiff's removal. Transportation Security Manager Jeremy Stetson,
who authored the December 18, 2017 Notice of Proposed Removal, admitted under oath that he

did not know Plaintiff, had no personal knowledge of his medical condition or EEO history, and relied solely on timecard data showing over 400 hours of AWOL—despite the fact that Plaintiff had been directed not to return to work unless cleared from his prescribed PTSD medication, Ativan (Exhibit F10). This failure to consider individualized medical and legal context exemplifies the agency's disregard for Plaintiff's due process rights.

The removal decision was issued without reviewing the light duty request submitted by Plaintiff's physician (Exhibit F24) and without acknowledgment of ongoing FMLA-related disputes. TSM Connie Lempcke and Human Resource specialist Diane DiCarlo provided conflicting statements regarding the handling of Plaintiff's medical documentation, further demonstrating systemic failure to engage in an interactive process or uphold due process protections (Exhibits F3, F4).

Furthermore, on or around January 18, 2018—approximately three weeks after Plaintiff's removal from federal service—Supervisor Human Resources Specialist (SHRS) Diane DiCarlo sent an email to Plaintiff stating: "Jeremy, these are the medical documents that refer to PTSD. See July 26, 2017." This communication confirms that DiCarlo was aware of Plaintiff's PTSD-related medical documentation both during and after Plaintiff's employment with TSA Denver. Her post-termination acknowledgment directly contradicts her sworn affidavit testimony, in which she characterized Plaintiff's medical condition as "immaterial" and his documentation as "irrelevant" (Exhibit F52).

Notably, Transportation Security Manager Bobbi White admitted under oath that she was aware of Plaintiff's pending EEO activity on December 18, 2017—the same day the Notice of

Proposed Removal was issued—and just ten days before Plaintiff's official termination, further supporting an inference of retaliatory motive (Exhibit F3).

The situation was further aggravated by administrative misconduct during the EEOC process. Upon reviewing the record transmitted to the Office of Federal Operations (OFO) in October 2024, Plaintiff discovered that critical evidence had been corrupted, altered, or omitted from the official Report of Investigation (ROI). Affidavits from key witnesses—including DAFSD Miguel Herrera, STSO Michael McGuire, AFSD Jeff Podolski, and Plaintiff himself—were mutilated: pages were missing, blacked out, redacted, or replaced with indecipherable symbols. These omissions suppressed testimony related to Plaintiff's protected disclosures, FMLA denials, comparator evidence, and internal grievance activity. The destruction or concealment of this material evidence directly prejudiced Plaintiff's administrative appeal and constitutes spoliation warranting judicial scrutiny, evidentiary sanctions, and equitable relief.

Plaintiff brings this action pursuant to 5 U.S.C. §§ 2302, 7702, 8474, 5596, and related provisions, and seeks declaratory, injunctive, equitable, and monetary relief. Plaintiff respectfully seeks full redress for the economic, professional, and constitutional harm inflicted by TSA Denver's actions, as detailed herein. While claims under the Rehabilitation Act and FMLA are conditionally pleaded, all primary causes of action are grounded in statutory and constitutional authority not preempted by the Aviation and Transportation Security Act (ATSA). Sovereign immunity is waived under multiple statutes, and jurisdiction is proper under the mixed-case doctrine established by *Kloeckner v. Solis*, 568 U.S. 41 (2012).

## IV. TIMELINE OF MATERIAL FACTS

## ESTABLISHING RETALIATION, LEAVE INTERFERENCE, PROCEDURAL

## VIOLATIONS, AND SPOLIATION DURING REQUIRED ADMINISTRATIVE

## EXHAUSTION

Plaintiff sets forth the following chronology of material facts, which establish a continuous

pattern of retaliation, protected leave interference, disability-based discrimination, and systemic

procedural violations committed by TSA Denver Leadership. The timeline also documents

material spoliation of evidence and administrative misconduct that occurred during the

mandatory EEOC and OFO exhaustion process, materially impairing Plaintiff's ability to fairly

present his claims and to preserve the evidentiary record for judicial review. These violations

deprived Plaintiff of fair administrative adjudication and constitute a denial of procedural due

process under the Fifth Amendment.

19.     Plaintiff incorporates by reference the allegations in paragraphs 1 through 18 above as  if

fully set forth herein.

20.     On or around October 14, 2015, Plaintiff began experiencing significant back pain and

related medical issues that interfered with his ability to perform screening duties as a

Transportation Security Officer (TSO). These impairments marked the onset of ongoing

medical challenges requiring treatment and accommodation, including leave requests

submitted under the Family and Medical Leave Act (FMLA) and pursuant to Title 5 and

agency policy.

21.     Beginning on or around October 14, 2015, and continuing thereafter, Plaintiff's attempts
to invoke his rights under the Family and Medical Leave Act (FMLA) were repeatedly
delayed, denied, or subjected to heightened and inconsistent scrutiny by TSA Denver
officials.

22.     These adverse responses occurred despite Plaintiff's eligibility under federal law and the
medically documented seriousness of the conditions affecting both himself and his family
members.

**Early Fitness-for-Duty Retaliation and Medical Surveillance**

23.     On or around early November 2015, Plaintiff received a Management-Initiated Fitness-
for-Duty Evaluation Request from TSA Denver.

24.     This action followed Plaintiff's recent use of medical leave and was not supported by any
documented misconduct or performance issue, suggesting it was motivated by suspicion or
bias rather than legitimate concern for operational readiness.

25.     The request marked the beginning of a recurring pattern in which fitness-for-duty
procedures were used punitively and without individualized assessment.

26.     On or around November 12, 2015, TSA Chief Medical Officer Dr. Fabrice Czarnecki
formally notified Plaintiff that he was medically disqualified from performing the duties of a

Transportation Security Officer (TSO) and deemed unfit for duty, based on Plaintiff's use of a
prescribed medication at the time.

27.    On or around November 14, 2015, Plaintiff was issued a Notice of Proposed Removal by
TSA Denver management, citing medical disqualification as the basis for separation.

28.    Plaintiff was concurrently placed on administrative leave pending further evaluation by
the Office of the Chief Medical Officer (OCMO).

29.    On or around November 25, 2015, TSA Chief Medical Officer Dr. Fabrice Czarnecki
reversed the earlier medical disqualification and declared Plaintiff medically qualified to
resume his TSO duties.

30.    This reversal followed a submission from Plaintiff's physician confirming he had
successfully tapered off the prescribed oxycodone.

31.    The abrupt change in medical status—occurring less than two weeks after Plaintiff had
been deemed unfit for duty—illustrates TSA's inconsistent application of fitness-for-duty
standards and supports Plaintiff's claim of arbitrary and capricious agency action.

32.    On or around January 27, 2016, TSA Denver management denied Plaintiff's request for a
reasonable accommodation in the form of a lumbar-support ergonomic chair to address
ongoing flare-ups related to his documented back condition.

33.     Despite medical records confirming the need for ergonomic assistance, TSA provided no
        interactive process or alternative accommodation, further evidencing the agency's disregard
        for Plaintiff's medical limitations and contributing to the pattern of indifference toward
        statutory and policy-based accommodation duties.

34.     On or around June 22, 2016, Transportation Security Manager (TSM) Paul Griego
        acknowledged being aware of Plaintiff's prior EEO activity, establishing knowledge of
        protected conduct.

35.     Additionally, TSM Bobbi White later confirmed in her affidavit that she was aware of
        Plaintiff's medical condition and leave-related submissions, further supporting Plaintiff's
        claim that TSA Denver management was aware of both his disability and protected activity
        during the relevant period.

36.     From approximately November 2016 through November 2017, Transportation Security
        Manager (TSM) Connie Lempcke directly supervised Plaintiff through his immediate
        supervisor, STSO Michael McGuire.

37.     In her sworn affidavit, TSM Lempcke confirmed that she was aware of Plaintiff's back-
        related medical condition and received multiple doctor's notes covering his absences.

38.     TSM Lempcke  further acknowledged that Plaintiff submitted revised OPM Form 71

leave requests during this period and used her office computer to complete them.


39.     TSM Lempcke confirmed that she hand-delivered Plaintiff's OPM Form 71 leave

documents to TSM Bobbi White and later discussed them with Deputy Assistant Federal

Security Director (DAFSD) Miguel Herrera.


40.     This evidentiary trail demonstrates that TSA Denver leadership had actual knowledge of

Plaintiff's disability, medical documentation, and ongoing attempts to resolve discrepancies

in leave categorization, supporting Plaintiff's claims of interference, denial of

accommodation, and retaliation.


### **TSA Knowledge of Protected Leave and Medical Status**


41.     On or around December 1, 2016, Plaintiff was approved for FMLA renewal retroactive to

October 1, 2016, confirming his eligibility to use leave to care for his son's serious medical

condition.


42.     Despite Plaintiff's FMLA approval, TSA Denver charged Plaintiff with Absence Without

Leave (AWOL) for multiple dates in November and December 2016.


43.      During this period, Plaintiff submitted medical documentation verifying his

incapacitation, including for absences related to his son's care.

44.     TSA Denver's failure to credit these medically supported and FMLA-protected absences

constitutes interference under FMLA principles.


45.     These procedural failures were later cited by TSA Denver as part of the justification for

Plaintiff's termination and support a finding of retaliatory motive and systemic procedural

irregularities.


46.     Between October and December 2017, TSA Denver charged Plaintiff with over 400 hours

of Absence Without Leave (AWOL) despite the fact that Plaintiff was following direct

agency instructions not to return to work while taking medically prescribed PTSD

medication.


47.     TSA explicitly required Plaintiff to obtain a doctor's letter, on official letterhead,

confirming he was no longer using the medication before he could be cleared to resume duty.


48.     Plaintiff complied with this directive under medical supervision and began a supervised

tapering process to discontinue the medication.


49.     Despite Plaintiff's ongoing compliance with the agency's requirements, TSA

management continued to accrue AWOL hours during this medically excused period.

50.     TSA Denver's disregard for its own directive and for Plaintiff's medical compliance
further evidences systemic procedural violations and retaliatory intent.

51.     In addition to the AWOL charged in 2017, TSA had previously allocated Plaintiff 240
hours of approved leave (annual, sick, and LWOP) under his FMLA certification for that
year.

52.     Despite this approval, agency records show that Plaintiff was credited with only 8 hours
of annual leave and 8 hours of LWOP, leaving the vast majority of his authorized leave
unaccounted for.

53.     This shortfall occurred despite Plaintiff's multiple submissions of OPM Form 71 requests
and supporting medical documentation verifying his absences.

54.     TSA's misclassification of Plaintiff's FMLA-protected absences, both from 2016 and
2017, was ultimately cited as part of the justification for Plaintiff's removal on December 28,
2017, supporting Plaintiff's claims of retaliatory conduct, procedural misconduct, and
pretextual justification for termination.

### Non-Selection and Misclassification of Leave and AWOL Escalation

55.     On or around May 1, 2017, Plaintiff was not selected for a Lead Transportation Security

Officer (LTSO) position despite meeting all eligibility criteria and receiving positive

performance evaluations.

56.     During the selection process, Assistant Federal Security Director (AFSD) Jeff Podolski

claimed he was not involved in interview decisions.

57.     However, an internal email from HR Specialist Tracy Isabell to SHRS Diane DiCarlo

identified Podolski as the selecting official for the LTSO position.

58.     Transportation Security Manager (TSM) Connie Lempcke was also assigned to facilitate

the process.

59.     Agency records show that the candidates interviewed and selected for the LTSO position

did not identify as disabled, and the conflicting accounts regarding selection authority,

combined with Plaintiff's exclusion despite his qualifications, support a plausible inference

of discriminatory motive and retaliation for Plaintiff's prior protected activity, including his

EEO engagement and medical leave requests.

60.    On or around May 24, 2017, Plaintiff was not selected for a Lead Transportation Security

Officer (LTSO) position under job announcement number DEN-17-255421, despite meeting

all listed qualifications and maintaining a record of positive performance evaluations.

61.    This non-selection occurred in close temporal proximity to Plaintiff's protected activity,

including the submission of medical documentation, requests for leave under his FMLA

certification, and ongoing EEO activity.

62.    TSA failed to provide a legitimate, non-retaliatory explanation for bypassing Plaintiff for

the LTSO position.

63.    The timing of Plaintiff's non-selection, combined with his qualifications and the absence

of a consistent justification, supports an inference of reprisal and discriminatory motive in

violation of 5 U.S.C. § 2302(b)(10) and § 2302(b)(12).

64.    On or around May 28, 2017, Plaintiff submitted advance FMLA paperwork for future-

dated appointments to care for his son, consistent with agency policy outlined in the TSA

Handbook. These submissions were made in good faith and in accordance with Plaintiff's

approved FMLA certification. This action constituted protected activity under federal leave

laws and reflected Plaintiff's ongoing efforts to comply with procedural requirements while

supporting a family member with a serious medical condition.

**TSA Leadership Creating Administrative Confusion**

65.     On or around June 29, 2017, Transportation Security Manager (TSM) Paul Griego sent an

email to Plaintiff stating: "If you wish to be covered under FMLA for yourself, you will need

to submit the proper documentation. Please clarify what days you are using FMLA for your

son and what days are for your illness."


66.      This correspondence created administrative confusion by failing to acknowledge

Plaintiff's prior submission of medical documentation and his ongoing request to reclassify

FMLA hours into Leave Without Pay (LWOP), consistent with TSA Management Directive

1100.63-1.


67.     TSA Management Directive 1100.63-1 authorizes up to six months of LWOP with

appropriate medical justification; however, Plaintiff's properly submitted OPM Form 71

requests were not processed in accordance with this policy.


68.     The email from TSM Griego, and TSA's subsequent handling of Plaintiff's leave

requests, illustrates TSA's pattern of selectively scrutinizing Plaintiff's medical leave requests

and supports Plaintiff's claims of retaliation and procedural interference.

**Efforts to Reclassify FMLA Leave Under TSA Directive 1100.63-1**

69.     On or around June 29, 2017, Transportation Security Manager (TSM) Bobbi White

received an email from Plaintiff formally requesting to retract previously designated FMLA

leave for his son's medical appointments and to convert those hours to Leave Without Pay

(LWOP) under Management Directive 1100.63-1.

70.     TSM White forwarded the request to TSM Annie Velasco, who responded that she would

confer with Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera to facilitate

processing.

71.      At that time, DAFSD Herrera was aware of both Plaintiff's underlying medical condition

and the reclassification request.

72.     Affidavits from TSM Bobbi White and TSM Connie Lempcke both confirm Herrera's

contemporaneous awareness of Plaintiff's leave documentation and supporting medical

submissions.

73.     Nevertheless, in a sworn declaration dated January 31, 2020, DAFSD Herrera later

claimed that Plaintiff never explained the delay in requesting the FMLA-to-LWOP change,

despite a clear documentary trail refuting that assertion.

74.     Plaintiff had been approved for 240 hours of combined annual, sick, and LWOP leave

under his FMLA certification for 2017.

75.     Agency records reflect that Plaintiff received only 8 hours of annual leave and 8 hours of

LWOP for the entire calendar year, further supporting Plaintiff's claims of leave interference,

administrative pretext, and retaliatory treatment.

76.     On or around June 29, 2017, Transportation Security Manager (TSM) Bobbi White stated

that Human Resources Specialist Tracy Isabell was responsible for completing all FMLA-

related processing at TSA Denver.

77.     Tracy Isabell's role placed her in a position of direct awareness regarding Plaintiff's

ongoing difficulties obtaining appropriate leave, including documented delays, denials, and

heightened scrutiny applied to Plaintiff's FMLA requests.

78.     This knowledge, attributed to a designated HR authority, reinforces Plaintiff's assertion

that the agency's actions were not isolated errors but reflected a broader pattern of

administrative obstruction and retaliatory oversight.

79.     On or around June through July 2017, Plaintiff sustained a back injury while driving long

distances to transport his son to scheduled medical treatment. The prolonged travel

aggravated Plaintiff's preexisting back condition, rendering him unable to perform essential

job functions and prompting additional medical documentation and leave submissions.

80.     This incident provides further support for Plaintiff's protected leave status and highlights the agency's failure to accommodate Plaintiff's medically substantiated absences.

81.     Between approximately July 1 and July 28, 2017, Plaintiff was absent from work due to a medically documented back injury that rendered him temporarily unable to perform his duties. Plaintiff's ability to provide care for his son changed after July 1, 2017, when the physical demands of prolonged driving caused a sudden aggravation of his existing back condition. Prior to this date, Plaintiff had submitted prewritten FMLA leave forms intending to care for his son as documented. However, after the July 1 incident, Plaintiff was medically incapacitated, and his wife assumed caregiving responsibilities. Plaintiff proactively communicated this change, submitting requests to convert the now-inapplicable FMLA hours to non-FMLA LWOP under TSA Directive 1100.63-1. TSM Paul Griego further contributed to the confusion by incorrectly informing Plaintiff via email that FMLA could not be used for his own medical condition, despite his eligibility—an error which undermined Plaintiff's ability to correctly code leave. Despite these efforts, TSA officials—including TSM Bobbi White—requested a blanket set of medical documentation from May 28 to July 13, 2017. The OFO's decision, which relied on a flawed and incomplete record, mischaracterized this agency-driven documentation window as if Plaintiff willfully obscured dates. In reality, Plaintiff accurately documented a mid-period injury and promptly updated the agency regarding evolving medical limitations. This further supports Plaintiff's claims of procedural misinterpretation, retaliatory scrutiny, and administrative record distortion.

82.    During this period, Plaintiff submitted OPM Form 71 leave requests along with medical

documentation supporting his inability to work.

83.    Plaintiff's leave submissions were intended to convert previously scheduled FMLA leave

into Leave Without Pay (LWOP) pursuant to TSA Management Directive 1100.63-1.

84.     Despite these efforts, TSA Denver failed to appropriately process or credit Plaintiff's

leave and instead marked Plaintiff's medically supported absences as AWOL.

85.    On or around July 1, 2017, Transportation Security Manager (TSM) Bobbi White

acknowledged receipt of Plaintiff's OPM Form 71 submissions requesting the reclassification

of unused FMLA hours to LWOP.

86.    TSM Annie Velasco stated that she would confer with Deputy Assistant Federal Security

Director (DAFSD) Miguel Herrera to facilitate processing of Plaintiff's reclassification

forms.

87.    TSM Connie Lempcke confirmed that the forms were complete and personally delivered

them to TSM White, who then provided them to DAFSD Herrera.

88.    Despite the documented transmission of Plaintiff's forms and supporting medical

documentation, DAFSD Herrera later claimed in his affidavit that he did not receive the

necessary paperwork to process the request, and in a sworn January 31, 2020 declaration,

Herrera alleged that Plaintiff failed to explain the delay—an assertion directly contradicted

by the contemporaneous paper trail and multiple corroborating affidavits.

89.     Agency records show that Plaintiff, though allocated 240 hours of annual, sick, and

LWOP leave under his 2017 FMLA certification, was ultimately credited with only 8 hours of

annual leave and 8 hours of LWOP, further supporting Plaintiff's claims of retaliation,

procedural irregularity, and interference with protected leave.

90.     On or around July 6, 2017, Plaintiff sent an email to Transportation Security Manager

(TSM) Paul Griego enclosing updated OPM Form 71 submissions, formally requesting that

112 previously designated FMLA hours for his son's medical appointments be reclassified as

Leave Without Pay (LWOP).

91.      This request was consistent with Plaintiff's ongoing efforts to convert unused FMLA

hours to LWOP due to his own medical condition, in accordance with TSA Management

Directive 1100.63-1.

92.     Plaintiff's communication reiterated earlier verbal and written efforts to correct the leave

records and ensure compliance with agency procedure.

93.     TSA Denver failed to act on the request, and the hours remained misclassified as Absence

Without Leave (AWOL), further supporting Plaintiff's claims of leave interference,

retaliatory motive, and procedural noncompliance.


94.     On or around July 7, 2017, Plaintiff received an email from Transportation Security

Managers (TSMs) Annie Velasco, Paul Griego, Bobbi White, Allan Elliott, and Chrystal

Doiron, as well as Human Resources Specialist Tracy Isabell, requesting additional medical

documentation to support Plaintiff's request to reclassify previously approved FMLA leave

as Leave Without Pay (LWOP).


95.     The email stated that the documentation would be reviewed by senior TSA Denver

management for final approval.


96.     This request for additional information followed Plaintiff's repeated prior submissions of

OPM Form 71s and supporting medical documentation verifying his medical condition and

leave status.


97.     The agency's failure to timely process Plaintiff's reclassification request despite having

sufficient information further evidences TSA's pattern of delay, heightened scrutiny, and

retaliatory oversight, supporting Plaintiff's claims of interference with protected leave rights

and systemic procedural irregularities.

**Retaliatory Use of Fitness-for-Duty and Leave Restrictions**

98.     On or around July 13, 2017, Transportation Security Managers (TSMs) Bobbi White and
       Connie Lempcke submitted a Management-Initiated Fitness-for-Duty Evaluation Request
       concerning Plaintiff, despite already having received medical documentation supporting
       Plaintiff's request to reclassify designated FMLA hours as Leave Without Pay (LWOP).

99.     This evaluation request was made without any intervening safety incident, performance
       issue, or operational justification, and while Plaintiff was actively engaged in efforts to
       correct his leave records in accordance with TSA policy.

100.    The timing and context of the Fitness-for-Duty Evaluation Request support Plaintiff's
       claim that TSA Denver used the fitness-for-duty process as a retaliatory mechanism rather
       than a good-faith safety assessment.

101.    On or around July 20, 2017, Plaintiff submitted a completed return-to-work questionnaire
       in full compliance with TSA Denver's directive. His timely response further demonstrated
       cooperation with agency requirements and his intent to resolve the situation through proper
       channels.

102.    On or around July 21, 2017, TSA Denver formally initiated an Attendance and Leave
       Case against Plaintiff.

103.    According to agency records, the final action resulting from this case was Plaintiff's

removal from federal service.

104.    At the time disciplinary proceedings were initiated, Plaintiff had been allocated 240

hours of combined leave under his approved FMLA certification but was still actively

attempting to resolve improperly classified absences with TSA Denver management.

105.    TSA Denver's decision to initiate disciplinary action under these circumstances

reinforces the inference of retaliatory motive and systemic procedural misconduct.

106.    On or around July 25, 2017, Physician Assistant Richard Hazen documented in Plaintiff's

medical record that Plaintiff's disability symptoms were being effectively managed with a

prescribed benzodiazepine.

107.     During the same visit, Plaintiff informed Hazen that he was having difficulty locating a

psychiatrist who accepted his insurance, which further complicated Plaintiff's continuity of

health care.

108.    At this stage, TSA Denver had not yet instructed Plaintiff to discontinue his prescribed

benzodiazepine medication; the agency's formal directive regarding discontinuation would

not arise until a subsequent Fitness-for-Duty determination.

109.    These contemporaneous medical records underscore Plaintiff's adherence to medical advice and the absence of any documented safety concern by TSA Denver at that time.

110.    On or around July 28, 2017, Plaintiff returned to work following his back injury and was immediately placed on leave restriction by Supervisor Transportation Security Officer (STSO) Michael McGuire.

111.    The leave restriction was imposed despite Plaintiff's assertion that he had provided valid doctor's notes covering his previously marked AWOL dates

112.    STSO McGuire's review of Plaintiff's absences included dates from 2016 during which Plaintiff had been eligible for and approved to use FMLA leave to care for his son.

113.    Agency records and communications with Transportation Security Manager (TSM) Paul Griego confirm that Plaintiff had an FMLA renewal effective October 1, 2016.

114.    Although Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera eventually approved 24.15 hours of 2016 AWOLs for correction, Plaintiff was ultimately credited with only 8 hours of annual leave and 8 hours of LWOP for the entire calendar year of 2017, despite being allocated 240 hours under his approved FMLA certification, further supporting Plaintiff's claims of procedural irregularity, leave interference, and retaliatory motive.

115.    Also on or around July 28, 2017, TSA Denver formally placed Plaintiff on a leave

restriction, significantly impeding his ability to manage his medical condition and utilize

FMLA-protected leave. This action, taken amid Plaintiff's active efforts to resolve leave

issues and comply with agency requirements, reinforces the pattern of targeted oversight,

heightened scrutiny, and administrative obstruction forming the basis of Plaintiff's broader

claims.

116.    On or around July 28, 2017, TSA Denver initiated an internal investigation into Plaintiff

for alleged Absence Without Leave (AWOL), despite Plaintiff's prior submission of medical

documentation and approved leave under his FMLA certification.

117.     At the time the investigation was initiated, Plaintiff was actively attempting to correct

his leave records and had complied with agency procedural requirements for requesting leave

adjustments.

118.    TSA Denver's decision to pursue disciplinary action under these circumstances reflects a

retaliatory motive inconsistent with merit system principles and statutory protections, and

further evidences the discriminatory and pretextual nature of the agency's actions.

**Continued Efforts to Reclassify FMLA Leave Under TSA Directive 1100.63-1**

119.    On or around August 8, 2017, Transportation Security Manager (TSM) Connie Lempcke
acknowledged receiving an email from Plaintiff disputing the accuracy of a report she had
issued regarding his remaining FMLA hours.

120.    In this communication, Plaintiff reiterated that his earlier request to convert unused
FMLA hours to Leave Without Pay (LWOP) remained unresolved, despite his submission of
multiple OPM Form 71s and supporting medical documentation.

121.    TSM Lempcke's subsequent admissions regarding Plaintiff's leave requests underscore
TSA Denver's ongoing failure to properly manage leave records and reinforce Plaintiff's
claims of systemic interference with protected leave rights.

122.    On or around early August 2017, Plaintiff met with Transportation Security Managers
(TSMs) Bobbi White and Connie Lempcke to follow up on his ongoing request to reclassify
previously designated FMLA leave as Leave Without Pay (LWOP).

123.    During the meeting, TSM Lempcke informed Plaintiff that the only remaining step was
to ensure that his new OPM Form 71s matched the requested leave dates.

124.    Plaintiff immediately went to TSM Lempcke's office, used her government computer to
complete the corrected forms, and submitted them.

125.    TSM Lempcke then hand-delivered the completed forms to TSM Bobbi White, who

forwarded them to Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera.

TSM Lempcke later confirmed that she spoke with Herrera, who acknowledged receipt of the

forms.

126.    In sworn statements, both TSM Bobbi White and TSM Connie Lempcke confirmed that

Plaintiff had submitted the necessary medical documentation supporting his request for

reclassification.

127.    TSM Allan Elliott acknowledged that Plaintiff's AWOL charges were under investigation

by "other management personnel," and Supervisor Human Resources Specialist (SHRS)

Diane DiCarlo confirmed that TSMs White, Lempcke, and Paul Griego were actively

investigating Plaintiff's AWOL status and leave usage.

128.    On or around August 11, 2017, Plaintiff, experiencing heightened emotional stress due to

TSA Denver's continued mishandling of his leave, requested a meeting with management.

129.    The entire meeting was lawfully recorded pursuant to Colorado Rev. Stat. § 18-9-304.

130.    During the meeting, Deputy Assistant Federal Security Director (DAFSD) Miguel

Herrera made several key admissions and contradictory statements, including the comment,

"This seems to be happening over and over again with you," signaling a pattern of adverse treatment toward Plaintiff.

131.    Herrera also stated, "The I-band managers had the responsibility to look at AWOLs and resolve," but later denied having seen Plaintiff's documentation, despite having previously acknowledged receipt of the relevant forms.

132.    During the meeting, Plaintiff voiced his concern about losing his job due to unresolved AWOL charges and described the emotional toll, stating the year had been "shitty" due to medical hardships.

133.    Herrera responded dismissively by telling Plaintiff to "suck it up."

134.    When Plaintiff asked whether submitting proper documentation would result in approved leave, Herrera stated, "The leave gets approved and you move forward," but TSM Allan Elliott immediately contradicted Herrera by stating, "Can't say that, once the investigation is done you will find out."

135.    This exchange, captured on audio recording, reveals false assurances, inconsistent internal messaging, and the severe emotional distress Plaintiff endured as a result of procedural delays, retaliatory scrutiny, and bad-faith conduct by TSA Denver, further supporting Plaintiff's claims of constructive discharge, leave interference, and retaliatory

motive. This recording, provided as Exhibit C, captures the tone and substance of the

agency's retaliation and supports claims of procedural bad faith.

## Retaliatory Use of Fitness-for-Duty

136.    On or around August 14, 2017, Transportation Security Managers (TSMs) Bobbi White

and Connie Lempcke submitted a second Management-Initiated Fitness-for-Duty Evaluation

Request for Plaintiff.

137.    This repeated use of fitness-for-duty evaluations—despite Plaintiff's prior compliance

with medical documentation requirements and the absence of any new safety incidents—

demonstrates TSA Denver's pattern of weaponizing administrative processes to retaliate

against Plaintiff's protected leave activity and avoid processing his valid leave requests.

## Failure to Accommodate Medical Conditions and Light Duty Requests

138.    On or around August 16, 2017, Plaintiff sent an email to TSM Connie Lempcke seeking

an accurate accounting of his remaining FMLA hours and AWOL designations.

139.    In his communication, Plaintiff reiterated that the absences at issue were supported by

proper medical documentation and should have been recategorized into appropriate leave

categories pursuant to TSA Management Directive 1100.63-1. Plaintiff's continued efforts to

resolve leave discrepancies through internal procedures further demonstrate his good-faith

compliance with agency policy.

140.    Also on or around August 16, 2017, Transportation Security Manager (TSM) Connie

Lempcke sent an internal email to TSM Bobbi White acknowledging receipt of Plaintiff's

concerns regarding the handling of his FMLA requests and employment status.

141.    In this internal communication, TSM Lempcke referenced Plaintiff's statements that

TSA Denver was "dangling his job over his head" and engaging in conduct that included

delaying, denying, and scrutinizing Plaintiff's FMLA-protected leave requests.

142.    Lempcke further acknowledged that Plaintiff asserted TSA Denver management was

ignoring his repeated attempts to resolve his leave and AWOL issues, and her internal

documentation of these concerns lends further credibility to Plaintiff's claims of retaliatory

oversight, administrative obstruction, and procedural misconduct.

143.    On or around the same date, August 16, 2017, Plaintiff emailed Transportation Security

Managers (TSMs) Bobbi White and Connie Lempcke to reiterate that the 112 hours of

unused FMLA leave—originally designated for his son's medical care and requested to be

reclassified as Leave Without Pay (LWOP)—still had not been restored to his FMLA leave

bank.

144.    TSA Denver's ongoing failure to correct Plaintiff's leave records, despite repeated

written requests and documented supporting medical submissions, underscores the agency's

sustained interference with Plaintiff's protected leave rights and contributes to Plaintiff's

claims of pretextual justification and systemic retaliation.


145.    On or around August 22, 2017, Physician Assistant Richard Hazen documented in

Plaintiff's medical record that Plaintiff's disability symptoms remained appropriately

managed with a prescribed benzodiazepine medication.


146.    In the same contemporaneous medical record, Hazen noted that Plaintiff's mental health

—particularly symptoms of depression—had begun to deteriorate due to escalating stress

caused by TSA Denver's ongoing scrutiny and mishandling of Plaintiff's medical leave. This

documented medical evidence directly links Plaintiff's emotional distress to his workplace

conditions and supports Plaintiff's claims of emotional harm and a hostile work environment.


147.    On or around August 23, 2017, Plaintiff emailed Transportation Security Managers

(TSMs) Bobbi White and Connie Lempcke, clarifying that he had previously submitted

prewritten OPM Form 71s designating leave for his son's medical appointments, but due to

an unforeseen back injury, those entries were no longer accurate and needed to be corrected

to reflect Leave Without Pay (LWOP).

148.    In this communication, Plaintiff emphasized that TSA Denver already possessed the
necessary medical documentation to resolve the matter, but that he had been "going in
circles" attempting to have the leave properly reclassified.

149.    Plaintiff further reiterated that Transportation Security Manager (TSM) Paul Griego had
previously informed him he could not use his approved FMLA certification for his own
medical condition—despite the certification expressly covering both his and his son's serious
health conditions.

150.    This contemporaneous email underscores TSA Denver's ongoing failure to properly
administer leave policy and evidences the agency's retaliatory and obstructive approach
toward Plaintiff's protected activity.

151.    On or around August 24, 2017, Transportation Security Manager (TSM) Bobbi White
emailed Plaintiff requesting additional medical documentation to cover the period from May
28, 2017, through July 13, 2017.

152.    Plaintiff promptly complied with the request and submitted the supporting medical
documentation to TSA Denver in accordance with agency procedure.

153.    Despite Plaintiff's full cooperation, TSA continued to delay and obstruct the
reclassification of his leave, further evidencing a pattern of administrative pretext and
retaliatory conduct that ultimately contributed to Plaintiff's wrongful termination.

154.    On or around August 30, 2017, Plaintiff formally submitted a written request for light

duty accommodation, citing limitations related to his back condition and the ongoing Office

of Chief Medical Officer (OCMO)/Fitness-for-Duty evaluation process.

155.    Plaintiff's light duty request explicitly noted that it "coincides with this," referencing

both the pending fitness evaluation and his continuing efforts to comply with TSA directives

while accommodating his documented medical restrictions.

156.    Despite the legitimate medical basis and procedural alignment of Plaintiff's light duty

request, TSA Denver failed to respond to or act upon the submission, further reinforcing

Plaintiff's claims of failure to accommodate and retaliatory disregard for his medical needs.

**<u>Disparate Treatment Compared to Similarly Situated Employees</u>**

157.    On or around September 5, 2017, TSA Denver leadership approved a Family and Medical

Leave Act (FMLA) request for another employee, Transportation Security Officer (TSO)

Virginia Hyde.

158.    At the same time, Plaintiff's allocated 240 hours of approved leave (comprising annual,

sick, and Leave Without Pay (LWOP)) under his FMLA certification remained uncredited,

and his repeated written requests to reclassify 112 unused FMLA hours continued to be

ignored by TSA Denver management.

159.     Agency records do not indicate that TSA Denver inquired into or scrutinized whether TSO Hyde was taking any prescribed medication as a condition for approving her FMLA leave, highlighting a stark contrast in how Plaintiff was treated.

160.     This differential handling of similarly situated employees supports Plaintiff's claim of disparate treatment and strengthens his allegations of disability-based discrimination and retaliatory conduct under applicable federal personnel statutes.

161.     On or around September 8, 2017, Plaintiff submitted a formal written complaint to TSA Denver leadership documenting the agency's ongoing failure to address his Family and Medical Leave Act (FMLA) concerns.

162.     In his internal complaint, Plaintiff reported that TSA Denver had consistently ignored his leave-related communications and subjected his FMLA usage to excessive delay, denial, and heightened scrutiny. Plaintiff submitted the complaint through official internal channels as part of his good-faith efforts to resolve the matter administratively.

163.     Despite receiving Plaintiff's formal complaint, TSA Denver took no corrective action to address the issues raised, further supporting Plaintiff's claims of interference with protected leave, retaliatory conduct, and a hostile work environment.

164.    On or around September 8, 2017, Supervisor of Human Resources (SHRS) Diane

DiCarlo contacted Plaintiff's medical provider to verify the authenticity and relevance of

Plaintiff's submitted doctor's notes.

165.    Plaintiff's medical provider confirmed that the documentation related to Plaintiff's back

condition—not his son's—thereby validating Plaintiff's eligibility for protected leave under

applicable federal laws and agency policy.

166.    Despite receiving confirmation of Plaintiff's eligibility, SHRS DiCarlo refused to

approve the reclassification of Plaintiff's AWOL hours and continued to delay corrective

action.

167.    In her sworn affidavit, DiCarlo later characterized Plaintiff's medical condition as

"immaterial," described his documentation as "irrelevant," and alleged that Plaintiff had

"multiple mental health issues," despite having earlier initiated a verification call. These

contradictions further highlight the retaliatory nature of TSA Denver's response and support

Plaintiff's claims of discriminatory scrutiny, procedural misconduct, and bad-faith

administration of protected leave rights.

168.    On or around September 14, 2017, Plaintiff, frustrated by TSA Denver's continued failure

to engage in the interactive accommodation process, sent an internal email invoking

Management Directive 1100.63-1, Section K-3(e), which outlines an employee's right to

request accommodations and mandates the proper processing of medical documentation.

169.     In his email, Plaintiff described TSA Denver's pattern of "passing the buck" and

perpetuating a "circle of lies" regarding the handling of his FMLA and Leave Without Pay

(LWOP) requests.

170.    Plaintiff specifically alleged that agency leadership was ignoring his repeated efforts to

resolve leave discrepancies, deliberately delaying resolution, and improperly scrutinizing his

medical submissions without justification.

171.    Despite Plaintiff's allocation of 240 hours of approved leave (annual, sick, and LWOP)

under his 2017 FMLA certification, agency records confirm that Plaintiff ultimately received

only 8 hours of annual leave and 8 hours of LWOP for the entire year, further evidencing

systemic interference with his protected statutory rights.

172.    On or around September 19, 2017, TSA Denver leadership approved Transportation

Security Officer (TSO) Herschel Craig's Family and Medical Leave Act (FMLA) request

without delay, heightened scrutiny, or inquiry into his medical condition or prescribed

medications.

173.    By contrast, despite Plaintiff's valid certification allocating 240 hours of leave,

Plaintiff's FMLA requests were subjected to repeated delays, denials, and administrative

obstruction, and Plaintiff's request to reclassify 112 unused FMLA hours remained

unresolved.

174.    TSA Denver's disparate treatment of similarly situated employees supports an inference

of discrimination based on medical condition and retaliation for Plaintiff's protected activity,

in violation of 5 U.S.C. § 2302(b)(10) (discrimination based on conduct) and § 2302(b)(12)

(violation of merit system principles).

175.    On or around September 29, 2017, Plaintiff's treating physician, Dr. Monica Salas

Meyers, documented in Plaintiff's medical record that Plaintiff's disability was continuing to

deteriorate.

176.    This medical notation occurred during a period of extreme emotional and physical stress

directly attributable to TSA Denver's failure to accommodate Plaintiff's medical condition,

failure to approve his protected leave requests, and persistent threats of disciplinary action.

177.    Dr. Meyers' contemporaneous medical record corroborates Plaintiff's assertions that

TSA Denver's actions materially worsened his health, reinforcing his claims of unlawful

interference under 5 U.S.C. § 2302(b)(12) and, conditionally, disability discrimination under

the Rehabilitation Act of 1973.

178.    On or around October 12, 2017, Assistant Federal Security Director (AFSD) Jeff

Podolski acknowledged that he had sent Plaintiff a calendar invitation to attend a meeting

with TSA Denver management and Human Resources.

179.    Plaintiff was unable to attend the meeting because he was at a pre-scheduled

appointment with his treating physician, providing medical information requested by TSA

Denver in connection with an ongoing Management-Initiated Fitness-for-Duty Evaluation.


180.    Plaintiff's absence from the meeting was directly caused by his compliance with TSA's

medical documentation demands. TSA's failure to reasonably accommodate this conflict—

and its continued pursuit of disciplinary action despite full knowledge of Plaintiff's

obligations—further evidences the agency's procedural bad faith and retaliatory motive.


## AWOL Charges, Medication-Based Disqualification, and Policy Violations Under MD 1100.63-1

181.    On or around October 17, 2017, Assistant Federal Security Director (AFSD) Jeff

Podolski documented that the Office of Chief Medical Officer (OCMO), led by Dr. Fabrice

Czarnecki, had determined Plaintiff was "unfit for duty" based on his prescribed use of

Lorazepam, a benzodiazepine medication.


182.    Following this determination, local TSA Denver management instructed Plaintiff that he

would be required to obtain documentation from his medical provider confirming that he had

discontinued use of Lorazepam before he would be permitted to return to duty.


183.    This directive violated Section 1.13 of TSA Management Directive 1100.63-1, which

states that employees prescribed benzodiazepines should be provided with restrictions—not

forced to discontinue the medication or be barred from duty (Exhibit F52). During this same

period, Plaintiff's treating physician submitted a TSA Return-to-Work medical questionnaire

(Exhibit F24) recommending a four-week light duty assignment to accommodate the tapering

process, which TSA failed to implement. The agency's refusal to follow its own policy while

simultaneously charging Plaintiff with AWOL constituted arbitrary enforcement and

contributed to the adverse action.

184.    TSA's standard pre-employment drug screening for Transportation Security Officers

(TSOs) consists of a five-panel drug test, which does not detect benzodiazepines. A nine-

panel test would be required to identify the presence of such medications.

185.    This discrepancy raises serious questions regarding TSA's selective enforcement of

fitness-for-duty standards: if benzodiazepine usage truly posed a disqualifying safety risk,

TSA would uniformly apply a higher testing standard at the point of hiring. TSA's failure to

do so—combined with its sudden invocation of medication-based unfitness years after

Plaintiff's initial employment—supports Plaintiff's contention that the agency's stated safety

concerns were pretextual and discriminatorily applied.

186.    Furthermore, under TSA Management Directive 1100.63-1, Section 1.13 (Medications),

employees prescribed barbiturates, benzodiazepines, opioids, or dronabinol must be provided

with medical restrictions. The directive also requires restrictions when medications cause

"sedation, drowsiness, equilibrium disturbance, orthostatic hypotension, vision changes, or

behavioral changes" (Exhibit F52).

187.    TSA Denver failed to conduct any individualized functional assessment of Plaintiff's

ability to safely perform his Transportation Security Officer (TSO) duties and instead barred

him from returning to work based solely on prescribed medication status, in direct violation

of agency policy.


188.    In October 2017, Plaintiff's need for medical treatment intensified as he required ongoing

use of prescribed Lorazepam to manage his diagnosed Post-Traumatic Stress Disorder

(PTSD).


189.    During this period, TSA Denver management, including Supervisor Human Resources

Specialist (SHRS) Diane DiCarlo, informed Plaintiff that he was prohibited from returning to

duty unless he obtained a formal letter from his treating physician, on official letterhead,

confirming that he was no longer taking the medication.


190.    Despite Plaintiff's compliance with prescribed medical treatment and TSA's directive to

remain off duty until medically cleared, TSA Denver nevertheless began charging Plaintiff

with Absence Without Leave (AWOL) starting in October 2017. These AWOL charges

accumulated while Plaintiff was actively following agency instructions and undergoing

medically supervised tapering.


191.    TSA's decision to impose AWOL charges during a medically excused period violated

agency policy under Management Directive 1100.63-1, the Family and Medical Leave Act

(FMLA), and the merit system principles codified at 5 U.S.C. § 2302(b)(12). TSA Denver's

retaliatory misuse of leave procedures—knowingly penalizing Plaintiff for absences caused

by agency-imposed medical restrictions—further substantiates Plaintiff's claims of

procedural misconduct, discriminatory retaliation, and constructive discharge.

192.    On or around October 20, 2017, Plaintiff's treating provider, Physician Assistant Richard

Hazen, completed a formal TSA Return to Work Medical Questionnaire and accompanying

clinical documentation. Hazen affirmatively indicated that Plaintiff could perform essential

job functions, including lifting, standing, bending, maintaining focus, and manipulating small

objects—despite ongoing treatment for PTSD and anxiety. Hazen also provided a projected

return-to-work date of October 22, 2017, without restrictions, contingent on light duty

approval.

193.    Contemporaneous medical records from Broomfield Family Practice confirm Plaintiff's

diagnoses, medication regimen (including Lorazepam), and stable condition. These records

reinforce that Plaintiff was medically cleared for duty under appropriate accommodations and

that no functional impairments were observed that would disqualify him from performing

essential job functions.

194.    Despite the submission of this official paperwork and its full alignment with TSA

Management Directive 1100.63-1, TSA Denver failed to act on Plaintiff's light duty request

or initiate an individualized functional assessment as required by agency policy.

195.    TSA Denver's omission—despite Plaintiff's full cooperation and the submission of

medical documentation—demonstrates procedural obstruction, failure to accommodate, and

retaliatory disregard for Plaintiff's protected medical status and merit system rights.

196.    On or around October 23, 2017, Supervisor Human Resources Specialist (SHRS) Diane

DiCarlo formally advised Plaintiff that he would not be deemed fit to return to full duty status

unless he submitted a narrative from his treating provider, on professional letterhead,

affirmatively stating that he was no longer taking Lorazepam, a prescribed benzodiazepine.

197.    This directive was imposed without any inquiry into whether Plaintiff experienced actual

functional limitations affecting his ability to perform essential job duties. This violated TSA

Management Directive 1100.63-1, Section 1.13, which requires that any restrictions be based

on specific side effects—such as "sedation, drowsiness, equilibrium disturbance, orthostatic

hypotension, vision changes, or behavioral changes"—rather than disqualifying employees

categorically based on prescribed medication use.[1]

[1] See TSA Management Directive 1100.63-1, Section 1.13. While the directive does not

explicitly state that management must perform an individualized functional assessment, its

structure and language imply that restrictions are appropriate only when specific impairments are

present, not based solely on the type of medication.

198.    TSA Denver's failure to conduct an individualized functional assessment—and its

improper reliance on categorical exclusion based solely on Plaintiff's prescribed medication

—violated the merit system principles set forth in 5 U.S.C. § 2301(b)(2), which guarantees

fair and equitable treatment, and § 2301(b)(8)(A), which protects employees from adverse

personnel actions based on improper access or use of health information. These violations

further support Plaintiff's claims of disability-based discrimination, unlawful retaliation, and

denial of procedural due process.

199.    On or around November 2, 2017, Supervisor Human Resources Specialist (SHRS) Diane

DiCarlo reiterated TSA Denver's directive that Plaintiff could not return to duty unless he

provided a letter from his treating provider, on official letterhead, affirmatively confirming

that he was no longer taking Lorazepam, a prescribed benzodiazepine.

200.    This repeated demand was issued without any new individualized medical evaluation, in

direct contravention of TSA Management Directive 1100.63-1, Section 1.13, which requires

that management base restrictions on actual functional impairment—not on categorical

exclusion based solely on prescribed medication use.

201.    TSA Denver's blanket insistence on medication discontinuation—absent any evidence

of functional limitations, safety risks, or individualized medical findings—further supports

Plaintiff's claims of discriminatory enforcement, denial of procedural due process, and

unlawful retaliation for engaging in protected medical leave activity.

**Continued Failure to Accommodate Plaintiff's Light Duty Requests**

202.    On or around November 6, 2017, Plaintiff's treating provider documented spending

approximately 20 minutes completing a light duty accommodation request on Plaintiff's

behalf.

203.    The medical notes further recorded that Plaintiff's anxiety had been significantly

aggravated by workplace conflict, persistent administrative obstruction, and TSA Denver's

refusal to allow him to return to duty since September 13, 2017. This evidence supports

Plaintiff's continued good-faith efforts to remain employed through reasonable

accommodations and highlights the severe emotional toll caused by TSA Denver's retaliatory

actions.

204.    Also on or around November 6, 2017, Dr. James R. Hill documented in Plaintiff's

medical records that Plaintiff's disability had continued to deteriorate due to the stress and

conflict created by TSA Denver's demands.

205.    Dr. Hill specifically noted that Plaintiff was medically stable on Lorazepam, and that

TSA's forced discontinuation efforts posed serious medical risks to Plaintiff's health.

206.    Plaintiff reported experiencing painful "electric" headaches during past withdrawal

attempts, and Dr. Hill emphasized that tapering off Lorazepam would be medically

challenging. These facts further corroborate Plaintiff's claims of worsening health caused

directly by TSA Denver's failure to accommodate his disability.

207.    On or around November 6, 2017, Plaintiff's treating physician, Dr. James R. Hill,

completed a formal TSA Office of Chief Medical Officer (OCMO) Case Tracker medical

questionnaire, which was submitted to TSA Denver management.

208.    The form documented that Plaintiff was experiencing worsening symptoms—including

reduced concentration, fatigue, anxiety, and diminished stress tolerance—aggravated by

workplace conditions and the withdrawal from prescribed medication. Dr. Hill specifically

recommended a "light duty only" assignment for four weeks while Plaintiff tapered off

Lorazepam and worked toward medical stabilization (Exhibit B1).

209.    Despite this clear and time-limited medical recommendation, TSA Denver failed to

accommodate the request or initiate an individualized functional assessment, reinforcing

Plaintiff's claims of procedural obstruction, retaliatory oversight, and failure to provide

reasonable accommodation in violation of applicable merit system principles and TSA

Management Directive 1100.63-1.

210.    On or around November 7, 2017, TSA Office of Chief Medical Officer (OCMO) Dr.

Fabrice Czarnecki documented in internal records that Plaintiff was experiencing "functional

impairment every day, 11/6/17," significantly worsened by escalating workplace stress.

211.    This contemporaneous acknowledgment by TSA's Chief Medical Officer provides direct

evidence linking Plaintiff's deteriorating medical condition to TSA Denver's hostile and

obstructive conduct, further supporting Plaintiff's claims of emotional distress, constructive

discharge, and agency bad faith.

212.    TSA Management Directive 1100.63-1, Section 1.13, requires management to "provide

restrictions" if an employee is taking medications that cause functional side effects—such as

sedation, drowsiness, equilibrium disturbance, orthostatic hypotension, vision changes, or

behavioral changes—or if the employee is prescribed certain classes of medications,

including barbiturates, benzodiazepines, opioids, or dronabinol. The directive does not

authorize categorical disqualification or require employees to discontinue prescribed

medications as a condition of returning to duty. Nor does it support the imposition of AWOL

status while an employee is under medical supervision and tapering in compliance with

provider instructions. TSA Denver's actions—demanding medication cessation, rejecting a

medically supported light duty recommendation, and assigning AWOL status without

conducting an individualized functional assessment—violated the text and intent of Section

1.13 and further support Plaintiff's claims of procedural due process violations, disability

discrimination, and retaliatory enforcement.

213.    Instead, TSA Denver continued to delay action, allowing Plaintiff's medical condition to

further deteriorate under the weight of prolonged uncertainty, administrative obstruction, and

enforced absence. Simultaneously, the agency recorded Plaintiff's absences as Absence

Without Leave (AWOL), despite receiving medical documentation that affirmatively

supported his need for accommodation and protective leave status.

214.     TSA's ongoing failure to engage in the interactive accommodation process, its

retaliatory misuse of AWOL charges, and its discriminatory treatment of Plaintiff based on

perceived disability constitute violations of procedural due process under applicable federal

law, merit system principles, and TSA Management Directive 1100.63-1.

215.     On or around November 15, 2017, Transportation Security Manager (TSM) Bobbi White

emailed Supervisor Human Resources Specialist (SHRS) Diane DiCarlo reporting that

Plaintiff had called TSA Denver seeking an update on his employment status. Plaintiff

informed White that his doctor had submitted a light duty request the previous Monday and

expressed concerns about his future with TSA, including whether he would have to retrain if

forced off duty indefinitely.

216.     TSM White stated she told Plaintiff she would "look into it and someone would contact

him." However, no one from TSA Denver contacted Plaintiff until December 18, 2017—

more than one month later, despite Plaintiff's ongoing compliance with all medical and

administrative requests (Exhibit F3).

217.     This unjustified delay in communication and refusal to timely process Plaintiff's light

duty accommodation request further supports Plaintiff's claims of administrative obstruction,

retaliatory misconduct, and constructive discharge.

**TSA Escalates to Removal Despite Pending Medical Clearance**

218.    On or around December 18, 2017, after more than one month of deliberate inaction, TSA

Denver contacted Plaintiff not to process his pending light duty accommodation request, but

instead to deliver a Notice of Proposed Removal based on alleged excessive Absence

Without Leave (AWOL).

219.    The proposed removal explicitly cited Plaintiff's enforced absences during the period

when TSA Denver had refused to allow him to return to duty, despite his timely compliance

with all medical and administrative requirements.

220.    TSA Denver's decision to pursue removal, rather than engage in the required interactive

process or provide reasonable accommodations, further evidences retaliatory motive,

discriminatory enforcement, and violations of Plaintiff's rights under applicable federal

statutes, TSA Management Directive 1100.63-1, and merit system principles set forth in 5

U.S.C. § 2301(b).

221.    On or around December 18, 2017, Plaintiff's treating provider, Physician Assistant

Richard Hazen, documented in Plaintiff's medical record that Plaintiff was in a deteriorating

mental health state due to his ongoing struggle with Post-Traumatic Stress Disorder (PTSD)

and the stress of tapering off Lorazepam, the benzodiazepine medication that TSA Denver

management instructed him to discontinue.

222.    Hazen also recorded that Plaintiff was experiencing suicidal ideation during this period. This clinical evaluation occurred while Plaintiff's FMLA paperwork remained unresolved and TSA Denver had yet to process his pending leave requests, despite Plaintiff's repeated compliance with administrative requirements.

223.    These contemporaneous clinical findings directly link TSA Denver's actions to Plaintiff's worsening medical condition, supporting Plaintiff's claims of emotional distress, hostile work environment, and agency indifference in violation of 5 U.S.C. § 2302(b)(12).

224.    Also on or around December 18, 2017, Transportation Security Manager (TSM) Bobbi White acknowledged her contemporaneous awareness of Plaintiff's prior protected EEO activity.

225.    TSM White's knowledge of Plaintiff's engagement in protected conduct further establishes a causal nexus between Plaintiff's EEO involvement and the adverse actions that followed, bolstering Plaintiff's claims of retaliation under 5 U.S.C. § 2302(b)(9).

226.    That same day, December 18, 2017, Transportation Security Manager (TSM) Jeremy Scott Stetson issued Plaintiff a Notice of Proposed Removal citing "Inability to Maintain a Regular Work Schedule." The proposal referenced 677 hours of Absence Without Leave (AWOL), despite Plaintiff's documented efforts to comply with directives not to return to work while on prescribed medication, and his submission of multiple medical forms and light duty requests.

227.     In his affidavit, TSM Stetson admitted he did not review or consider any medical

documentation prior to recommending Plaintiff's removal. This admission directly

contradicts affidavits from other TSA officials, as well as Plaintiff's existing medical and

administrative records.


228.     Furthermore, TSM Stetson's stated basis for removal as "AWOL" conflicts with

Assistant Federal Security Director (AFSD) Jeff Podolski's testimony that Plaintiff's removal

was classified as non-disciplinary. These inconsistencies demonstrate pretext and substantiate

Plaintiff's claims that TSA Denver's justifications for removal were false, retaliatory, and

procedurally improper.


229.     In the Notice of Proposed Removal Letter, Transportation Security Manager (TSM)

Jeremy Scott Stetson asserted that Plaintiff was "unfit for duty" due to Lorazepam use,

reiterating the directive that Plaintiff could not return until he submitted a doctor's narrative

confirming cessation. This instruction was issued while Plaintiff was still under medical

supervision and actively tapering off the medication in compliance with TSA's prior

demands.


230.     At no point did TSA Denver evaluate Plaintiff based on individualized functional

capacity, contrary to the requirements of TSA Management Directive 1100.63-1. Instead, the

agency insisted on categorical disqualification based solely on prescribed medication use,

without assessing Plaintiff's actual ability to safely perform essential job functions.

231.   The agency's improper reliance on medication status, compounded with the over 400

hours of AWOL charges accrued during Plaintiff's medically supervised hiatus, culminated in

Plaintiff's removal on December 28, 2017. These facts provide compelling evidence of

discriminatory enforcement, procedural irregularities, and constructive discharge in violation

of federal personnel law and merit system principles.

**Formal Removal from Service and Continuing Harm**

As a direct and ongoing consequence of Defendant's actions, Plaintiff continues to suffer

substantial harm. This includes prolonged loss of income, denied retirement contributions,

discontinued health coverage, and permanent loss of federal employment status. The emotional

distress caused by TSA's misconduct—including the forced tapering of prescribed PTSD

medication, denial of leave rights, and baseless AWOL charges—continues to impact Plaintiff's

health, stability, and recovery. These harms are not speculative; they are grounded in documented

loss of benefits, disrupted medical treatment, and ongoing financial insecurity that stem directly

from TSA's wrongful conduct.

232.   On or around December 28, 2017, TSA Denver formally issued Plaintiff a Notice of

Decision to Remove from federal service, citing "Inability to Maintain a Regular Work

Schedule" based on over 400 hours of Absence Without Leave (AWOL).

233.    These AWOL hours were accrued during a period when Plaintiff was medically restricted
        from returning to work under TSA's own directives, pending discontinuation of prescribed
        medication. During this period, Plaintiff complied with ongoing medical supervision,
        submitted multiple light duty requests, and made continuous efforts to coordinate his return-
        to-work conditions.

234.    TSA Denver's reliance on AWOL charges accrued during a medically excused period—
        without conducting the individualized functional assessment required by TSA Management
        Directive 1100.63-1—demonstrates procedural irregularities, pretextual justification for
        removal, and retaliatory animus in violation of federal personnel law.

235.    TSA Denver's internal records confirm that Plaintiff was charged with over 400 hours of
        Absence Without Leave (AWOL) during 2017 while he was actively complying with the
        agency's directive not to return to duty until he had discontinued prescribed benzodiazepine
        medication.

236.    Additionally, TSA Denver assessed AWOL hours against Plaintiff for periods during
        2016 in which he had an approved Family and Medical Leave Act (FMLA) certification to
        care for his son, raising further concerns about inconsistent, retaliatory, and discriminatory
        enforcement of leave policies in violation of merit system principles and federal law.

237.    As a direct and foreseeable result of TSA Denver's retaliatory and procedurally deficient
        removal, Plaintiff suffered substantial economic and non-economic damages, including the

loss of federal employment, wages, and health benefits under the Federal Employees Health

Benefits (FEHB) program.

238.     Without continued FEHB coverage, Plaintiff was deprived of access to necessary medical

treatment, exacerbating his diagnosed Post-Traumatic Stress Disorder (PTSD) and other

medical conditions. Plaintiff was also forced to prematurely withdraw funds from his Thrift

Savings Plan (TSP) retirement account, incurring financial penalties and additional tax

liabilities.

239.     The wrongful removal further caused ongoing financial instability, severe emotional

distress, reputational harm, and significant disruption to Plaintiff's career trajectory and long-

term earning capacity.

240.     On or around December 28, 2017, Assistant Federal Security Director (AFSD) Jeff

Podolski documented that Plaintiff remained unfit for duty based on his continued prescribed

use of a benzodiazepine. Podolski reiterated that Plaintiff could not return to work until he

provided a narrative from his treating physician confirming cessation of medication use.

241.     Also on or around December 28, 2017, Supervisor Human Resources Specialist (SHRS)

Diane DiCarlo mailed Plaintiff a formal Notice of Removal from federal service.

242.    Plaintiff received the Notice of Removal while he was still under active medical
supervision, attempting to comply with TSA Denver's requirements regarding
discontinuation of prescribed medication.

243.    Plaintiff's removal violated his rights under 5 U.S.C. § 2302(b)(10) (discrimination
based on conduct) and § 2302(b)(12) (violation of merit system principles), and was
approved by Deputy Assistant Federal Security Director (DAFSD) Miguel Herrera, despite
Herrera's previous verbal assurances that Plaintiff would not be terminated.

244.    The removal followed a documented pattern of Family and Medical Leave Act (FMLA)
interference, retaliatory scrutiny, disparate treatment compared to similarly situated
employees, and disregard for Plaintiff's procedural due process rights under federal law and
agency policy.

245.    As a direct result of his removal, Plaintiff lost his federal health insurance coverage,
which deprived him of access to necessary medical care and exacerbated his diagnosed Post-
Traumatic Stress Disorder (PTSD) symptoms.

246.    On or around January 18, 2018, approximately three weeks after Plaintiff's removal from
federal service, Supervisor Human Resources Specialist (SHRS) Diane DiCarlo sent an email
to Plaintiff stating: "Jeremy, these are the medical documents that refer to PTSD. See July 26,
2017." This communication confirms that DiCarlo was aware of Plaintiff's PTSD-related
medical documentation both during and after Plaintiff's employment with TSA Denver.

247.    DiCarlo's post-termination acknowledgment directly contradicts her sworn affidavit

testimony, in which she characterized Plaintiff's medical condition as "immaterial" and his

documentation as "irrelevant."

248.    The timing and content of this email—sent after Plaintiff's removal and during a period

of worsening mental health—supports Plaintiff's claims that TSA Denver reviewed but

deliberately disregarded medical documentation relevant to Plaintiff's disability, constituting

evidence of pretext, bad faith, and violations of 5 U.S.C. § 2302(b)(10) and (b)(12).

249.    On or around January 24, 2018, Plaintiff's treating provider confirmed that Plaintiff had

successfully stabilized off Lorazepam, the benzodiazepine medication previously cited by

TSA Denver as grounds to prohibit Plaintiff's return to duty. At that time, Plaintiff was fully

able to obtain a formal letter on professional letterhead as previously demanded by

Supervisor Human Resources Specialist (SHRS) Diane DiCarlo.

250.    However, by January 24, 2018, Plaintiff had already been wrongfully terminated on

December 28, 2017, rendering his compliance with TSA's medical demands moot and

preventing any meaningful opportunity to return to duty.

251.    This sequence of events further demonstrates that Plaintiff actively cooperated in good

faith to regain fitness for duty, and that TSA Denver's refusal to re-engage Plaintiff in the

interactive process was unjustified, retaliatory, and procedurally improper. This post-

termination compliance underscores Plaintiff's continuous availment of internal processes and good-faith attempts to avoid separation.

252.    Also on or around January 24, 2018, Physician Assistant Richard Hazen documented in Plaintiff's medical record that Plaintiff's disability had continued to deteriorate and that he was experiencing ongoing suicidal ideation. This contemporaneous medical update confirmed that the psychological harm Plaintiff was suffering persisted even after his removal from federal service.

253.    The January 24, 2018 medical record provides direct evidence that Plaintiff's worsening psychological condition was causally linked to TSA Denver's adverse employment actions, including the refusal to honor Plaintiff's protected rights, failure to accommodate his disability, and failure to engage in basic procedural fairness as required by federal law and agency policy.

254.    On or around May 14, 2018, Plaintiff was no longer able to afford necessary prescriptions due to the loss of health insurance and income resulting from his wrongful termination by TSA Denver.

255.    As a direct result, Plaintiff obtained a medical marijuana card to manage symptoms of his diagnosed Post-Traumatic Stress Disorder (PTSD) and related conditions. Although this measure was medically necessary, it rendered Plaintiff ineligible for rehire in federal service due to marijuana's classification as a controlled substance under federal law.

256.     TSA Denver's reckless and retaliatory removal decision therefore caused permanent

consequences for Plaintiff's employability, benefits, and access to medical care,

compounding the damages suffered and supporting Plaintiff's claims of constructive

discharge, career-ending retaliation, and severe emotional and financial harm.

257.     On January 31, 2020, Deputy Assistant Federal Security Director (DAFSD) Miguel

Herrera submitted a sworn declaration asserting that Plaintiff had never explained the delay

in requesting the reclassification of Family and Medical Leave Act (FMLA) leave to Leave

Without Pay (LWOP) and that there was no indication Plaintiff had submitted supporting

documentation.

258.     Herrera's sworn assertion directly contradicts multiple earlier affidavits—including those

of Transportation Security Managers (TSMs) Bobbi White and Connie Lempcke—which

confirmed that Herrera had, in fact, been provided Plaintiff's OPM Form 71 submissions and

supporting medical documentation. Additionally, during an August 11, 2017 meeting

recorded by Plaintiff pursuant to Colorado Rev. Stat. § 18-9-304, Herrera made inconsistent

statements regarding his knowledge of Plaintiff's submitted documentation—stating at one

point that he had "not seen the documentation," while simultaneously acknowledging that if

Plaintiff submitted proper paperwork, "the leave gets approved and you move forward."

These contradictions further undermine the credibility of Herrera's sworn statements.

259.    These inconsistencies reveal intentional misrepresentation, evidentiary manipulation, and

reinforce Plaintiff's claims of bad faith, spoliation of material evidence, and violations of 5

U.S.C. § 2302(b)(10) (discrimination based on conduct unrelated to job performance) and

§ 2302(b)(12) (violation of merit system principles).

### Plaintiff's Availment of Administrative Remedies

260.    On January 27, 2023, Plaintiff timely appealed the Administrative Judge's September 26,

2022 decision to the Equal Employment Opportunity Commission (EEOC) Office of Federal

Operations (OFO). On May 21, 2025, the OFO issued its final decision affirming the

Agency's dismissal without a hearing. Plaintiff asserts that the OFO's ruling failed to address

material factual disputes, including TSA's denial of medically supported light duty, misuse of

AWOL classifications, failure to credit 394 hours of approved FMLA leave and 240 hours of

medically supported LWOP, and the presence of altered affidavits and corrupted ROI records.

The OFO decision also disregarded certified audio evidence contradicting sworn statements

and omitted references to key comparator employees and management misstatements—such

as TSM Paul Griego's false statement that Plaintiff could not use FMLA for his own

condition. These procedural breakdowns reinforce Plaintiff's Fifth Amendment due process

claim and further establish the need for de novo judicial review by this Court. The OFO

decision ignored Plaintiff's documented effort to reclassify caregiving leave due to

incapacitation, failed to account for the medical bar on returning to duty in late 2017, and

relied on a technical reading of "approved leave" to excuse TSA's procedural and retaliatory

misconduct.

261.    On or around October 29, 2024, while reviewing the Report of Investigation submitted to

the Office of Federal Operations (OFO), Plaintiff discovered material spoliation, including

missing affidavit pages, corrupted sworn statements, and altered internal agency documents.

This misconduct occurred during the mandatory EEOC and OFO administrative exhaustion

process, which Plaintiff was required to complete before seeking judicial review.

262.    Upon discovering the spoliation, Plaintiff submitted certified mail filings to the OFO on

October 29, November 12, and December 9, 2024, preserving original evidence and detailing

the alterations. Despite this, OFO failed to correct the record, leaving the tainted ROI

unremedied.

263.    Defendant's spoliation of critical evidence during the required exhaustion period

prejudiced Plaintiff's ability to fairly present his claims, constitutes a violation of Plaintiff's

Fifth Amendment procedural due process rights, and supports the application of equitable

tolling, evidentiary sanctions, adverse inference remedies, and supplemental compensatory

damages for litigation delay and emotional distress.

264.    In support of all factual allegations, Plaintiff has prepared a comprehensive visual

timeline labeled Exhibit D, synthesizing key documentary evidence, a contemporaneous

audio recording, and agency correspondence. This timeline illustrates the chronological

progression of TSA Denver's discriminatory, retaliatory, and procedurally improper actions

—including adverse personnel decisions, denial of protected leave, misuse of fitness-for-duty

procedures, and failure to accommodate. Exhibit D is incorporated herein by reference and supports the systemic nature of the claims asserted in this Complaint.

## V. LEGAL FRAMEWORK

265.    Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 264 above as if fully set forth herein.

266.    The claims presented in this case are supported by two critical legal doctrines adopted and reinforced by the Tenth Circuit: (1) the *McDonnell Douglas* burden-shifting framework, and (2) the recent appellate precedent in *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025).

267.    The legal and procedural framework of this Complaint closely resembles the fact pattern addressed in *Marquez v. Department of Homeland Security*, MSPB Docket No. DE-0752-15-0611-I-1, a non-precedential initial decision reportedly involving a TSA Denver employee who prevailed on claims under 5 U.S.C. § 2302(b)(10) and (b)(12). In *Marquez*, the agency allegedly failed to accommodate a light duty request during a period of medical tapering, misused AWOL classifications, and disregarded medical documentation—all of which mirror the misconduct described herein. Similarly, in *Kathy D. v. Department of Homeland Security*, EEOC OFO Appeal No. 0720100011, the Commission held that an agency's refusal to accommodate an employee with documented medical restrictions—while simultaneously classifying her as AWOL—violated the Rehabilitation Act and constituted

unlawful discrimination. Although *Marquez* is not precedential, *Kathy D*. remains binding

EEOC precedent in federal-sector employment matters and underscores the procedural and

substantive due process violations TSA committed against Plaintiff. Together, these decisions

support the systemic and plausible nature of the Title 5 violations asserted in this Complaint

and reinforce Plaintiff's claims under the *McDonnell Douglas* framework and the principles

emphasized in *Walkingstick Dixon*, where the Tenth Circuit reversed summary judgment

because unresolved factual disputes called into question the legitimacy of the employer's

stated reasons for termination—underscoring the need for jury review when pretext and

procedural irregularities are credibly alleged.

1.   *McDonnell Douglas* **Framework:**

The framework established in *McDonnell Douglas Corp*. *v*. *Green*, 411 U.S. 792 (1973),

applies to claims of retaliation and discrimination where direct evidence is unavailable.

Plaintiff satisfies this structure as follows:

Step 1 – Prima Facie Case:

•   Plaintiff engaged in protected activity by requesting FMLA leave, submitting medical

documentation, and filing EEO complaints.

•   Plaintiff suffered an adverse action: he was terminated from federal service on December

28, 2017.

•   There is a clear causal connection: TSA officials (e.g., Paul Griego, Bobbi White)

acknowledged Plaintiff's EEO claims, and the termination occurred within ten days of

protected activity being documented.

Step 2 – TSA's Stated Reason:

- TSA claims the reason for termination was Plaintiff's inability to maintain a regular work
  schedule due to 400+ hours of AWOL.

Step 3 – Evidence of Pretext:

- TSA's own OCMO barred Plaintiff from returning to work due to medication prescribed
  for PTSD.

- Plaintiff submitted documentation showing treatment, tapering, and light duty
  availability.

- Affidavits reveal inconsistent application of policy, conflicting testimony, and lack of
  review.

- Timecards and leave allocations show 240 hours of FMLA LWOP were not applied.

- The stated rationale does not match the internal medical directives.

These inconsistencies and omissions, when taken together, meet the burden for showing TSA's
stated reason was pretextual. *Walkingstick Dixon v. Oklahoma ex rel*. Reg'l Univ. Sys. of Okla.
Bd. of Regents, 125 F.4th 1321 (10th Cir. 2025). The Tenth Circuit in *Walkingstick Dixon*
expanded and reaffirmed the importance of:

- Recognizing pretext through inconsistent justifications,

- Inferring causation from temporal proximity and employer knowledge,

- Treating failure to follow internal process (e.g., accommodation or reassignment policies) as evidence of retaliatory intent.

In this case:

- Plaintiff was terminated days after protected activity was acknowledged by TSA.

- TSA used shifting justifications: AWOL, yet also medically disqualified.

- No individualized assessment occurred, in violation of TSA M.D. 1100.63-1.

- Decision-makers admitted confusion, lacked documentation, and bypassed required processes.

Plaintiff's claims are evaluated under:

1. ***McDonnell Douglas* Burden-Shifting Framework** (*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)) for retaliation claims:

   ○ Plaintiff engaged in protected activity (FMLA requests, EEO filings).

   ○ Plaintiff suffered adverse action (termination).

   ○ Temporal proximity and knowledge of protected activity support causation.

   ○ TSA's stated reason (AWOL) is undermined by its own directives barring Plaintiff from duty.

2. ***Walkingstick Dixon v. Oklahoma ex rel.* Reg'l Univ. Sys. of Okla. Bd. of Regents,** 125 F.4th 1321 (10th Cir. 2025):

    ◦   Reinforces pretext through inconsistent employer justifications.

    ◦   Failure to follow internal process (e.g., accommodation, reassignment) supports

inference of retaliation.

    ◦   Supports judicial review of administrative record defects.

3.   *Kloeckner v. Solis*, 568 U.S. 41 (2012):

    ◦   Federal courts have jurisdiction over mixed cases involving discrimination and

adverse action.

268.    Conclusion: Plaintiff's claims of due process violation, retaliation, and misuse of medical

directives align directly with both *McDonnell Douglas* and *Walkingstick Dixon*. These

doctrines confirm that factual disputes exist, pretext is present, and dismissal is improper.

This legal framework supports Plaintiff's request for full judicial review and trial by jury.

**<u>Clarification on Legal Framework Applicability:</u>**

269.  Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 268

above as if fully set forth herein.

270.    Although this Complaint does not assert primary claims under the Americans with

Disabilities Act (ADA), the Rehabilitation Act, or the Family and Medical Leave Act

(FMLA) due to potential ATSA preemption, it conditionally pleads such claims only to the

extent the Court determines they are not preempted. The legal doctrines applied herein—

including those derived from ADA, Rehabilitation Act, and FMLA jurisprudence—remain

appropriate and controlling under 29 U.S.C. § 794(d), 29 U.S.C. § 2615, and binding Tenth

Circuit precedent.

271.    The *McDonnell Douglas* burden-shifting framework is routinely applied by federal courts

to assess claims of retaliation or discriminatory personnel actions — including those brought

under 5 U.S.C. § 2302 (Prohibited Personnel Practices) and constitutional due process

violations under the Fifth Amendment — especially when direct evidence is lacking. This

framework remains applicable to federal employment disputes involving protected activity

and adverse actions.

272.    Likewise, the Tenth Circuit's decision in *Walkingstick Dixon v. Oklahoma ex rel*. Reg'l

Univ. Sys. of Okla. Bd. of Regents, 125 F.4th 1321 (10th Cir. 2025), reinforces the

importance of procedural fairness and supports inferences of retaliation where employers

provide inconsistent justifications or fail to follow established internal processes. Although

*Walkingstick Dixon* does not involve constitutional due process or spoliation per se, its

reasoning supports Plaintiff's claims that factual disputes, credibility concerns, and

procedural irregularities warrant judicial scrutiny. The case is not limited to the ADA or

Rehabilitation Act and is properly cited as persuasive authority in evaluating retaliation,

credibility, and procedural misconduct in employment actions.

These legal standards provide a valid framework for analyzing Plaintiff's claims for due process

violations, retaliation, and administrative misconduct under the Constitution and Title 5.

## VI. DAMAGES

As a direct and foreseeable result of the retaliatory and procedurally improper actions described in this Complaint, Plaintiff suffered substantial and continuing harm, including:

- Loss of federal employment, wages, seniority, and retirement contributions;

- Termination of health insurance coverage under the Federal Employees Health Benefits (FEHB) program, resulting in out-of-pocket medical costs and treatment interruptions;

- Forced early withdrawal of Thrift Savings Plan (TSP) retirement funds, incurring financial penalties and increased tax liabilities;

- Aggravation of Plaintiff's diagnosed PTSD, including sustained emotional distress and anxiety;

- Reputational harm and long-term disruption to Plaintiff's professional career and earning capacity;

- Litigation-related delays, evidentiary spoliation, and prolonged uncertainty concerning Plaintiff's employment rights and legal redress.

Plaintiff seeks full back pay and restoration of benefits under the Back Pay Act, 5 U.S.C. § 5596; front pay or future lost earnings where reinstatement is not feasible; TSP record correction and redeposit of funds under 5 U.S.C. § 8474(e); recovery of unpaid FEHB benefits under 5 U.S.C. §§ 8902(k) and 8909; and compensatory damages for personal and financial injury, with emotional distress damages excludable from gross income under 26 U.S.C. § 104(a)(2), where such exclusion is authorized by law.

Emotional distress damages are warranted under *Carey v. Piphus*, 435 U.S. 247, 264 (1978),

where the Supreme Court held that plaintiffs whose procedural due process rights are violated

may recover damages for mental and emotional distress if they can prove that the violation

actually caused such harm. Although nominal damages are available in the absence of proven

injury, compensatory damages for emotional trauma require supporting evidence. Plaintiff's

sustained anxiety, emotional trauma, and loss of professional identity are the foreseeable and

direct result of Defendant's due process violations.

To the extent necessary to preserve all constitutional claims, Plaintiff pleads that federal officials,

acting under color of law, deprived Plaintiff of his Fifth Amendment right to procedural due

process. While Plaintiff does not assert a freestanding *Bivens* claim, this Complaint sets forth

sufficient facts to establish constitutional injury. Plaintiff acknowledges that *Bivens v. Six

Unknown Named Agents*, 403 U.S. 388 (1971), has been significantly narrowed by *Ziglar v.

Abbasi*, 582 U.S. 120 (2017), and that *Bivens* relief is generally unavailable where alternative

statutory remedies exist. This Complaint therefore seeks redress through constitutionally

authorized relief under the APA, Back Pay Act, and other applicable Title 5 statutes.

Plaintiff continues to suffer concrete, particularized harm as a result of Defendant's misconduct.

These ongoing injuries include the loss of income, benefits, federal status, and access to

healthcare—all of which are directly traceable to the challenged actions and redressable by this

Court. Plaintiff has standing to pursue both monetary and equitable relief under Article III of the

U.S. Constitution, as the harms alleged are not speculative or historical—they are continuing and

subject to judicial correction.

## VII. CAUSES OF ACTION

In the alternative, and only to the extent the Court determines that Plaintiff's primary statutory and constitutional claims are preempted or unavailable, Plaintiff conditionally asserts claims under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq., without waiving any primary claims pleaded herein.

**Supplemental Construction Clause to Prevent Misinterpretation and Preserve Counts**

Any references in this Complaint to medical accommodation, disability, or FMLA-related issues are made solely to provide factual context and evidentiary support for Plaintiff's constitutional and statutory claims under the Fifth Amendment, Title 5 of the U.S. Code, and other non-preempted legal frameworks. Plaintiff does not seek relief under the ADA, the Rehabilitation Act, or any ATSA-preempted statute unless explicitly pleaded as conditional counts pursuant to Federal Rule of Civil Procedure 8(d)(2)–(3). If such conditional counts are reached, Plaintiff seeks all appropriate legal, equitable, declaratory, and injunctive relief as otherwise set forth in this Complaint.

**Severability Clause**

If any claim, count, legal theory, or request for relief in this Complaint is found invalid, preempted, time-barred, or otherwise unavailable, such determination shall not affect the validity or viability of the remaining claims, counts, legal theories, or requests for relief, all of which shall continue independently to the fullest extent permitted by law.

**Law Preservation Clause**

Plaintiff expressly preserves and incorporates by reference any statutory, regulatory, or judicial

developments occurring during the pendency of this action that expand or clarify the rights,

remedies, or procedural protections applicable to the claims asserted herein, to the extent such

developments are retroactively or prospectively applicable under governing law.

## Count 1: Denial of Procedural Due Process (Fifth Amendment)

273.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–272) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein.

274.    **Denial of Procedural Due Process (Fifth Amendment) – Legal Elements:**

•    Plaintiff had a protected property interest in continued federal employment;

•    TSA deprived Plaintiff of that interest through adverse action (termination);

•    Procedural safeguards were constitutionally inadequate or arbitrarily applied.

275.    In a written notice dated December 30, 2016, TSA formally advised Plaintiff that he was

eligible for renewal of FMLA leave effective October 1, 2016, and that he was allocated 240

hours of leave (comprising annual, sick, or Leave Without Pay (LWOP)) under his

certification. However, as reflected in agency records (Exhibit F52), Plaintiff was ultimately

credited with only 8 hours of LWOP and 8 hours of annual leave for the entirety of 2017—leaving over 220 hours of approved FMLA leave unaccounted for.

276.    TSA's termination of Plaintiff relied on the claim that he accrued over 400 hours of AWOL during 2017. However, official agency leave records (Exhibit F52) confirm that Plaintiff was approved for and used 394 hours of FMLA-protected leave, which includes both self-care (FMLA-S) and family-care (FMLA-A), plus leave coded as "FMLA+LWOP." Despite this, TSA only credited 8 hours of LWOP and 8 hours of annual leave, then arbitrarily classified the remaining medically supported hours as AWOL—without acknowledging submitted documentation, medical incapacity, or the procedural delays surrounding Plaintiff's reclassification requests.

277.    Plaintiff was expressly instructed by TSA officials not to return to work until he submitted a letter on professional letterhead confirming discontinuation of Lorazepam. While on this medically required leave, Plaintiff submitted a formal light duty accommodation form and followed up via email on November 15, 2017, requesting action on his documentation. The agency never responded. These facts establish a contradictory procedural posture in which Plaintiff was barred from returning to duty, yet penalized for not doing so.

278.    TSA's demand that Plaintiff remain off duty unless he submitted a letter from his provider confirming discontinuation of his prescribed medication (Lorazepam) was not authorized by MD 1100.63-1. Section 1.13 of the Directive states that TSA must "provide restrictions if taking barbiturates, benzodiazepines, opioids, or dronabinol"—not that employees must discontinue treatment. Nor does the Directive contain any language requiring a provider letter certifying cessation of medication as a condition of return to duty. By treating the class

of medication as per se disqualifying and refusing to accept Plaintiff's compliance with tapering and light duty recommendations, TSA bypassed the individualized functional analysis required to determine whether Plaintiff could perform the essential functions of his position. These procedural failures violated TSA's own medical directive and deprived Plaintiff of the fair and tailored Fitness-for-Duty evaluation mandated by *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). As further supported by *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025), employer decisions based on inconsistent reasoning and failure to follow internal procedures require judicial scrutiny where retaliation or pretext is credibly alleged.

279.    Certified TSA timecards for August and September 2017 (Exhibit F52) confirm that Plaintiff continued submitting documentation for protected leave, yet was retroactively charged AWOL despite having active FMLA certifications and pending reclassification requests. Supervisor notes cited "not enough FMLA" and "no docs recvd," despite the agency's refusal to process or acknowledge the paperwork, further illustrating retaliatory enforcement and procedural breakdown.

280.    Moreover, the OFO's May 21, 2025 decision failed to reconcile critical evidence that directly contradicted its conclusions—including email correspondence from TSA management denying Plaintiff FMLA for his own condition (Exhibit F12), affidavits admitting unresolved Form 71 conversions (Exhibits F3 and F4), and certified medical documentation covering all contested dates (Exhibit F51). These contradictions further justify Plaintiff's entitlement to de novo review and underscore that both the Agency's decision and the OFO's appellate review were tainted by procedural violations and retaliation.

281.    Further compounding these inconsistencies, Deputy Assistant Federal Security Director

Miguel Herrera falsely stated in a 2020 declaration that Plaintiff "never explained why it took

almost three months to request" the retraction of his FMLA leave—despite sworn testimony

from TSM Bobbi White (Exhibit F3, Question 16) confirming that Plaintiff made the request

on June 29, 2017, and that Herrera himself was involved in the reprocessing of the OPM

Form 71. These contradictory statements—offered under oath—reflect not only the

breakdown in procedural safeguards but also TSA management's efforts to conceal and

mischaracterize the administrative timeline. Such contradictions undermine the integrity of

the agency's AWOL justification and further support Plaintiff's claim that his termination was

procedurally defective and motivated by discriminatory or retaliatory animus.

282.    In a sworn affidavit (Exhibit F4), Transportation Security Manager Connie Lempcke

confirmed that she and TSM Paul Griego were responsible for investigating Plaintiff's

alleged AWOL in July 2017 and applying TSA's table of penalties. She also acknowledged

awareness of the July 30, 2017 leave restriction, yet denied that Plaintiff ever questioned her

about the investigation—despite a legally recorded August 11, 2017 meeting in which

Plaintiff directly asked management for clarification on the AWOL charges and leave

discrepancies. This contradiction not only undermines the credibility of TSA's asserted

justification but also reinforces the procedural irregularities and retaliatory intent underlying

the agency's termination decision.

283.    Additionally, Transportation Security Manager Jeremy Stetson, who authored the

December 18, 2017 Notice of Proposed Removal, admitted under oath that he did not

personally know Plaintiff, had no understanding of Plaintiff's medical history or EEO

activity, and relied exclusively on timecard entries indicating over 400 hours of AWOL—despite the fact that Plaintiff had been expressly directed by agency officials not to return to work unless cleared from his prescribed PTSD medication. (See Exhibit F10.) The procedural deficiency of this disciplinary action is further compounded by the sworn affidavit of TSM Bobbi White, who confirmed that she was aware of Plaintiff's ongoing EEO activity on December 18, 2017—the very day the proposed removal was issued—suggesting a retaliatory motive and reinforcing the flawed and biased nature of the agency's termination process. Plaintiff was removed from federal service just 10 days later, on December 28, 2017, without resolution of the pending EEO proceedings or light duty requests. The close temporal proximity between Plaintiff's protected activity and his removal, combined with agency officials' documented awareness of that activity, establishes a strong causal nexus supporting the inference of retaliation and procedural misconduct.

284.    Taken together, these sworn admissions by Stetson and White illustrate that Plaintiff's proposed removal was initiated by uninformed officials relying on flawed records and with knowledge of his protected activity—facts which render the disciplinary process procedurally unreliable and constitutionally infirm.

285.    Plaintiff had a continuing federal employment relationship and was entitled to pre-termination due process. TSA instructed him not to return due to prescribed medications, then charged him AWOL and terminated him without a meaningful hearing. Further, critical documents in the EEOC ROI were altered or missing (e.g., affidavit pages, corrupted submissions), depriving Plaintiff of a fair administrative appeal. These procedural defects are both systemic and outcome-determinative under the due process standards established in

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), and *Gilbert v. Homar*, 520 U.S. 924 (1997). As further supported by *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025), employer decisions tainted by inconsistent justifications, procedural irregularities, and credibility disputes require judicial scrutiny, particularly where retaliation or pretext is credibly alleged. See also the "Pattern of Fitness-for-Duty Misuse" detailed under Count 3, which is incorporated herein by reference and supports Plaintiff's claims of retaliation, procedural unfairness, and discriminatory application of medical policies.

286.    On or around October 2024, Plaintiff submitted certified documentation to the Office of Federal Operations (OFO) identifying spoliated affidavit pages and altered content within the Report of Investigation (ROI). Although OFO acknowledged receipt of Plaintiff's certified spoliation evidence, it failed to take any corrective action, ensure preservation of key audio recordings, or conduct a meaningful review of the light duty documentation submitted by Plaintiff's treating provider. On May 21, 2025, OFO issued a decision affirming the Agency's Final Order, disregarding Plaintiff's 394 hours of FMLA-coded leave (Exhibit F52) and failing to address multiple procedural contradictions identified in the record. The OFO's decision confirms exhaustion of administrative remedies, preserves judicial review under 29 C.F.R. § 1614.407, and further illustrates the administrative system's failure to provide Plaintiff with a meaningful opportunity to be heard as required by due process. To the extent the OFO's final decision relied on an incomplete or tainted administrative record, Plaintiff seeks review under 5 U.S.C. § 7703(c), which authorizes the Court to set aside agency action that is arbitrary, capricious, or contrary to law.

287. **Relief Sought:** Plaintiff respectfully seeks full equitable and monetary relief under the
Fifth Amendment to the U.S. Constitution and related statutes, including but not limited to:
back pay with interest pursuant to the Back Pay Act, 5 U.S.C. § 5596; restoration of seniority,
retirement contributions, and other employment-related benefits; correction of leave and
personnel records to remove improper AWOL designations; compensatory damages for
emotional distress and economic losses resulting from the denial of due process; equitable
relief under the Administrative Procedure Act, 5 U.S.C. § 702, including record correction
and declaratory judgment; and financial restoration under 5 U.S.C. § 8474(e) for harm caused
by premature withdrawal of Thrift Savings Plan (TSP) funds, including all associated
penalties, taxes, fees, and lost investment gains, to reflect the value it would have accrued but
for the denial of due process. Plaintiff does not seek reinstatement due to the hostile
environment at TSA Denver and the likelihood of ongoing psychological harm, and instead
requests front pay or alternative relief deemed just and proper by the Court. The adverse
actions described herein would not have occurred but for Plaintiff's protected activity and the
Agency's unlawful animus.

**Count 2: Prohibited Personnel Practices (5 U.S.C. § 2302(b)(10) and (b)(12))— Based on
Discrimination for Non–Job-Related Conduct and Violation of Merit System Principles**

288.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including
the factual allegations (¶ 1–287) and the jurisdictional and sovereign-immunity waiver
allegations (¶ 2–9), as if fully set forth herein. Plaintiff was subject to adverse personnel
action, including denial of leave, AWOL charges, and termination, based on conduct that

was protected, lawful, and not disqualifying under any regulation or law. Under 5 U.S.C. § 2302(b)(10), it is a prohibited personnel practice to take action against an employee for such conduct unless it affects job performance. Plaintiff's use of prescribed medication, request for FMLA-designated leave, and submission of OPM Form 71s were personal matters that did not impair his performance and were used against him in a retaliatory manner. These facts further support a violation under § 2302(b)(12), which bars personnel actions that violate applicable laws, rules, or regulations.

289.    Plaintiff's protected activity—including his opposition to TSA Denver's procedural misconduct, submission of medical documentation, participation in formal complaint and grievance processes, and good-faith efforts to alert the Office of Federal Operations (OFO) of material evidence tampering and spoliation during the EEOC record transfer—constitutes whistleblower activity under 5 U.S.C. § 2302(b)(9)(A), (C), and (D). While this activity forms the basis of Count 8, it also reinforces the retaliatory motive underlying the adverse actions alleged in this count.

290.    **Elements of Prohibited Personnel Practices under § 2302(b)(10) and (b)(12):**

**A. Under § 2302(b)(10): Discrimination Based on Non–Job-Related Conduct**

To establish a claim under § 2302(b)(10), Plaintiff must demonstrate:

1.    Plaintiff engaged in conduct or possessed a personal characteristic (e.g., off-duty behavior, prescribed medication use, PTSD diagnosis);

2.      The conduct or characteristic had no adverse effect on Plaintiff's job performance

or that of others;

3.      Plaintiff suffered an adverse personnel action, such as termination, denial of

leave, or AWOL designation;

4.      There is a causal connection between the conduct and the personnel action taken.

**B. Under § 2302(b)(12): Violation of Civil Service Law, Rule, or Regulation Related to
Merit System Principles**

1.      A personnel action was taken against Plaintiff (e.g., suspension, reassignment,

denial of FMLA leave, removal);

2.      The action violated a specific law, rule, or regulation, such as OPM regulations,

the Back Pay Act, or TSA's MD 1100.63-1;

3.      The violated provision implements or directly concerns a merit system principle,

including but not limited to:

•      Fair and equitable treatment;

•      Protection against arbitrary action, personal favoritism, or coercion;

•      Respect for privacy and constitutional rights (see 5 U.S.C. § 2301(b)(2), (b)(8),

(b)(9)).

291.    Although Plaintiff does not assert a primary cause of action under the Family and

Medical Leave Act (FMLA) due to potential ATSA preemption, Plaintiff has pleaded

conditional counts under the FMLA in the alternative. Regardless, the denial and non-recognition of previously approved leave for Plaintiff's own serious health condition violated applicable rules and policies and contributed to a prohibited personnel practice under 5 U.S.C. § 2302(b)(12). TSA officials refused to credit approved LWOP or honor submitted OPM Form 71s, despite timely medical documentation and prior authorization. (See Exhibits F3, F4, and F55). This pattern of denial reflects bad faith and retaliatory intent.

292.    Comparator evidence further supports Plaintiff's claims. During the same timeframe in which Plaintiff's leave requests were scrutinized and denied, TSA Denver approved FMLA requests for similarly situated employees, including TSO Virginia Hyde and TSO Herschel Craig. Affidavits from TSA Denver management confirm they did not inquire into the medication status of these employees prior to approving their leave. In contrast, Plaintiff was denied access to his allocated 240 hours of leave (annual, sick, and LWOP) under his approved FMLA certification, subjected to fitness-for-duty evaluations, and ultimately terminated due to his prescribed PTSD medication. This inconsistent application of standards demonstrates selective enforcement and supports an inference of retaliatory intent and pretext under 5 U.S.C. § 2302(b)(10) and (b)(12).

293.    TSA's demand that Plaintiff remain off duty unless he submitted a letter from his provider confirming discontinuation of his prescribed medication (Lorazepam) was not authorized by MD 1100.63-1. Section 1.13 of the Directive states that TSA must "provide restrictions if taking barbiturates, benzodiazepines, opioids, or dronabinol"—not that

employees must discontinue treatment. Nor does the Directive contain any language

requiring a provider letter certifying cessation of medication as a condition of return to duty.

By treating the class of medication as per se disqualifying and refusing to accept Plaintiff's

compliance with tapering and light duty recommendations, TSA bypassed the individualized

functional analysis required to determine whether Plaintiff could perform the essential

functions of his position. These procedural failures violated TSA's own medical directive

and deprived Plaintiff of the fair and tailored Fitness-for-Duty evaluation mandated by

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). As further reinforced by

*Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th

1321 (10th Cir. 2025), employer decisions involving inconsistent reasoning, procedural

irregularities, and credibility disputes require judicial scrutiny where retaliation or pretext is

credibly alleged.


294.     As further evidence of TSA's inconsistent application of federal leave policy, a June 29,

2017 email from Transportation Security Manager (TSM) Paul Griego stating that Plaintiff

could not use FMLA for his own illness—despite Plaintiff having a valid FMLA

certification that expressly covered both his son's and his own serious medical conditions.

This misstatement of law further demonstrates the agency's confusion or indifference

toward federal leave rules and supports a finding that Plaintiff's protected leave activity was

mischaracterized or disregarded in violation of applicable regulations and merit system

principles. (Exhibit F12).

295.    TSA officials knowingly delayed, denied, and scrutinized Plaintiff's leave requests and

medical documentation, even after receiving full and proper forms. Multiple managers

acknowledged receipt of documentation, only to later deny its existence or relevance. These

actions were taken in bad faith and resulted in false AWOL charges, unwarranted fitness-for-

duty evaluations, and a termination based on conduct that was neither disqualifying nor

performance-related.

296.    On December 18, 2017, TSA official Bobbi White confirmed in her affidavit that she was

aware of Plaintiff's protected activity, including medical leave submissions and prior EEO

complaints. (See Exhibit F22, p. 2). Plaintiff was charged with AWOL and terminated just

ten days later, on December 28, 2017. The close temporal proximity, combined with the

inconsistent application of internal policies, supports a prima facie case of retaliation.

297.    TSA's stated reason for termination — inability to maintain a regular work schedule — is

undermined by the fact that Plaintiff was explicitly instructed not to return to duty by the

agency's own Office of the Chief Medical Officer (OCMO), solely due to a medically

supervised prescription for a benzodiazepine. Although TSA's internal medical guidelines

list certain sedating medications as potentially disqualifying, Plaintiff had been stable,

medically compliant, and consistently performing his duties without incident. At no point

did TSA produce evidence of impairment or performance deficiencies attributable to the

prescribed medication. The agency failed to conduct an individualized assessment of

Plaintiff's actual ability to perform essential job functions, instead applying a blanket

disqualification without procedural safeguards. This approach violated the due process

principles established in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985), and

*Gilbert v. Homar*, 520 U.S. 924 (1997).

298.    The agency's inconsistent enforcement and failure to consider Plaintiff's record support a

finding of retaliatory pretext under the burden-shifting framework reaffirmed in

*Walkingstick Dixon v. Oklahoma ex rel.* Reg'l Univ. Sys. of Okla. Bd. of Regents, 125 F.4th

1321 (10th Cir. 2025), and further demonstrate a prohibited personnel practice under 5

U.S.C. § 2302(b)(10) and (b)(12).

299.    Plaintiff also applied for a Lead Transportation Security Officer (LTSO) position under

job announcement DEN-17-255421 during the pendency of his protected EEO activity and

medical leave disputes. Despite meeting all qualifications and having received positive

performance evaluations, Plaintiff was not selected. The selection occurred in close

temporal proximity to his involvement in protected activity. At least one comparator who

had not engaged in protected activity and had comparable or lesser qualifications was

selected. TSA management failed to provide a legitimate, non-retaliatory reason for

Plaintiff's non-selection. The timing and context of this personnel action supports an

inference of reprisal.

300.    The adverse actions described above were motivated by improper considerations, and no

individualized finding was made that Plaintiff's conduct affected job performance, in

violation of 5 U.S.C. § 2302(b)(10). In *Kathy D. v. DHS*, OFO Appeal No. 0720100011, the

EEOC held TSA liable for refusing a reasonable accommodation for a back injury—
confirming that TSA's selective accommodation practices are unlawful.

These discriminatory enforcement actions and disparate treatments were undertaken with the
intent to punish Plaintiff for asserting protected statutory rights and to deter other employees
from challenging TSA Denver's arbitrary and inconsistent application of MD 1100.63-1 and
related leave and fitness-for-duty policies.

301.    **Relief Sought:** Plaintiff respectfully seeks full equitable and monetary relief under 5
U.S.C. § 2302(b)(10) and (b)(12), including but not limited to compensatory damages for lost
wages, employment benefits, retirement contributions, financial restoration under 5 U.S.C.
§ 8474(e) for harm stemming from the premature withdrawal of Thrift Savings Plan (TSP)
funds, including associated tax penalties, early withdrawal fees, and lost investment gains;
front pay in lieu of reinstatement; pre- and post-judgment interest; correction of personnel
and attendance records to eliminate references to unlawful AWOL designations and
retaliatory termination; declaratory judgment affirming that TSA engaged in prohibited
personnel practices in violation of Plaintiff's statutory rights; and such further equitable or
monetary relief as the Court deems just and proper. Plaintiff does not seek reinstatement due
to the documented hostile environment at TSA Denver and the likely continuation of
psychological harm if returned to the agency. The adverse actions described herein would not
have occurred but for Plaintiff's protected activity and the Agency's unlawful animus.

## Count 3: Improper Use of Medical Directive (TSA M.D. 1100.63-1)

302.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–301) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein. The events documented in Factual

Allegations, including repeated Fitness-for-Duty evaluations initiated without meaningful

accommodation or clarification, support Plaintiff's claim that TSA Denver misapplied

Management Directive 1100.63-1. These facts show that Plaintiff was ordered off duty

without proper assessment and was terminated while complying with OCMO's medication

clearance process.


303.    **Improper Use of Medical Directive (TSA M.D. 1100.63-1) Elements:**

• **Evidence of Violation**: The agency improperly used or misapplied TSA M.D. 1100.63-1

(or a related medical directive) to impose an adverse personnel action, such as requiring

removal, suspension, or placing the employee on enforced leave. This misuse serves as

evidence that the agency acted outside lawful procedures or in bad faith.

TSA's demand that Plaintiff remain off duty unless he submitted a letter from his provider

confirming discontinuation of his prescribed medication (Lorazepam) was not authorized

by MD 1100.63-1. Section 1.13 of the Directive states that TSA must "provide restrictions

if taking barbiturates, benzodiazepines, opioids, or dronabinol"—not that employees must

discontinue treatment. Nor does the Directive contain any language requiring a provider

letter certifying cessation of medication as a condition of return to duty. By treating the

class of medication as per se disqualifying and refusing to accept Plaintiff's compliance

with tapering and light duty recommendations, TSA ignored the Directive's core

requirement that determinations be based on essential job functions and actual medical

risk, not medication class alone. These procedural failures violated TSA's own medical

directive and deprived Plaintiff of his right to a fair and tailored Fitness-for-Duty process,

as required under *Walkingstick Dixon v. Oklahoma ex rel*. Reg'l Univ. Sys. of Okla. Bd. of

Regents, 125 F.4th 1321 (10th Cir. 2025), and *Cleveland Bd. of Educ. v. Loudermill*, 470

U.S. 532 (1985).

- **Procedural Due Process Violation**: The agency failed to provide a fair medical

  reevaluation, individualized assessment, or meaningful opportunity to respond. The

  absence of procedural safeguards—required either by the directive itself or by

  constitutional due process—supports a violation under *Cleveland Bd. of Educ. v.*

  *Loudermill*, 470 U.S. 532 (1985), and *Gilbert v. Homar*, 520 U.S. 924 (1997).

- **Discrimination / Failure to Accommodate**: The agency's action—based on medication

  status or an ongoing medical condition—was not accompanied by an individualized

  accommodation analysis or an interactive process. This may constitute a failure to

  accommodate under the Rehabilitation Act (if applicable) or interference with rights under

  the FMLA.

- **Prohibited Personnel Practice**: Because TSA M.D. 1100.63-1 is an internal directive

  implementing civil service merit principles, the agency's misapplication constitutes a

  violation of a law, rule, or regulation under 5 U.S.C. § 2302(b)(12). Where applied

  inconsistently or discriminatorily, it may also support a claim under § 2302(b)(10).

**Facts:**

The Office of Chief Medical Officer (OCMO) issued a fitness-for-duty disqualification based solely on Plaintiff's prescribed use of benzodiazepines. TSA refused to consider his tapering plan, ignored medical documentation confirming ongoing compliance, and denied his request for light duty. (See Exhibit F24, Medical Documentation Re: Tapering Plan and Light Duty Form, dated November 7, 2017.) No interactive process occurred. This failure to assess job functions or consider reasonable alternatives violates TSA's own policy. Controlling authority such as *Walkingstick Dixon v. Oklahoma ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents,* 125 F.4th 1321 (10th Cir. 2025) and Tenth Circuit guidance on procedural fairness (e.g., *Harbison v. City of Wichita*) support Plaintiff's claim that the medical directive was improperly weaponized.

The facts in Factual Allegations and comparator evidence reveal that TSA Denver failed to apply Management Directive 1100.63-1 uniformly. While Plaintiff was removed from duty pending medical clearance related to his prescribed PTSD medication, other employees such as TSO Virginia Hyde and TSO Herschel Craig were granted FMLA leave without any inquiry into their medical conditions or medications. TSA management later confirmed they had no knowledge of those employees' medical status at the time of approval. (See Exhibit F61, Affidavit of TSM Paul Griego confirming lack of comparable scrutiny for TSO Hyde and Craig.) This disparity illustrates that TSA selectively applied M.D. 1100.63-1 against Plaintiff in a punitive and retaliatory manner, undermining its purported justification and violating agency standards.

**Pattern of Fitness-for-Duty Misuse**

• Plaintiff was subjected to repeated and improperly initiated Fitness-for-Duty (FFD)
  evaluations by TSA Denver management. These actions coincided with or closely followed
  Plaintiff's protected activity, including FMLA-related submissions, accommodation
  requests, and internal complaints. The chronology is as follows:

• November 2015: TSA initiated an FFD after Plaintiff's back injury. Though initially
  disqualified, Plaintiff was later found medically qualified after tapering off prescribed
  oxycodone.

• July 13, 2017: TSM Bobbi White and TSM Connie Lempcke initiated a new FFD
  request, just as Plaintiff was transitioning FMLA time to LWOP.

• August 14, 2017: Another FFD was initiated days after a recorded meeting where
  Plaintiff raised issues about uncredited leave and AWOL designations.

• October 12, 2017: Plaintiff missed an HR meeting to attend yet another FFD-related
  appointment with his medical provider.

• October 17, 2017: OCMO Dr. Czarnecki formally disqualified Plaintiff based on
  prescribed PTSD medication (Lorazepam), which led to TSA charging over 400 hours of
  AWOL. (See Exhibit F17, Dr. Czarnecki Disqualification Memo, dated Oct. 17, 2017,
  confirming Plaintiff's removal based solely on prescribed benzodiazepine without
  individualized job-function assessment.)

- November 7, 2017: Plaintiff's physician submitted a Fitness-for-Duty medical
  questionnaire recommending light duty during the tapering period. TSA ignored this
  request.

304.    **Relief Sought:** Plaintiff respectfully seeks full equitable and monetary relief arising from
TSA's improper application of Management Directive 1100.63-1, including but not limited
to: compensatory damages for lost wages and leave accrual resulting from unsupported
medical disqualifications; financial restoration pursuant to the Back Pay Act, 5 U.S.C.
§ 5596, with the effective back pay period commencing October 17, 2017—the date of
Plaintiff's unlawful disqualification from duty; correction of personnel records to remove
improper Fitness-for-Duty annotations; prospective injunctive relief prohibiting future
misuse of medical directives in retaliation or without valid clinical justification; and such
further relief as the Court deems just and proper. Plaintiff does not seek reinstatement due to
the medically hostile environment documented at TSA Denver and instead requests front pay
or alternative relief. The adverse actions described herein would not have occurred but for
Plaintiff's protected activity and the Agency's unlawful animus.

## Count 4: Entitlement to De Novo Review Due to Administrative Flaws (5 U.S.C. § 7702)

305.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including
the factual allegations (¶ 1–304) and the jurisdictional and sovereign-immunity waiver
allegations (¶ 2–9), as if fully set forth herein. The facts presented in Factual Allegations,
including conflicts between affidavits, missing medical documentation, and
misrepresentations of Plaintiff's protected activity, illustrate how the agency failed to

preserve a coherent and accurate record. These deficiencies support Plaintiff's entitlement to

de novo review under 5 U.S.C. § 7702 and *Kloeckner v. Solis*.


306.  **Elements Supporting Entitlement to De Novo Review:**

- Plaintiff was subjected to an adverse employment action involving discrimination or a
prohibited personnel practice;

- The EEOC or agency failed to provide a meaningful review due to spoliation of evidence,
procedural contradictions, or undue delay, thereby frustrating Plaintiff's opportunity for
full and fair administrative resolution.


**Facts:**

Plaintiff filed a formal EEO complaint alleging discrimination, retaliation, and wrongful

termination. The EEOC delayed adjudication for nearly six years. When the complaint was

transmitted to the Office of Federal Operations (OFO), the Record of Investigation (ROI)

included materially defective documents, including:

- Corrupted and altered affidavits;

- Missing exhibits and pages;

- Blacked-out or unreadable material evidence.

- Plaintiff submitted corrected materials to OFO, demonstrating that the original ROI was
materially incomplete and misleading. These defects denied Plaintiff a fair opportunity for
administrative resolution and independently satisfy the second prong of 5 U.S.C. § 7702,

entitling him to de novo review in federal court. See *Kathy D. v. Dep't of Homeland Sec.,*
*TSA*, EEOC Appeal No. 0720100011 (2012) (finding discrimination based on TSA's failure
to accommodate and procedural irregularities), confirming the Commission's ability to
overturn TSA decisions under similar circumstances.

307.    **Relief Sought:** Plaintiff seeks de novo review in this Court pursuant to 5 U.S.C. § 7702
and *Kloeckner v. Solis*, and requests all available remedies authorized under the Back Pay
Act, 5 U.S.C. § 5596. These include full back pay, restoration of lost employment-related
benefits, correction of personnel records, and interest. Plaintiff further seeks equitable,
declaratory, and compensatory relief authorized under the Administrative Procedure Act, 5
U.S.C. § 702; TSP restoration under 5 U.S.C. § 8474(e); and front pay in lieu of
reinstatement due to the documented hostile environment at TSA Denver and the risk of
continued psychological harm. The adverse actions described herein would not have occurred
but for Plaintiff's protected activity and the Agency's unlawful animus.

### Count 5: Interference with Federal Retirement Benefits (5 U.S.C. § 8474(e))

308.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including
the factual allegations (¶ 1–307) and the jurisdictional and sovereign-immunity waiver
allegations (¶ 2–9), as if fully set forth herein.

309.    **Interference with Federal Retirement Benefits under (5 U.S.C. § 8474(e))**
**Elements:**

- Plaintiff had a vested interest in a Thrift Savings Plan (TSP) retirement account;

- The agency's actions caused interference or forced early withdrawal;

- Plaintiff suffered actual financial harm as a result.

   **Facts:**

   As a direct result of being wrongfully terminated, Plaintiff was forced to prematurely
   withdraw funds from his Thrift Savings Plan (TSP). This early withdrawal resulted in tax
   penalties and lost investment gains. In *Devine v. United States*, 202 Ct. Cl. 414, 480 F.2d
   641 (1973), the court recognized that interference with earned retirement benefits due to
   agency misconduct may warrant compensatory relief. Plaintiff's financial damages stem
   directly from the agency's unlawful actions, not from any personal negligence or
   mismanagement. This financial harm is not duplicative of wage-based back pay or front
   pay claims; rather, it represents an independent injury to Plaintiff's long-term retirement
   security, including the loss of compounded interest and market gains over time.

310.  **Relief Sought:**  Plaintiff respectfully seeks full compensatory and equitable relief pursuant
   to 5 U.S.C. § 8474(e), including but not limited to: reinstatement of lost Thrift Savings Plan
   (TSP) contributions, correction of account balances, and redeposit of prematurely withdrawn
   retirement funds. As a direct consequence of TSA's unlawful termination, Plaintiff was
   compelled to initiate an early TSP withdrawal, resulting in significant tax penalties, early
   withdrawal fees, and long-term investment losses. Accordingly, Plaintiff seeks financial
   restoration for all harm stemming from the premature distribution, including lost interest,
   missed investment growth, and incurred tax liabilities. Plaintiff further requests that the Court
   order a lump-sum restoration of his TSP position to reflect the value it would have accrued

but for the Agency's unlawful conduct, as well as such other relief as the Court deems just

and proper to fully restore his retirement position had the unlawful removal not occurred. The

adverse actions described herein would not have taken place but for Plaintiff's protected

activity and the Agency's unlawful animus.


**Count 6: Termination of FEHB Coverage (5 U.S.C. § 8901 et seq.)**


311.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–310) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein. As reflected in Factual Allegations, Plaintiff

was terminated while tapering off a prescribed medication under medical supervision,

leaving him without access to his FEHB benefits during a period of active care for PTSD

and other conditions.


312.    **Termination of FEHB Coverage (5 U.S.C. § 8901 et seq.) Elements:**


•   Plaintiff was enrolled in FEHB at the time of removal;


•   The agency failed to follow required procedures for continuation or transition of coverage;


•   The lapse in coverage caused direct harm to the Plaintiff.


**Facts:**

Following TSA Denver's directive that Plaintiff discontinue his prescribed benzodiazepine

medication, Plaintiff was unable to afford alternative treatment due to the financial

hardship caused by his removal. As a result, he obtained a medical marijuana card to

manage his condition. This medically necessary action, while legal under state law,

subsequently disqualified Plaintiff from future federal employment due to conflicting

federal drug policy, compounding the harm caused by the agency's initial conduct.

Plaintiff's FEHB coverage was disrupted during this medically vulnerable period, and TSA

failed to take affirmative steps to ensure continuity of care or provide individualized

support, as required under 5 C.F.R. § 890.502. In *Brown v. Austin*, No. 20-1049, 2021 WL

4168130 (10th Cir. Sept. 15, 2021), the Tenth Circuit reaffirmed that federal employers

must accommodate mental health conditions and cannot use medically necessary treatment

as a basis for punitive action. TSA Denver's actions not only violated these principles but

also resulted in the loss of health benefits and access to care, causing long-term economic

and medical harm.

313.   **Relief Sought:** Plaintiff seeks full relief under 5 U.S.C. § 8902(k) and 5 C.F.R. § 890.502,

including restoration of Federal Employees Health Benefits (FEHB) coverage and

reimbursement for all out-of-pocket medical expenses incurred during the lapse in coverage

caused by the agency's unlawful actions. Plaintiff further seeks equitable relief for TSA's

failure to provide mandatory notice and continuation protections during Plaintiff's period of

medical tapering and approved leave. In addition, Plaintiff requests declaratory relief

affirming his entitlement to uninterrupted FEHB coverage during periods of medically

necessary absence, as well as correction of personnel records to eliminate adverse inferences

or false assumptions stemming from the loss of insurance and resulting emotional and

physical distress caused by the disruption in medical treatment. The adverse actions

described herein would not have occurred but for Plaintiff's protected activity and the

Agency's unlawful animus.

### Count 7: Spoliation & Administrative Misconduct — Due Process Violation Under the Fifth Amendment and Procedural Fairness Doctrine

314.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–313) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein. Plaintiff's property interest in continued

federal employment and in statutory employment-related benefits — including retirement

contributions, health insurance, and leave accrual — was directly impacted by the spoliation

and administrative misconduct described herein. The factual record documented in the

timeline of material events is incorporated by reference and provides concrete evidence of

administrative misconduct and spoliation. This misconduct occurred during the mandatory

EEOC and OFO administrative exhaustion process, materially impairing Plaintiff's ability

to fairly present his claims at the agency level and to preserve the evidentiary record for

judicial review. Plaintiff's submission of OPM Form 71s, medical records, and leave-related

communications were repeatedly ignored or misrepresented.

315.    Contradictory affidavits and declarations — including those of Miguel Herrera, Bobbi

White, and Diane DiCarlo — reveal that critical documents were either not acknowledged,

selectively reviewed, or falsely described. Moreover, Plaintiff's August 11, 2017 meeting

was legally recorded pursuant to Colorado law. The content of the recording directly

contradicts the agency's later assertions. The timeline also details how the Report of

Investigation submitted during the EEOC appeal process contained "blacked out" or missing

pages, further impairing Plaintiff's ability to receive fair administrative review. These facts

support a spoliation claim and justify judicial scrutiny of the agency's procedural integrity.

316.     Plaintiff incorporates by reference the "Pattern of Fitness-for-Duty Misuse" described in

Count 3, which substantiates the claims of retaliatory animus, due process violations, and

discriminatory enforcement of medical policy. This pattern of conduct provides critical

evidentiary support for the adverse action challenged in this count.

317.     **Spoliation & Administrative Misconduct Elements:**

•     The agency had a duty to preserve the integrity of the administrative record;

•     The record was corrupted, altered, or materially incomplete;

•     The defects impaired Plaintiff's ability to fully litigate or appeal his claims.

**Facts:**

Plaintiff discovered, upon reviewing the record transmitted to the Office of Federal Operations

(OFO) in October 2024, that multiple affidavits, exhibits, and narrative statements were

corrupted, redacted, or entirely omitted. Side-by-side comparisons between the original ROI and

the tampered OFO version confirm spoliation affecting critical witnesses, including:

- DAFSD Miguel Herrera: Pages 3 and 5 of his affidavit were missing; page 1 was redacted; and page 2 was obscured by graphic artifacts. The omitted content addressed Plaintiff's protected complaints, FMLA denials, and comparator analysis.

- STSO Michael McGuire: The version submitted to OFO was fully blacked out on ROI p. 379. The original discussed FMLA scheduling issues and identified favorable comparators.

- AFSD Jeff Podolski: The altered version omitted discussion of HCM LETTER 771-4 and NRC grievance policy protections—key to understanding Plaintiff's non-EEO complaints and his use of internal redress channels.

- Plaintiff's Own Affidavit: The OFO version was rendered unreadable—corrupted by unintelligible symbols and data loss. The original clearly documented Plaintiff's timeline, protected activities, and rebuttals to TSA's AWOL justification.

These alterations compromised the factual integrity of the record and materially impaired Plaintiff's ability to litigate or appeal on a level playing field. As documented in Plaintiff's Exhibit D timeline and accompanying sworn declaration, the omissions had direct impact on the credibility and completeness of the administrative record.

Under Tenth Circuit standards, such procedural defects and evidentiary irregularities warrant de novo review. In *Walkingstick Dixon v. Oklahoma ex rel*. Reg'l Univ. Sys. of Okla. Bd. of Regents, 125 F.4th 1321 (10th Cir. 2025), reaffirmed the McDonnell Douglas burden-shifting framework and emphasized that inconsistent justifications and credibility disputes require judicial scrutiny in retaliation claims. Similarly, in *Turner v. Public Serv. Co. of Colorado*, 563 F.3d 1136, 1149

(10th Cir. 2009), the court held that spoliation—whether intentional or negligent—justifies

adverse inference and increased judicial scrutiny.

TSA's conduct is not isolated. In multiple EEOC decisions—*Gaston v. TSA*, *AFGE v. TSA*

(Dulles), and *AFGE v. TSA* (San Diego)—the agency was found liable for failure to

accommodate, discriminatory practices, and evidentiary mishandling. While not binding, these

rulings reinforce a broader pattern of administrative misconduct that supports Plaintiff's

spoliation and due process claims.

Plaintiff reserves the right to move for evidentiary sanctions and adverse inferences based on the

spoliation and record tampering described throughout this Complaint. The altered affidavits,

corrupted ROI submissions, and suppressed witness statements materially impaired Plaintiff's

ability to fairly litigate and appeal his claims. These procedural defects warrant judicial scrutiny

under *Chambers v. NASCO, Inc*., 501 U.S. 32 (1991), and *Turner v. Public Serv. Co. of

Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009), and further justify de novo review under 5

U.S.C. § 7703(c).

318.    **Preservation of Evidence:** Plaintiff reserves the right to submit unaltered versions of

affidavits, medical records, audio evidence, and administrative filings, either in camera for

review by the court or as authenticated exhibits at appropriate stages of the proceeding.

Such submissions will adhere to applicable federal evidentiary rules, including requirements

for authenticity and admissibility. Should file size or format constraints pose challenges for

electronic filing, Plaintiff will pursue recognized procedures, such as splitting documents

into multiple parts or providing materials physically or by secure digital means, in

accordance with local court rules and the Federal Rules of Civil Procedure, to ensure a

complete and uncorrupted evidentiary record is presented to the Court.

319.    **Equitable Tolling Preservation:** Plaintiff invokes the doctrine of equitable tolling to

preserve judicial review under 5 U.S.C. §§ 7702 and 7703(b), and any related statutory

deadlines. As documented herein, Plaintiff's initial EEO complaint was filed in 2017,

initiating a required administrative exhaustion period. Plaintiff first discovered the material

corruption, omission, and spoliation of the administrative record in October 2024, after

transmission to the Office of Federal Operations. This discovery occurred following a

protracted, approximately eight-year-long administrative exhaustion period, during which

the record became tainted. Plaintiff asserts that these extraordinary circumstances—

combined with Plaintiff's diligence in submitting unaltered versions of evidence and

seeking relief—may present a basis for equitable tolling under Tenth Circuit precedent.

Equitable tolling requires a showing of both reasonable diligence and extraordinary

circumstances. See *Harms v. IRS*, 321 F.3d 1001 (10th Cir. 2003) (affirming a high burden

to establish entitlement to equitable tolling, particularly regarding the requirement for

extraordinary circumstances); *Montoya v. Chao*, 296 F.3d 952 (10th Cir. 2002) (discussing

the applicability of equitable tolling to the limitations period under 5 U.S.C. § 7703(b)(2),

but ultimately finding it inapplicable to the facts of that case due to a lack of extraordinary

circumstances or active deception). To the extent the Office of Federal Operations' final

decision relied on an incomplete or tainted administrative record, Plaintiff seeks review

under 5 U.S.C. § 7703(c), which authorizes the Court to set aside agency action that is

arbitrary, capricious, or contrary to law.

These acts of spoliation and procedural tampering were undertaken with the intent to punish Plaintiff for asserting protected statutory rights and to deter further challenges to TSA Denver's misconduct. The deliberate alteration, suppression, and corruption of key affidavits and ROI materials deprived Plaintiff of a fair administrative process, distorted the evidentiary record, and materially prejudiced his ability to defend against adverse actions.

320.    **Relief Sought:** Plaintiff seeks full relief under 5 U.S.C. §§ 7702 and 7703(b), including the right to de novo review of all claims compromised by spoliated, altered, or corrupted administrative records. Plaintiff requests evidentiary sanctions, such as adverse inference instructions, where appropriate under applicable law and Tenth Circuit precedent, including decisions like *Turner v. Public Serv. Co. of Colorado*, along with correction of the administrative record and reinstatement of all procedural rights undermined by the flawed Report of Investigation (ROI). Plaintiff further seeks leave to submit unaltered affidavits, medical documentation, and recorded evidence in camera, as authorized by the Federal Rules of Civil Procedure, Federal Rules of Evidence, and the Court's inherent authority to manage proceedings. In light of the systemic administrative irregularities and obstructive misconduct, Plaintiff also invokes equitable tolling under *Harms v. IRS* and *Montoya v. Chao* to preserve meaningful access to judicial review and to ensure the integrity of the litigation process. In addition, Plaintiff seeks compensatory damages for reputational harm, emotional distress, and litigation-related losses proximately caused by the agency's spoliation and procedural misconduct, as well as front pay in lieu of reinstatement, and any other monetary relief deemed just and proper by the Court. The adverse actions described herein would not have occurred but for Plaintiff's protected activity and the Agency's unlawful animus.

## Count 8: Retaliation for Protected Whistleblower Activity

## (5 U.S.C. § 2302(b)(8) and (b)(9)(A), (C), and (D))

321.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including
the factual allegations (¶ 1–320) and the jurisdictional and sovereign-immunity waiver
allegations (¶ 2–9), as if fully set forth herein.

322.     **Elements of Whistleblower Retaliation:**

1.     **Plaintiff engaged in protected activity under 5 U.S.C. § 2302(b)(8) and (b)(9),
including:**

A.   Disclosing information the Plaintiff reasonably believed evidenced violations of law, rule, or
regulation, or gross mismanagement, related to:

- Alerting the EEOC Office of Federal Operations (OFO) to material irregularities in
the Record of Investigation (ROI), including altered affidavits, missing exhibits,
and corrupted narrative sections. This action demonstrated a reasonable belief of
violations of law or regulation regarding the handling of EEO investigations and
potentially gross mismanagement of the EEO process. The deliberate alteration and
destruction of evidence within the ROI deprived the OFO of critical firsthand
context and significantly undermined Plaintiff's ability to present a coherent and
documented account of events, thereby prejudicing the administrative process.

- Identifying omitted references in key documents to agency policies, such as HCM
LETTER 771-4 and the National Resolution Center (NRC), which highlighted

deviations from rules governing employee rights, grievance procedures, and

conflict resolution, thereby evidencing potential violations of agency rules or

regulations.

B.   Exercising appeal, complaint, or grievance rights granted by law, rule, or regulation under 5

U.S.C. § 2302(b)(9)(A), including:

- Filing formal EEO complaints and internal grievances regarding discrimination,

  denial of accommodation, and medical privacy violations.

- Submitting medical documentation in support of LWOP and FMLA leave requests.

C.   Cooperating with or disclosing information to the EEOC Office of Federal Operations (OFO)

under 5 U.S.C. § 2302(b)(9)(C) by:

- Submitting authenticated, unaltered copies of key evidentiary materials to OFO,

  including the affidavits of DAFSD Miguel Herrera and STSO Michael McGuire,

  and the statement of AFSD Jeff Podolski, in order to reveal and remedy the

  spoliation of the ROI.

- Later resubmitting Plaintiff's own uncorrupted affidavit to the OFO to provide the

  complete and accurate account previously obliterated.

- DAFSD Miguel Herrera's affidavit (ROI Ex. F5, pp. 338–346): The version

submitted to the Office of Federal Operations was extensively mutilated—portions of page 1

were blacked out, the bottom of page 2 was obscured by overlapping artifacts, and pages 3 and 5

were entirely missing. These redactions concealed Herrera's direct knowledge of Plaintiff's

protected activity and procedural concerns. The original affidavit, by contrast, details Plaintiff's

complaints about FMLA leave being delayed, denied, and subjected to heightened scrutiny. It

confirms Plaintiff's participation in mediation over non-selection, expresses that comparators

like Jenny Hyde and Tamika Washington were discussed, and outlines that management—including TSMs Bobbi White and Allan Elliott—were actively tasked with investigating Plaintiff's documentation and leave compliance. These omitted statements substantiate Plaintiff's allegations of discriminatory enforcement, retaliatory Fitness-for-Duty investigations, and materially adverse actions—making the spoliation especially prejudicial and willful.

- STSO Michael McGuire's affidavit (ROI p. 379): OFO's version appeared fully blacked out, concealing statements about shift coverage, work performance, and FMLA scheduling issues. The original version discusses favorable comparators.

- AFSD Jeff Podolski's statement (ROI p. 4170): The version submitted to OFO omitted and obscured key content from the original, including material references to HCM LETTER 771-4 and TSA's National Resolution Center (NRC). These policies affirm employees' rights to grieve non-EEO issues, secure representation under TSA MD 1100.63-3, and engage in conflict resolution mechanisms without retaliation. The original document supports Plaintiff's assertion that his grievances were protected and policy-based, and further highlights inconsistencies in how AWOL and accommodation requests were handled. The altered version downplayed these protections, misrepresenting the procedural context of Plaintiff's complaints and contributing to the tainted ROI.

- Plaintiff's own affidavit (ROI p. 102): The version transmitted to OFO was rendered unreadable—corrupted with unintelligible symbols, scrambled formatting, and data loss that obliterated nearly the entire narrative. This garbled version stood in stark contrast to the original, which clearly articulated Plaintiff's timeline of protected activity, submission of medical documentation, challenges with FMLA/LWOP classification, and procedural violations by TSA officials. The corruption of this foundational narrative statement deprived the OFO of critical

firsthand context and undermined Plaintiff's ability to present a coherent and documented

account of events. The original affidavit, later resubmitted by Plaintiff, directly rebuts the

agency's rationale for removal and supports multiple claims of retaliation, interference, and due

process violations.

   **2.     Agency officials had knowledge of the protected activity:**

•     SHRS Diane DiCarlo, TSM Paul Griego, and DAFSD Miguel Herrera were aware of

Plaintiff's EEO complaints, medical submissions, and protected activity at the agency and EEOC

levels;

•     On December 18, 2017, TSM Bobbi White explicitly acknowledged Plaintiff had a pending

EEOC complaint during the proposed removal process;

•     After Plaintiff's termination, OFO was provided both altered and original records, fully

documenting the extent of the spoliation; however, the agency failed to correct the record or

remedy the resulting prejudice;

•     These post-termination disclosures reinforce the whistleblower nature of Plaintiff's earlier

activity and establish a pattern of retaliatory scrutiny.

   **3.     Plaintiff suffered materially adverse actions after engaging in protected activity:**

•     TSA initiated multiple retaliatory Fitness-for-Duty evaluations;

•     Denied Light Duty requests and misclassified medically supported absences as AWOL;

•     Ultimately terminated Plaintiff while he was tapering medication under physician

supervision and maintaining active administrative complaints.

   **4.     A causal connection exists between Plaintiff's whistleblower activity and the
   adverse actions:**

- Close temporal proximity between Plaintiff's protected disclosures and the December 2017 Notice of Proposed Removal;

- Comparator data (e.g., TSOs Virginia Hyde and Herschel Craig) demonstrate others were not subjected to similar retaliation;

These materially adverse actions were undertaken with the intent to punish Plaintiff for exposing the agency's evidentiary misconduct and to deter further protected disclosures.

The escalating sequence of adverse actions following each protected disclosure—including Plaintiff's efforts to correct the spoliated administrative record by resubmitting affidavits and alerting the Office of Federal Operations—strongly supports a retaliatory motive under 5 U.S.C. § 2302(b)(9)(A), (C), and (D). These adverse actions were not only in response to Plaintiff's original protected activity, but also targeted his attempts to expose procedural misconduct and preserve evidentiary integrity.

This pattern of retaliation—culminating in termination amid ongoing administrative complaints and spoliation disclosures—demonstrates a sustained and unlawful effort to suppress protected activity and manipulate the evidentiary record.

323.  **Relief Sought:** Plaintiff seeks relief under 5 U.S.C. § 2302(b)(9) and applicable federal whistleblower protection laws, including reversal of retaliatory personnel actions, removal of adverse employment records stemming from protected disclosures, and restoration of all employment-related benefits lost due to retaliation. Although reinstatement is typically a

remedy for whistleblower violations, Plaintiff respectfully declines reinstatement in light of
the documented hostile work environment at TSA Denver and the associated psychological
harm. In lieu of reinstatement, Plaintiff seeks front pay to compensate for ongoing loss of
future earnings and career advancement opportunities. Plaintiff also seeks equitable relief
for reputational damage, compensatory damages for emotional distress and financial loss,
and the opportunity to submit unaltered affidavits and corroborating evidence preserved
outside the corrupted administrative record. In light of procedural misconduct and the
agency's failure to safeguard evidentiary integrity, Plaintiff invokes de novo review under 5
U.S.C. §§ 7702 and 7703, and requests application of equitable tolling as supported by
*Harms* and *Montoya* to preserve the viability of all whistleblower claims. The adverse
actions described herein would not have occurred but for Plaintiff's protected activity and
the Agency's unlawful animus.

**Legal Clarification:** The conditional counts under the Rehabilitation Act and FMLA are pleaded
pursuant to Fed. R. Civ. P. 8(d)(2)–(3). Plaintiff pleads these counts solely in the alternative to
primary statutory and constitutional claims, as permitted in the Tenth Circuit. See *Walkingstick
Dixon v. Oklahoma ex rel*. Reg'l Univ. Sys. of Okla. Bd. of Regents, 125 F.4th 1321 (10th Cir.
2025) (demonstrating the consideration of FMLA and Rehabilitation Act claims alongside other
statutory claims); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 517 (10th Cir. 1998); and
*Doe v. Univ. of Denver*, 952 F.3d 1182 (10th Cir. 2020). These authorities, alongside the
flexibility of Rule 8(d), support the preservation of alternative legal remedies where the precise
scope of relief or potential preemption issues may be subject to further development.

**Supplemental Counts (Conditionally Pleaded)**

**Count 9 (Conditional): Rehabilitation Act Disability Discrimination (29 U.S.C. § 794, §
794(d))**

324.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including
the factual allegations (¶ 1–323) and the jurisdictional and sovereign-immunity waiver
allegations (¶ 2–9), as if fully set forth herein. This count is conditionally pleaded under Rule
8(d)(2), subject to the Court's determination that it is not preempted by the Aviation and
Transportation Security Act (ATSA). Plaintiff does not challenge TSA's discretion under 49
U.S.C. § 44935 or raise claims that interfere with national security determinations. This
disclaimer applies equally to all conditionally pleaded counts that follow (Counts 9–15).

325.    To the extent the Court finds that claims under the Rehabilitation Act of 1973 are not
preempted by the Aviation and Transportation Security Act (ATSA), Plaintiff pleads this
count in the alternative. Plaintiff acknowledges that some district courts have interpreted the
ATSA to preempt certain statutory claims brought by Transportation Security Officers (e.g.,
*Scull v. Wolf*, 2020 WL 7480961 (D. Colo.)), but respectfully asserts that *Scull* was a non-
binding magistrate opinion and does not constitute controlling precedent. Plaintiff relies
instead on controlling and persuasive Tenth Circuit case law—*Walkingstick Dixon v.
Oklahoma*, *Exby-Stolley v. Bd. of Cty. Comm'rs*, and *Hennagir v. Utah Dep't of Corr.*—
which affirm the viability of disability-based claims for federal employees in the federal
employment context, implicitly supporting the application of the Rehabilitation Act to federal
employees, including TSOs, where preemption by ATSA is not warranted. These authorities
establish that the Rehabilitation Act incorporates ADA standards for disparate treatment,

failure to accommodate, and retaliation. See also *Herrmann v. Salt Lake City*, No. 20-4153, 2021 WL 2584406 (10th Cir. June 24, 2021).

326.    **Legal Elements of Rehabilitation Act Claim:**

The following facts establish a prima facie case of disability discrimination and failure to accommodate under the Rehabilitation Act, 29 U.S.C. § 794:

- **Qualified Individual with a Disability:** Plaintiff is a qualified individual with a disability under 29 U.S.C. § 705(9)(B), having been diagnosed with PTSD and a back injury, both of which required medical treatment and substantially limited one or more major life activities.

- **Request for Accommodation:** Plaintiff requested reasonable accommodations and submitted supporting medical documentation in compliance with TSA policy and Management Directive 1100.63-1.

- **Denial of Accommodation:** TSA Denver denied those accommodations, including Plaintiff's requests for light duty and the continuation of his prescribed PTSD medication, and instead required Plaintiff to taper off the medication before returning to work.

- **Adverse Action:** TSA subsequently terminated Plaintiff during the tapering process, despite his compliance with the agency's instructions.

- **Pretext:** TSA's proffered justification for termination—accumulated AWOL hours—was demonstrably pretextual, as those absences were the direct and foreseeable result of TSA's own directive prohibiting Plaintiff's return to duty while undergoing medically prescribed treatment.

- **Statutory Violation:** TSA's conduct constitutes disability discrimination and failure to accommodate, in violation of the Rehabilitation Act, 29 U.S.C. § 794.

327.    **Relief Sought:** Plaintiff respectfully seeks full equitable and monetary relief under the Rehabilitation Act, 29 U.S.C. § 794, and related federal statutes, including but not limited to: reinstatement of employment or, in the alternative, front pay if reinstatement is impractical due to the nature of the discrimination and the hostile environment at TSA Denver; back pay with interest pursuant to the Back Pay Act, 5 U.S.C. § 5596; restoration of employment-related benefits and retirement eligibility, including correction and redeposit of Thrift Savings Plan records under 5 U.S.C. § 8474(e); and recovery of unpaid health benefits under the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8902(k), 8909. Plaintiff further seeks compensatory damages for emotional distress, humiliation, and out-of-pocket financial losses, asserting that such damages are recoverable for federal employees under Section 501 of the Rehabilitation Act, which applies standards consistent with Title VII and is not preempted by the Spending Clause limitations articulated in *Cummings v. Premier Rehab Keller, PLLC*. In the alternative, Plaintiff seeks all available damages under applicable law. correction of personnel records to remove discriminatory actions and improper AWOL designations; declaratory relief affirming Plaintiff's status as a qualified individual with a disability and confirming the unlawfulness of TSA's conduct; and prospective injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702, to prohibit future violations. This count is pleaded conditionally pursuant to Fed. R. Civ. P. 8(d)(2)–(3), to be invoked only if the Court finds that the Rehabilitation Act is not preempted by the Aviation and Transportation Security Act (ATSA). Plaintiff further seeks

attorneys' fees and litigation costs to the extent allowed by 29 U.S.C. § 794a(b) and other

applicable law. The adverse actions described herein would not have occurred but for

Plaintiff's protected activity and the Agency's unlawful animus.

## Count 10 (Conditional): FMLA Interference (29 U.S.C. § 2615(a)(1))

328.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–327) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein.

329.    This count is pleaded in the alternative under the Family and Medical Leave Act of 1993

(FMLA), 29 U.S.C. § 2615(a)(1), and is asserted only to the extent the Court finds that such

claims are not preempted by the Aviation and Transportation Security Act (ATSA), and that

Plaintiff, as a federal employee, retains standing to assert such claims.

330.    29 U.S.C. § 2615 (a)(1): Prohibits an employer from interfering with, restraining, or

denying the exercise of any right provided under the FMLA.

331.    **Legal Elements of FMLA Interference with Supporting Facts:**

   1.    **Eligibility:** Plaintiff was eligible for FMLA leave due to serious health conditions,

including PTSD and a back injury, and to care for a family member with documented medical

needs.

   2.    **Denial of Leave Rights:** TSA Denver interfered with Plaintiff's substantive rights

under the FMLA by:

- Denying the use of 240 hours that were already approved under Plaintiff's FMLA certification.

- Refusing to allow Plaintiff to use FMLA leave for his own medical conditions, falsely asserting that FMLA could only be used for family-related matters.

- Failing to restore 112 hours of pre-scheduled FMLA leave related to Plaintiff's son's appointments, despite Plaintiff's compliance with all documentation requests.

**3.    Forcing Alternative Leave:** TSA required Plaintiff to seek Leave Without Pay (LWOP) under Management Directive 1100.63-1 instead of honoring his approved FMLA leave, despite the directive allowing up to six months of LWOP with proper documentation. This constituted indirect interference.

4.    Repercussions and Harm:

- Upon returning from medical leave, Plaintiff was placed on leave restrictions.

- TSA's actions interfered with Plaintiff's statutory right to take leave, ultimately contributing to his termination and resulting in economic losses and emotional distress. The Tenth Circuit has reiterated that to establish a prima facie case of FMLA interference, a plaintiff must show not only that the leave was interfered with but also that the interference caused prejudice, such as a tangible employment harm. *Ford v. Brennan*, No. 21-4086, 2023 WL 5571847 (10th Cir. Aug. 30, 2023).

As further documented in Exhibit F52, Plaintiff was approved for 394 hours of FMLA-related leave during 2017, but TSA failed to credit that time properly, instead retroactively charging it as AWOL. This misclassification directly interfered with Plaintiff's statutory rights under the FMLA.

332.  **Relief Sought:** Plaintiff respectfully seeks full monetary and equitable relief under the

Family and Medical Leave Act of 1993, 29 U.S.C. § 2615(a)(1), including but not limited

to: back pay with interest; restoration of improperly charged AWOL leave; reinstatement of

benefits lost due to unlawful interference with protected leave; compensatory damages for

economic losses; and correction of leave and attendance records. Plaintiff also seeks

declaratory relief affirming his entitlement to FMLA leave for both personal and family

medical conditions, and prospective injunctive relief prohibiting TSA from engaging in

future interference with FMLA rights. Plaintiff does not seek reinstatement due to the

medically retaliatory environment documented at TSA Denver, and instead requests front

pay to compensate for future lost earnings and career advancement. This count is pleaded

conditionally pursuant to Fed. R. Civ. P. 8(d)(2)–(3), to be invoked only if the Court

determines that FMLA claims are not preempted by the Aviation and Transportation

Security Act (ATSA). The adverse actions described herein would not have occurred but for

Plaintiff's protected activity and the Agency's unlawful animus.

## Count 11 (Conditional): Retaliation for Exercising FMLA Rights (29 U.S.C. § 2615(a)(2))

333.  Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–332) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as though fully set forth herein.

334.  This count is asserted conditionally under the Family and Medical Leave Act of 1993

(FMLA), 29 U.S.C. § 2615(a)(2), and only to the extent the Court determines that such

claims are not preempted by the Aviation and Transportation Security Act (ATSA), 49

U.S.C. § 44935 note. Plaintiff further asserts that, as a federal employee, he retains standing to pursue these claims based on evolving case law and TSA's implementation of FMLA-like policies.

335.    29 U.S.C. § 2615(a)(2): Prohibits an employer from discharging or otherwise discriminating against an individual for opposing practices made unlawful by the FMLA or for exercising FMLA rights.

336.    **Legal Elements of FMLA Retaliation with Supporting Facts:**

1.    **Protected Activity:** Plaintiff engaged in protected activity by requesting and using FMLA leave for his own serious medical conditions and for caregiving obligations, and by submitting documentation in support of leave and accommodation requests.

2.    **Adverse Actions by TSA Denver:** TSA retaliated against Plaintiff through a series of escalating adverse actions, including:

•    Requiring multiple Fitness-for-Duty evaluations.

•    Failing to return 112 hours of pre-approved FMLA leave, despite verified medical documentation.

•    Misrepresenting the record in affidavits and declarations regarding the timeline of Plaintiff's FMLA-related submissions.

•    Ignoring medical documentation confirmed by SHRS Diane DiCarlo, who nonetheless dismissed it as "immaterial" and "irrelevant."

3.    **Pretextual Justifications:**

TSA required Plaintiff to provide written proof that he had discontinued medically necessary

PTSD medication, while simultaneously ignoring light-duty and FMLA paperwork submitted by

his physician. These actions preceded Plaintiff's termination. Internal affidavits confirm that TSA

officials were aware of Plaintiff's protected FMLA activity on the very same day a Notice of

Proposed Removal was issued. The AWOL charges underlying that notice stemmed directly from

Plaintiff's compliance with TSA's own no-work directive while on medically prescribed

treatment.

> **4.    Causal Connection and Harm:**

The proximity in time between Plaintiff's exercise of FMLA rights and his termination,

combined with internal inconsistencies and adverse treatment, establish a causal connection and

support an inference of retaliatory motive. The Tenth Circuit has clarified that where no

independent decision-maker breaks the causal chain, a jury may infer retaliatory motive based on

temporal proximity and pretext. *Parker v. United Airlines*, Inc., No. 21-4093, 2022 WL 4466175

(10th Cir. Sept. 26, 2022). Here, no independent actor intervened in Plaintiff's removal process,

and the same decision-makers who were aware of Plaintiff's protected FMLA activity directly

participated in the adverse action. Plaintiff suffered significant financial and emotional harm as a

direct result of this retaliation. See also the "Pattern of Fitness-for-Duty Misuse" detailed under

Count 3, which is incorporated herein by reference and supports Plaintiff's claims of retaliation,

procedural unfairness, and discriminatory application of medical policies.


337.    **Relief Sought:** Plaintiff respectfully seeks full monetary and equitable relief pursuant to

the Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2), including but not limited to:

back pay with interest; compensatory damages for lost wages and adverse career

consequences; correction of personnel and attendance records to reflect lawful use of

protected leave; and declaratory relief affirming the unlawfulness of TSA's retaliatory

conduct. Due to the documented retaliatory and medically discriminatory environment at

TSA Denver, Plaintiff requests front pay in lieu of reinstatement where appropriate. Plaintiff

further seeks prospective injunctive relief prohibiting future retaliation, as well as any other

relief the Court deems just and proper. This count is pleaded conditionally pursuant to Fed.

R. Civ. P. 8(d)(2)–(3), to be invoked only if the Court finds the FMLA claims are not

preempted by the Aviation and Transportation Security Act (ATSA). The adverse actions

described herein would not have occurred but for Plaintiff's protected activity and the

Agency's unlawful animus.


### Count 12 (Conditional): Hostile Work Environment Under the Rehabilitation Act (29 U.S.C. § 794, incorporating 42 U.S.C. § 12112(b)(1))

338.    Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–337) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein.


339.    This count is pleaded in the alternative under the Rehabilitation Act of 1973, 29 U.S.C. §

794, and is asserted only to the extent the Court determines such claims are not preempted

by the Aviation and Transportation Security Act (ATSA), 49 U.S.C. § 44935 note.


340.    29 U.S.C. § 794 (incorporating 42 U.S.C. § 12112(b)(1)): The Rehabilitation Act

prohibits disability-based harassment in federal employment, where such conduct is

sufficiently severe or pervasive to alter the conditions of employment. These protections

incorporate ADA standards, including hostile work environment doctrine.


341.    **Legal Elements of Hostile Work Environment with Supporting Facts:**

   **1.    Qualified Status:** Plaintiff was a qualified individual with a disability under the

Rehabilitation Act, with documented diagnoses of PTSD and a back injury.

   **2.    Unwelcome Harassment:** Plaintiff was subjected to persistent and unwelcome

conduct based on those conditions:

   •    DAFSD Miguel Herrera stated on audio recording, "This thing seems to be

happening over and over again with you" and instructed Plaintiff to "suck it up."

   •    Plaintiff repeatedly raised concerns about ongoing AWOL designations and expressed

fear that his job was being held over his head.

   •    Despite verbal assurances that the issue would be addressed "in a timely manner," no

corrective action was taken.

   **3.    Medical Discrimination:**

   •    Plaintiff was subjected to multiple Fitness-for-Duty demands after TSA learned he

was prescribed a benzodiazepine for PTSD. This conduct forms part of the broader 'Pattern of

Fitness-for-Duty Misuse' described in Count 3, which is incorporated herein by reference and

further supports Plaintiff's claims of retaliatory motive, procedural unfairness, and

discriminatory enforcement of medical policies.

   •    TSA prohibited Plaintiff from returning to work unless he provided a letterhead from

his doctor confirming he was off the medication.

• TSA ignored multiple Light Duty and FMLA requests and ultimately terminated Plaintiff during the tapering process.

• After termination, SHRS Diane DiCarlo sent Plaintiff an email referencing his PTSD documentation, despite her earlier dismissal of his medical documentation as "immaterial" and "irrelevant."

**4.** **Severity and Pervasiveness:** The totality of TSA Denver's conduct—including humiliation, repeated questioning about medical conditions, and failure to accommodate— created a hostile and abusive work environment.

**5.** **Failure to Act:** TSA Denver knew or should have known of the hostile environment but failed to take prompt and effective remedial measures.

342. **Relief Sought:** Plaintiff respectfully requests full monetary and equitable relief pursuant to Section 501 of the Rehabilitation Act (29 U.S.C. § 791), incorporating the remedies of 29 U.S.C. § 794a(a)(1) (linking to Title VII remedies); the Back Pay Act, 5 U.S.C. § 5596; the Thrift Savings Plan correction provisions of 5 U.S.C. § 8474(e); and the Administrative Procedure Act, 5 U.S.C. § 702. This includes, but is not limited to: compensatory damages for emotional distress, humiliation, and mental anguish; back pay with interest; front pay in lieu of reinstatement due to the persistently hostile and psychologically damaging environment at TSA Denver; restoration of federal employment benefits and retirement eligibility; reimbursement for out-of-pocket medical and financial losses; correction of personnel records; removal of all hostile work environment-related annotations; declaratory relief affirming the unlawfulness of TSA's conduct; and such other relief as the Court deems just and proper based on the discrimination and unlawful practices described herein. The

adverse actions described herein would not have occurred but for Plaintiff's protected

activity and the Agency's unlawful animus.

**Count 13 (Conditional): Retaliation for Requesting Accommodations – Rehabilitation Act
(29 U.S.C. § 794(d), incorporating 42 U.S.C. § 12203(a))**

343.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–342) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein.

344.     This count is pleaded in the alternative under the Rehabilitation Act of 1973, 29 U.S.C.

§ 794, and is asserted only to the extent the Court determines such claims are not preempted

by the Aviation and Transportation Security Act (ATSA), 49 U.S.C. § 44935 note. Pursuant

to 29 U.S.C. § 794(d), the Rehabilitation Act incorporates the standards of the Americans

with Disabilities Act (ADA), including 42 U.S.C. § 12203(a), which prohibits retaliation

against individuals who request reasonable accommodations. Plaintiff asserts this count

solely under the Rehabilitation Act and does not bring any independent cause of action

under the ADA.

345.     **Elements of Retaliation for Requesting Accommodations with supporting facts:**

1.     **Plaintiff sought reasonable accommodations** for his disabilities, including PTSD

and a back injury, both of which substantially limited one or more major life activities.

2.     **TSA Denver failed to engage in the interactive process**, ignored Plaintiff's requests

for light duty, and charged Plaintiff with over 400 hours of AWOL. The Tenth Circuit has held

that an employer's failure to engage in the interactive process violates disability accommodation

law and may itself support liability under the Rehabilitation Act. *Aubrey v. Koppes*, 975 F.3d 995,

1007 (10th Cir. 2020). TSA prohibited Plaintiff from returning to work unless he produced a

letter from his doctor confirming he was no longer taking prescribed PTSD medication—despite

simultaneously refusing to process Plaintiff's light duty and FMLA leave requests.

    **3.    TSA Denver retaliated by fostering a hostile work environment** and ultimately

terminating Plaintiff. The adverse actions were causally linked to Plaintiff's protected activity—

his requests for accommodations. See also the "Pattern of Fitness-for-Duty Misuse" detailed

under Count 3, which is incorporated herein by reference and supports Plaintiff's claims of

retaliation, procedural unfairness, and discriminatory application of medical policies.

346.   **Relief Sought:** Plaintiff respectfully seeks full equitable and monetary relief pursuant to

    the Rehabilitation Act, 29 U.S.C. § 794, and related statutes, including the Back Pay Act, 5

    U.S.C. § 5596; the Thrift Savings Plan correction provisions of 5 U.S.C. § 8474(e); the

    Federal Employees Health Benefits Act, 5 U.S.C. §§ 8902(k), 8909; and the Administrative

    Procedure Act, 5 U.S.C. § 702. This includes, but is not limited to: compensatory damages

    for emotional distress, mental anguish, and reputational harm; back pay with interest; front

    pay in lieu of reinstatement where appropriate; restoration of employment-related benefits,

    retirement contributions, and federal health coverage; correction of personnel records to

    remove retaliatory AWOL charges and termination documentation; declaratory relief

    confirming Plaintiff's right to request accommodations free from retaliation; and

    prospective injunctive relief requiring TSA to engage in the interactive process and prevent

    future violations. This count is pleaded conditionally pursuant to Fed. R. Civ. P. 8(d)(2)–(3),

to be invoked only if the Court finds that the Rehabilitation Act is not preempted by the

ATSA. The adverse actions described herein would not have occurred but for Plaintiff's

protected activity and the Agency's unlawful animus.

## Count 14 (Conditional): Disability Discrimination – Rehabilitation Act (29 U.S.C. § 794(d), as Amended by the ADA Amendments Act of 2008)

347.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including

the factual allegations (¶ 1–346) and the jurisdictional and sovereign-immunity waiver

allegations (¶ 2–9), as if fully set forth herein. This count is brought pursuant to the

Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits disability discrimination by

federal employers. The Americans with Disabilities Act Amendments Act of 2008

(ADAAA) significantly broadened the definition of "disability," and those standards are

fully incorporated into the Rehabilitation Act via 29 U.S.C. § 794(d).

348.     This count is pleaded in the alternative, to be considered only to the extent the Court

finds that such claims are not preempted by the Aviation and Transportation Security Act

(ATSA), 49 U.S.C. § 44935 note.

349.     **Elements of Disability Discrimination with Supporting Facts:**

1.     **Disability:** Plaintiff was diagnosed with PTSD and a back injury—both of which

substantially limit major life activities and meet the ADAAA's broadened definition of disability.

2.     **Qualification:** Plaintiff was fully capable of performing the essential functions of his

role as a Transportation Security Officer with or without reasonable accommodations.

3.  **Failure to Accommodate:** TSA Denver:

•   Ignored physician recommendations, including the need for a lumbar support chair.

•   Rejected multiple requests for light duty.

•   Prohibited Plaintiff from returning to work unless he discontinued medically

necessary PTSD medication.

•   Offered no alternative accommodations.

4.  **Adverse Actions:** TSA placed Plaintiff on over 400 hours of AWOL, denied him

promotional opportunities, and ultimately terminated his employment during the medication

tapering process.

5.  **Resulting Harm:** Plaintiff suffered both economic and non-economic damages,

including lost income, early retirement withdrawal, loss of job benefits, and emotional distress.

350.   Additional Facts:

•   TSA Denver records show that candidates selected for roles Plaintiff applied for did

not identify as disabled.

•   AFSD Jeff Podolski gave conflicting statements about his involvement in the

selection process, raising questions of pretext.

•   SHRS Diane DiCarlo labeled Plaintiff's medical documentation "immaterial" and

"irrelevant."

•   The extended AWOL designation and Plaintiff's termination were the result of

medically necessary treatment, not misconduct. See also the "Pattern of Fitness-for-Duty

Misuse" detailed under Count 3, which is incorporated herein by reference and supports

Plaintiff's claims of retaliation, procedural unfairness, and discriminatory application of medical

policies.

351.   **Relief Sought:** Plaintiff respectfully seeks full monetary and equitable relief under the

Rehabilitation Act, 29 U.S.C. § 794, as amended by the ADA Amendments Act of 2008, and

related federal statutes. These include back pay with interest pursuant to the Back Pay Act, 5

U.S.C. § 5596; front pay in lieu of reinstatement due to the medically hostile environment at

TSA Denver; restoration of employment-related benefits, including Thrift Savings Plan

corrections and redeposits under 5 U.S.C. § 8474(e); and recovery of unpaid health benefits

under the Federal Employees Health Benefits Act, 5 U.S.C. §§ 8902(k), 8909. Plaintiff also

seeks compensatory damages for emotional distress, humiliation, and loss of career

advancement opportunities; correction of personnel records to eliminate discriminatory

annotations and improper AWOL designations; declaratory relief affirming Plaintiff's status

as a qualified individual with disabilities and the unlawfulness of TSA's conduct; and

prospective injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 702, to

ensure compliance with accommodation obligations. This count is pleaded conditionally

pursuant to Fed. R. Civ. P. 8(d)(2)–(3), to be invoked only if the Court determines the

Rehabilitation Act is not preempted by the ATSA. The adverse actions described herein

would not have occurred but for Plaintiff's protected activity and the Agency's unlawful

animus.

## Count 15 (Conditional): Disability Discrimination – Disparate Treatment (29 U.S.C. § 794(d), Rehabilitation Act of 1973)

352.     Plaintiff incorporates by reference all preceding paragraphs of this Complaint, including the factual allegations (¶ 1–351) and the jurisdictional and sovereign-immunity waiver allegations (¶ 2–9), as if fully set forth herein.

353.     This count is pleaded in the alternative under the Rehabilitation Act of 1973, 29 U.S.C. § 794, and is asserted only to the extent the Court finds that such claims are not preempted by the Aviation and Transportation Security Act (ATSA), 49 U.S.C. § 44935 note. Pursuant to 29 U.S.C. § 794(d), the standards of the Americans with Disabilities Act (ADA), including those expanded by the ADA Amendments Act of 2008 (ADAAA), are fully incorporated and apply equally to federal employees.

354.     **Elements of Disparate Treatment Disability Discrimination with Supporting Facts:**

1.     **Qualified Individual with a Disability:** Plaintiff is a qualified individual with diagnosed PTSD and a back injury, both of which substantially limit major life activities and qualify as disabilities under the ADAAA-enhanced standards.

2.     **Adverse Employment Actions:** TSA Denver:

•     Required Plaintiff to discontinue medically necessary PTSD medication as a condition of return.

•     Denied multiple light-duty requests and placed Plaintiff on over 400 hours of AWOL.

•     Ultimately terminated Plaintiff while he was tapering off medication under TSA's instruction. See also the "Pattern of Fitness-for-Duty Misuse" detailed under Count 3, which is

incorporated herein by reference and supports Plaintiff's claims of retaliation, procedural

unfairness, and discriminatory application of medical policies.

3. **Discriminatory Motive:** Plaintiff's disability was a motivating factor in these

adverse actions. Affidavits and management emails show that non-disabled comparators received

approved FMLA leave without scrutiny, were not placed on AWOL, and were not subjected to

medical fitness inquiries.

4. **Pretext:** TSA officials offered inconsistent explanations regarding Plaintiff's leave

eligibility and promotional non-selection. Conflicting affidavits about who made selection

decisions and when Plaintiff's documentation was reviewed support a finding of pretext.

5. **Harm:** Plaintiff experienced economic loss (wages, TSP retirement, health coverage)

and emotional harm due to discriminatory treatment.


355. **Relief Sought:** Plaintiff respectfully seeks full equitable and monetary relief under the

Rehabilitation Act, 29 U.S.C. § 794, including all remedies authorized through the Back Pay

Act, 5 U.S.C. § 5596; the Thrift Savings Plan restoration provisions under 5 U.S.C.

§ 8474(e); and the Administrative Procedure Act, 5 U.S.C. § 702. These include back pay

with interest, front pay in lieu of reinstatement due to the discriminatory and retaliatory

conditions at TSA Denver, restoration of federal employment benefits, reimbursement of

out-of-pocket medical and financial losses, and correction of personnel and attendance

records to remove unlawful AWOL designations. Plaintiff also seeks compensatory damages

for emotional distress, reputational harm, and diminished earning potential, along with

declaratory and injunctive relief affirming the unlawfulness of TSA's discriminatory actions

and requiring the agency to prevent similar disparate treatment in the future. This count is

pleaded conditionally under Fed. R. Civ. P. 8(d)(2)–(3), to be invoked only if the Court

determines such Rehabilitation Act claims are not preempted by the ATSA. The adverse

actions described herein would not have occurred but for Plaintiff's protected activity and

the Agency's unlawful animus.


356.  **JOINDER OF SECRETARY OF HOMELAND SECURITY (OFFICIAL CAPACITY)**

Plaintiff adds Kristi L. Noem, Secretary of the Department of Homeland Security, in her official

capacity, as an agency head responsible for the administration of the Transportation Security

Administration (TSA), under 5 U.S.C. §702. This addition does not constitute a claim against

any individual in their personal capacity. Plaintiff seeks no personal liability or damages from the

Secretary or any TSA official in their individual capacity. All relief is sought against the United

States and its agencies under applicable statutory waivers of sovereign immunity. This joinder

ensures proper identification of the agency head for purposes of relief and enforcement,

consistent with Fed. R. Civ. P. 17(d) and agency practice.

## VIII. RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests that the Court enter judgment in his favor and

against Defendant, and award the following relief:

1. **Declaratory Relief**: A declaration that Defendant violated Plaintiff's constitutional right

   to procedural due process under the Fifth Amendment, and engaged in prohibited

   personnel practices in violation of 5 U.S.C. § 2302(b)(10) and (b)(12).

2. **Back Pay and Benefits**: An award of back pay, interest, allowances, and other lost

   compensation pursuant to the Back Pay Act, 5 U.S.C. § 5596.

3. **Retirement Correction**: An order correcting Plaintiff's Thrift Savings Plan (TSP)

   records and authorizing the redeposit of prematurely withdrawn retirement funds, and

   financial restoration for harm caused by the premature withdrawal of TSP funds

   (including associated penalties, fees, and lost investment gains), reflecting the value the

   account would have accrued absent Defendant's unlawful actions, pursuant to 5 U.S.C.

   § 8474(e) and the Court's equitable authority under the Administrative Procedure Act, 5

   U.S.C. § 702.

4. **Health Benefits Restoration**: An award of unpaid Federal Employees Health Benefits

   (FEHB), continuation coverage, and reimbursement for medical expenses incurred during

   the lapse of coverage pursuant to 5 U.S.C. §§ 8902(k) and 8909.

5. **Compensatory Damages**: Compensatory damages for emotional distress, reputational

harm, litigation delay, and loss of future earning capacity, consistent with 26 U.S.C.

§ 104(a)(2) (non-taxable personal injury recovery), and as authorized under the

Rehabilitation Act of 1973 (as amended by the ADA Amendments Act of 2008 via 29

U.S.C. § 794(d)), the Family and Medical Leave Act (FMLA), and other applicable

statutes.

6. **Equitable and Injunctive Relief**: Appropriate equitable relief under the Administrative

Procedure Act, 5 U.S.C. § 702, including:

• Front Pay in Lieu of Reinstatement: Because reinstatement is no longer viable due to

Plaintiff's post-termination disqualification from federal employment, Plaintiff

respectfully seeks front pay as an equitable substitute. This includes full future

compensation (including salary, TSP, FEHB contributions, locality pay, and retirement

credit), and restoration of associated benefits under applicable federal law. Plaintiff's

disqualification was not the result of a voluntary lifestyle decision, but a direct and

foreseeable consequence of Defendant's unlawful actions—including wrongful

termination, refusal to accommodate, and interference with federally protected leave—

which deprived Plaintiff of income, health coverage, and access to alternative PTSD

treatment. As a result, Plaintiff was compelled to follow his physician's advice and obtain

a medical marijuana card under Colorado law. Because this lawful post-termination

medical decision now disqualifies Plaintiff from federal employment, reinstatement is

legally impracticable. As reinstatement is no longer a viable remedy under current federal

employment policies, front pay is warranted and authorized as equitable relief under the

Administrative Procedure Act, 5 U.S.C. § 702.

• Removal of improper AWOL charges and related disciplinary records;

• Correction of personnel files and leave balances;

• Restoration of seniority, retirement credit, and leave accrual.

7. **Preliminary Injunctive Relief**: A preliminary injunction ordering the Defendant to

provide interim financial relief, including lost wages and benefits (including continuation

of FEHB coverage or equivalent monetary contribution), to prevent irreparable harm

pending final resolution of this action. This request is made recognizing that final

reinstatement may not be viable, and is intended to mitigate ongoing economic hardship

and ensure access to essential medical care, which cannot be adequately remedied by a

final monetary award given Plaintiff's unique circumstances as documented herein.

8. **Attorney's Fees and Costs**: An award of reasonable attorney's fees, expert fees, and

costs under the Equal Access to Justice Act, 28 U.S.C. § 2412(d); the Rehabilitation Act,

29 U.S.C. § 794a(b); the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(3); and any

other applicable statutory provision permitting fee recovery.

9. **Remedies for Spoliation of Evidence**: Sanctions and equitable relief for Defendant's

spoliation of material evidence, including:

• Adverse inferences that the altered or missing evidence would have supported Plaintiff's

claims;

- Monetary or evidentiary sanctions;

- Supplemental compensatory damages for litigation delay and emotional distress resulting from the spoliation;

- Any further equitable relief the Court deems necessary to remedy prejudice.

10. **Further Relief**: Such other and further relief as the Court deems just and proper. This relief section is intended to preserve all remedies associated with Plaintiff's primary and alternative claims, including those pleaded conditionally under Rule 8(d)(2)–(3). To the extent any count is deemed preempted or otherwise unavailable, Plaintiff requests that the Court grant any overlapping or alternative relief available under other statutory, constitutional, or equitable grounds arising from the same nucleus of operative fact. All relief requested is sought only to the extent such relief is not barred by the Aviation and Transportation Security Act (ATSA), and only where sovereign immunity is expressly waived.

But let judgment run down as waters, and righteousness as a mighty stream.

— Amos 5:24 (KJV)

And not only so, but we glory in tribulations also: knowing that tribulation worketh patience;

And patience, experience; and experience, hope.

— Romans 5:3–4 (KJV)

## IX. JURY DEMAND AND VERIFICATION

Plaintiff demands a trial by jury on all issues so triable.

Pursuant to Fed. R. Civ. P. 11, the undersigned certifies that the foregoing is warranted by

existing law and nonfrivolous argument, and that it is not interposed for any improper purpose.

**Respectfully submitted,**



Jeremy Lang

Pro Se Plaintiff

12818 Newport Way

Thornton, CO 80602

303-885-3299

lang_jeremy@comcast.net

Dated: August 8, 2025

**VERIFICATION**

I, Jeremy Lang, declare under penalty of perjury that the foregoing Complaint is true and correct
to the best of my knowledge, information, and belief.

Executed on August 8, 2025, in Thornton, Colorado.



Jeremy Lang

Plaintiff, Pro Se