**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
District Judge S. Kato Crews

Civil Action No. 1:25-cv-02464-SKC-SBP

JEREMY LANG,

Plaintiff,

v.

TRANSPORTATION SECURITY ADMINISTRATION and KRISTI L. NOEM in her official capacity as Secretary of the Department of Homeland Security,

Defendants.

---

**ORDER**

---

This matter is before the Court on Defendants Transportation Security Administration (TSA) and Kristi Noem's Motion to Dismiss Complaint (Dkt. 18). Plaintiff Jeremy Lang filed a response (Dkt. 24), Defendants filed a reply (Dkt. 26), and Plaintiff filed a sur-reply (Dkt. 26).

The following facts are taken from Plaintiff's Complaint (Dkt. 1). Plaintiff is a former employee of Defendant TSA, where he worked as a Transportation Security Officer (TSO) at Denver International Airport. Dkt 1 ¶ 14. Plaintiff held this position from October 2012 until December 27, 2017, when he was terminated. *Id.* This lawsuit stems from events surrounding his termination.

In July 2017, Plaintiff took a leave of absence to care for his son. *Id.* ¶ 81. TSA approved this leave under the Family Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 *et seq*. *Id.* ¶¶ 81, 64-65. While away from work, however, Plaintiff says he aggravated a pre-existing back injury, which left him "medically incapacitated."[1] *Id.* ¶ 81. So, he tried to reclassify 112 hours of his leave as leave without pay (LWOP) due to a personal injury, which is authorized by TSA policy.[2] *Id.* ¶¶ 69, 89; *see also id.* ¶¶ 82-89 (describing actions taken). But he claims that his requests "were not processed in accordance with [TSA] policy." *Id.* ¶ 67. TSA ultimately gave Plaintiff only eight hours of LWOP and eight hours of annual leave despite his being eligible for 240 hours of LWOP. *Id.* ¶ 89.

Through July, August, and into September, Plaintiff and TSA went back and forth on the reclassification of his leave. Plaintiff says he would submit forms and documentation (*id.* ¶¶ 101, 117, 122, 124, 143, 147, 152) and management would request additional documentation. *Id.* ¶¶ 94-96, 123, 151. In Plaintiff's view, management "was ignoring his repeated attempts to resolve" his leave issues, which supports his claims of "retaliatory oversight, administrative obstruction, and procedural misconduct" by his supervisors. *See id.* ¶ 142; *see also id.* ¶¶ 115, 118, 130.

---

[1] Plaintiff also suffers from post-traumatic stress disorder (PTSD). Dkt. 1, p. 16.

[2] TSA "authorizes up to six months of LWOP with appropriate medical justification." *Id.* ¶ 67.

As these events unfolded, TSA began scrutinizing Plaintiff's previous leave requests. On July 13, 2017, two managers submitted a "Management-Initiated Fitness-for-Duty Evaluation Request concerning Plaintiff" (*id.* ¶ 98) which he alleges was "retaliatory" and without justification. *Id.* ¶¶ 99-100. Although Plaintiff insists that he fully cooperated with TSA's evaluation, TSA "formally initiated an Attendance and Leave Case against Plaintiff" on July 21. *Id.* ¶¶ 100-01. One week later, TSA initiated an internal investigation concerning Plaintiff's "alleged Absence Without Leave (AWOL)." *Id.* ¶ 116. On August 14, TSA targeted Plaintiff with a second fitness-for-duty evaluation request. *Id.* ¶ 136.

Throughout this period, Plaintiff took prescribed benzodiazepine to manage his symptoms of PTSD. *Id.* ¶¶ 106, 145. But when TSA became aware of this fact, on October 17, 2017, the agency's Office of the Chief Medical Officer declared Plaintiff "unfit for duty" based on his prescribed use of a benzodiazepine. *Id.* ¶ 181. In response, Plaintiff submitted a "Return to Work Medical Questionnaire" that his treating physician completed and in which his physician deemed Plaintiff fit for light duty, his medication notwithstanding. *Id.* ¶ 192-93. Regardless, TSA told Plaintiff that "he was prohibited from returning to duty unless he obtained a formal letter from his treating physician, on official letterhead, confirming he was no longer taking the medication," and management began marking him as absent without leave. *Id.* ¶¶ 189-91. On November 6, Plaintiff's physician submitted a renewed recommendation, again requesting that Plaintiff be given a light-duty assignment

but limiting it to four weeks, which would be enough time for Plaintiff to taper off his medication. *Id.* ¶¶ 207-08. But again, TSA demurred. *Id.* ¶ 209.

Plaintiff requested an update on his employment status in mid-November 2017 and was told that "someone would contact him." *Id.* ¶ 215-16. But he claims to have received no updates until December 18, when he was notified of his proposed removal due to excessive absences without leave. *Id.* ¶¶ 216-19, 226. TSA finalized his removal on December 28. *Id.* ¶ 232.

Although not clear from the face of the Complaint, Plaintiff says that he initiated his "administrative exhaustion period" at some point in 2017, filing a formal charge of discrimination, retaliation, and wrongful termination with the Equal Employment Opportunity Commission's (EEOC) Office of Federal Operations (OFO). *Id.* ¶¶ 8, 100, 260. Plaintiff claims that, in October 2024, he was reviewing the documentation TSA submitted to the OFO when he "discovered material spoliation, including missing affidavit pages, corrupted sworn statements, and altered internal agency documents." *Id.* ¶ 261. Despite his attempts to alert the OFO to TSA's purported misconduct, Plaintiff says the OFO "failed to correct the record." *Id.* ¶ 262.

On October 8, 2025, Plaintiff brought this action, asserting various federal claims against the TSA and former Department of Homeland Security Secretary Krisi L. Noem in her official capacity. Dkt. 1. Specifically, Plaintiff's 140-page Complaint asserts 15 separate counts, including constitutional claims and claims brought under

the FMLA; the Civil Service Reform Act (CSRA), 5 U.S.C. §§ 1101 *et seq*.; and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq*. His claims include:

1. Denial of Procedural Due Process (Fifth Amendment)[;]
2. Prohibited Personnel Practices (5 U.S.C. § 2303(b)(10) and (b)(12))—Based on Discrimination for Non-Job-Related Conduct and Violation of Merit System Principles[;]
3. Improper Use of Medical Directive (TSA [Management Directive] 1100.63-1) [;]
4. Entitlement to De Novo Review Due to Administrative Flaws (5 U.S.C. § 7702) [;]
5. Interference with Federal Retirement Benefits (5 U.S.C. § 8474(e))[;]
6. Termination of FEHB Coverage (5 U.S.C. § 8901 *et seq*.)[;]
7. Spoliation & Administrative Misconduct—Due Process Violation Under the Fifth Amendment and Procedural Fairness Doctrine[;]
8. Retaliation for Protected Whistleblower Activity (5 U.S.C. § 2302(b)(8) and (b)(9)(A), (C), and (D))[;]
9. Rehabilitation Act Disability Discrimination (29 U.S.C. § 794, § 794(d))[;]
10. FMLA Interference (29 U.S.C. § 2615(a)(1))[;]
11. Retaliation for Exercising FMLA Rights (29 U.S.C. § 2615(a)(2))[;]
12. Hostile Work Environment Under the Rehabilitation Act (29 U.S.C. § 794 incorporating 42 U.S.C. § 12112(b)(1))[;]
13. Retaliation for Requesting Accommodations—Rehabilitation Act (29 U.S.C. § 794(d) incorporating 42 U.S.C. § 12203(a))[;]
14. Disability Discrimination—Rehabilitation Act (29 U.S.C. § 794(d), as Amended by the ADA Amendments Act of 2008)[; and]

15. Disability Discrimination—Disparate Treatment (29 U.S.C. § 794(d), Rehabilitation Act of 1973)[.]

*Id.* ¶¶ 273-355. Plaintiff also seeks declaratory and injunctive relief and compensatory damages. *Id.* at 136-39.

On December 23, 2025, Defendants filed the instant Motion, seeking dismissal of the Complaint on the basis that this Court lacks subject-matter jurisdiction over Plaintiff's claims. Dkt. 18, pp.15-26. Specifically, they argue the CSRA is the sole means by which an employee may challenge a federal personnel action and that, in turn, the Aviation and Transportation Security Act of 2001 (ATSA), 49 U.S.C. §§ 114 *et seq.*, preempts any CSRA claim against the TSA. *Id.* at 15-20. Accordingly, Plaintiff lacks any statutory basis for pursuing employment claims against the TSA. *Id.* Further, Defendants assert Plaintiff's remaining claims are either barred by the United States' sovereign immunity or they lack a cognizable cause of action. *Id.* at 15-18, 20-25. Alternatively, Defendants seek dismissal without prejudice under Civil Rules 8 and 41(b) based on Plaintiff's lengthy, "highly repetitive and confusing" Complaint. *Id.* at 25-26.

In response, Plaintiff argues that, in substance, his claims are not employment claims preempted by the CSRA; rather, they are "constitutional and record-integrity" claims, and Plaintiff asserts that dismissal here "would immunize unconstitutional process" from judicial oversight, "a result courts do not lightly infer absent a clear statement from Congress." Dkt. 24, pp.1-2, 2-5, 8-9. Plaintiff also suggests that Defendants should be estopped from invoking the ATSA because that theory was

never raised in the administrative proceedings below. *Id.* at 5-8. And he argues that, regardless, neither the ATSA nor the CSRA bar his claims. *Id.* at 10-23. Finally, he insists that his Complaint complies with the Federal Rules of Civil Procedure. *Id.* at 23-27.

## STATUTORY FRAMEWORK

### A. The Civil Service Reform Act

Congress enacted the CSRA, Pub.L. 95–454, 92 Stat. 1111 et seq. (codified, as amended in various sections of United States Code Title 5) to address employment claims by federal employees. The CSRA is "a comprehensive system for reviewing personnel action taken against federal employees." *Elgin v. Dep't of Treasury*, 567 U.S. 1, 5 (2012). "As many cases have held, the CSRA is the exclusive remedy when a federal employee challenges agency action." *Hadfield v. United States*, No. 18-cv-03155-MEH, 2019 WL 6038064, at *2 (D. Colo. Nov. 12, 2019) (citing *Hall v. Clinton*, 235 F.3d 202, 206 (4th Cir. 2000)); *see also Berry v. FAA*, No. 05-cv-00779-WYD-CBS, 2005 WL 8172979, at *5 (D. Colo. Aug. 16, 2005) ("The exclusive remedy for federal employees challenging agency action is the Civil Service Reform Act . . . ."); *Davis v. Thompson*, 367 F. Supp. 792, 800 (D. Md. 2005) (same).

On April 10, 1989, Congress amended the CSRA, Pub.L. 101–112, § 3(a)(13), 103 Stat. 21, 5 U.S.C. § 1201 *et seq.*, adding a provision to 5 U.S.C. § 1213 that protects federal employees who engage in whistle blowing. Moreover, the definition of prohibited personnel practices in 5 U.S.C. § 2302 was expanded to forbid retaliation

against employee whistle blowers by protecting "any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences—(i) any violation of any law, rule or regulation, or (ii) gross mismanagement, a gross waste of funds . . . . " 5 U.S.C. § 2302(b)(8)(A).

Accordingly, the CSRA provides a comprehensive claims procedure for addressing whistleblower complaints. *Fulkerson v. Comm'r*, SSA, No. 21-2001, 2021 WL 4429036, at *3 (10th Cir. Sept. 27, 2021) (unpublished) ("To the extent the claim is a freestanding federal whistleblower retaliation claim, it is preempted by the [CSRA]." (citing *Steele v. United States*, 19 F.3d 531, 532 (10th Cir. 1994) (holding that claims that "clearly complain of actions prohibited by the CSRA" are preempted by that statute))); *Ryan v. Donley*, 511 F. App'x 687, 690 (10th Cir. 2013) ("It appears that [plaintiff] was trying to bring a freestanding WPA claim. We agree with the district court, however, that there can be no such claim, due to preemption by the [CSRA]."); *Padilla v. Mnuchin*, No. 18-cv-02302-RBJ, 2020 WL 1852431, at *10 (D. Colo. Apr. 13, 2020) ("The CSRA preempts free-standing complaints of violation of the WPA"), *aff'd*, 836 F. App'x 674 (10th Cir. 2020).

**B. The Aviation and Transportation Security Act**

Congress enacted the ATSA in 2001, in relevant part to create a federal workforce to screen passengers and their property at commercial airports. 49 U.S.C. § 44935; 147 Cong. Rec. H8262, H8275 (Nov. 16, 2001). Under § 111(d) of the ATSA, "notwithstanding any other provision of law, the [TSA Administrator] may employ,

appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of Federal service for [federally employed security screeners].” 115 Stat. at 116 (codified as note to 49 U.S.C. § 44935). The ATSA further provides that, “notwithstanding any provision of law,” 49 U.S.C. § 44935(e)(2)(A), TSA screeners must “possess basic aptitudes and physical abilities,” *id.* § 44935(f)(1)(B), and “meet such other qualifications as the [TSA Administrator] may establish.” *Id.* § 44935(e)(2)(A)(iv).

Courts have generally interpreted the “notwithstanding” language to mean that the ATSA “displaces the CSRA (and all other federal personnel statutes or regulations) as the sole remedy for challenging personnel actions for TSA screeners.” *Hadfield*, 2019 WL 6038064, at *2 (citing 49 U.S.C. § 44935); *accord Scull v. Wolf*, No. 20-cv-01624-NYW, 2020 WL 7384842, at *5 (D. Colo. Dec. 16, 2020) (“Moreover, while the Tenth Circuit has not yet addressed this issue, ‘[e]very circuit to address [it] has agreed that the language of the ATSA precludes security screeners from bringing suit under certain of the federal employment statutes . . . including the Rehabilitation Act.” (quoting *Field v. Napolitano*, 663 F.3d 505, 513 (1st Cir. 2011))); *see also Eiler v. McAleenan*, 770 F. App’x 271, 273 (7th Cir. 2019)); *Coleman v. Sec’y, Dep’t of Homeland Sec.*, 649 F. App’x 128, 129-30 (3d Cir. 2016); *White v. Sec’y, Dep’t of Homeland Sec.*, 478 F. App’x 587, 588 (11th Cir. 2012), *cert. denied sub nom. White v. Napolitano*, 568 U.S. 1031 (2012); *Conyers v. Merit Sys. Prot. Bd.*, 388 F.3d 1380, 1382 (Fed. Cir. 2004) (holding that “notwithstanding” language in the ATSA “renders

inapplicable general federal statutes that otherwise would apply" to personnel management of TSA screeners).

### C. The Family and Medical Leave Act

Under the FMLA, federal employers must provide employees with periods of leave from work for certain enumerated circumstances. Title II of the FMLA, 5 U.S.C. §§ 6381, *et seq.*, governs federal civil-service employees employed for more than one year, whereas Title I, 29 U.S.C. §§ 2601, *et seq.*, governs federal civil-service employees not covered by Title II. Although Title I and Title II grant the same substantive rights to eligible employees, the latter (Title II) does not provide a right of action to enforce those substantive rights. *See Mattson v. Chertoff*, No. 07-cv-2432-PAB-BNB, 2009 WL 564289, at *5 (D. Colo. Mar. 5, 2009); *Berry v. FAA*, No. 05-cv-00779- WYD-CBS, 2006 WL 446080, at *2 (D. Colo. Feb. 21, 2006) ("Title I expressly provides a private right of action to remedy violations of the FMLA . . . . Title II does not contain such a provision." (internal citation omitted)). Accordingly, courts in this District have held that federal civil-service employees are precluded from bringing private causes of action to enforce FMLA rights because Congress has not expressly waived sovereign immunity from claims brought under Title II. *See Chertoff*, 2009 WL 564289, at *5 ("Because Title II of the FMLA does not expressly waive the government's sovereign immunity, [Plaintiff] is precluded from bringing a private action to enforce FMLA rights."); *Berry*, 2006 WL 446080, at *3 ("[A]s a Title II

employee, Plaintiff may not pursue his claims in this Court, which lacks subject-matter jurisdiction over his complaint.”).

## LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party claiming jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A court lacking jurisdiction “must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking.” *Id.* at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006).

A Rule 12(b)(1) motion to dismiss “must be determined from the allegations of fact in the complaint, without regard to mere conclusionary allegations of jurisdiction.” *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside

the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). If a party challenges the facts upon which subject matter jurisdiction depends, a court may not presume the truthfulness of the complaint's "factual allegations ... [and it] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

**B. Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The *Twombly-Iqbal* pleading standard requires courts take a two-prong approach to evaluating the sufficiency of a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007).

The first prong requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or are mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. The second prong requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly

suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible when the allegations, taken as true, "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard requires more than the sheer possibility a defendant has acted unlawfully. *Id.* If the allegations "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242,1252 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). The standard is a liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## ANALYSIS

"[S]overeign immunity shields the [federal] government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "Sovereign immunity is jurisdictional in nature." *Id.* Unless the government waives its immunity by consenting to be sued, courts lack subject matter jurisdiction to adjudicate claims brought against the federal government. *United States v. Mitchell*, 463 U.S. 206, 238 (1983) ("It is

axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). The waiver of sovereign immunity cannot be implied but rather must be unequivocally expressed. *Id.* at 219.

Defendants assert that Plaintiff's claims challenging the TSA's personnel decisions should be dismissed for lack of subject-matter jurisdiction. Dkt. 18, pp.15-25. Specifically, Defendants argue Plaintiff's non-FMLA claims are preempted by the CSRA and that both the CSRA and FMLA are preempted by the ATSA, which does not include a waiver of sovereign immunity. *Id.* Further, they assert Plaintiff fails to identify any cause of action for his remaining claims. *Id.* at 20, 22.

The Court first considers Defendants' arguments related to Plaintiff's non-FMLA employment-related claims.

### A. Preemption of Plaintiff's Employment-Related Claims

Defendants note that nearly all of Plaintiff's non-FMLA claims are centered on TSA's personnel decisions or its purported discrimination against Plaintiff. These include Count 1, which alleges that Plaintiff's employment termination deprived him of a protected property interest in his employment (Dkt. 1 ¶ 273-87); Count 2, which alleges Plaintiff was subjected to "adverse personnel actions," including "denial of leave, AWOL charges, and termination" (*id.* ¶¶ 288-301); Count 3, which alleges TSA improperly used or misapplied its own policy "to impose an adverse personnel action" (*id.* ¶¶ 302-04); Count 5, which alleges Plaintiff's "wrongful termination" resulted in a loss of employment benefits such as retirement savings (*id.* ¶¶ 308-10); Count 6,

which alleges that TSA wrongfully withdrew Plaintiff's coverage under the Federal Employee Health Benefits Program without "follow[ing] required procedures for continuation or transition of coverage" (*id.* ¶¶ 311-13); Count 8, which alleges Plaintiff was subjected to investigations, "misclassified medically supported absences," and, ultimately, termination in retaliation for protected whistle blower activity (*id.* ¶¶ 321-23); Count 9, which alleges Plaintiff was denied disability-related accommodations by TSA (*id.* ¶¶ 324-27); and Counts 12 through 15, which allege TSA subjected Plaintiff to a hostile work environment, retaliation for requesting accommodations, discrimination, and disparate treatment, respectively (*id.* ¶¶ 338-55).

Defendants argue that the United States' sovereign immunity bars the Court's jurisdiction over all these claims. Dkt. 18, pp.6-25. The reason for this is two-fold. First, all of Plaintiff's claims challenging TSA's employment decisions must be brought under the CSRA. *Id.* at 8-12. And second, all of Plaintiff's employment-related claims, whether subject to the CSRA or the Rehabilitation Act, are preempted by the ATSA, which does not waive sovereign immunity. *Id.* at 12-13.

***CSRA Claims.*** To start, the Court agrees that all of Plaintiff's claims related to TSA's personnel decisions are preempted by the CSRA. "It is beyond dispute that the CSRA was intended to provide the *exclusive procedure* for challenging federal personnel decisions." *Petrini v. Howard*, 918 F.2d 1482, 1485 (10th Cir. 1990) (emphasis added). This includes claims that an agency wrongfully terminated an

employee, made an adverse employment decision in retaliation for an employee's activity, and claims related to an agency's termination of an employee's benefits. *See Berry v. FAA*, 2005 WL 8172979, at *3-5 (D. Colo. Aug. 16, 2005) (alleging "wrongful removal" by TSA); *Petrini*, 918 F.2d at 1483 (BIA declined to renew contract "in retaliation for [plaintiff] expressing concerns about the conditions and practices" at her workplace); *Hadfield*, 2019 WL 6038064, at *1-2 (alleging TSA fraudulently and negligently terminated employee's FEHB benefits). In other words, the CSRA "is the exclusive remedy for federal employees challenging agency action." *Berry*, 2005 WL 8172979, at *5.

Here, the conduct underlying Plaintiff's claims clearly falls under the purview of the CSRA. *See* 5 U.S.C. § 2302 (defining "prohibited personnel practices" under the CSRA to include evaluations, benefits determinations, disability discrimination, and termination, among other things). And "federal personnel actions within the scope of the CSRA are 'preempted' by the CSRA." *Petrini*, 918 F.2d at 1484.

Plaintiff responds that the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq.*, provides an alternative source of jurisdiction for his constitutional claims.[3] Dkt. 24, p.10. But courts are equally united in finding that the CSRA precludes judicial review of TSA personnel decisions under the APA. *See, e.g.*, *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009)

[3] Plaintiff cites *Bowen v. Massachusetts*, 487 U.S. 879, 893-901 (1988), for a broad proposition regarding the APA's waiver of sovereign immunity. But *Bowen* does not contain the quotation Plaintiff cites.

("Federal employees may not circumvent the [CSRA]'s requirements and limitations by resorting to the catchall APA to challenge agency employment actions."); *Stephens v. Dep't of Health & Hum. Servs.*, 901 F.2d 1571, 1575-76 (11th Cir. 1990) (rejecting claim that agency's failure to promote plaintiff was actionable under the APA because the CSRA provides an exclusive remedy for such claims); *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir. 1982) ("We decline to allow an employee to circumvent [the CSRA's] detailed scheme governing federal employer-employee relations by suing under the more general APA.").

Having established that Plaintiff's agency action claims are preempted by the CSRA, the Court agrees with Defendants that the ATSA forecloses Plaintiff's ability to bring any such claim under the CSRA. This Court agrees with the several other courts in this District—and the nearly unanimous consensus of federal courts of appeal—that the ATSA "displaces the CSRA (and all other federal personnel statutes or regulations) as the sole remedy for challenging personnel actions for TSA screeners." *Hadfield*, 2019 WL 6038064, at *2 (citing 49 U.S.C. § 44935); *Scull*, 2020 WL 7384842, at *6 ("[T]he ATSA vests sole discretion to hire, fire, and set the terms, standards, and conditions of employment for the TSO workforce with the TSA—notwithstanding other federal laws."); *Mattson v. Napolitano*, No. 09-cv-02024, 2010 WL 11553697, at *1 (D. Colo. Sep. 15, 2010) ("The TSA is not bound by [federal employment discrimination statutes] when making employment decisions regarding security screeners."); *e.g.*, *Connors v. United States*, 863 F.3d 158, 161-62 (2d Cir.

2017) (noting "a developing consensus in favor of ATSA preclusion of judicial action" reviewing any personnel action involving security screeners). And the sole remedies available under the ATSA are those established by the TSA Administrator. *See* ATSA, Pub. L. 107-71, Title I, § 111(d), 115 Stat. 620 (2001) (codified as a note to 49 U.S.C. § 44935) ("Notwithstanding any other provision of law, the Under Secretary of Transportation for Security may employ, appoint, discipline, terminate, and fix the compensation, terms, and conditions of employment of" TSA security screeners.).

But Plaintiff insists that this lawsuit "is not a challenge to TSA's substantive employment discretion"; it is instead "a constitutional and record-integrity case." Dkt. 24, p.2. He argues that neither the CSRA nor the ATSA "divest this Court of jurisdiction to adjudicate Plaintiff's colorable Fifth Amendment due-process and record-integrity claims." *Id.* p. 7. But Plaintiff cannot circumvent the CSRA's "comprehensive" preemption simply by casting his personnel-based claims in a constitutional light; the CSRA's "exclusivity does not turn on the constitutional nature of an employee's claim, but rather on the type of the employee and the challenged employment action."[4] *Elgin v. Dep't of Treasury*, 567 U.S. 1, 15 (2012);

---

[4] Plaintiff cites *American Federation of Government Employees v. Stone*, 502 F.3d 1027 (9th Cir. 2007), for the proposition that "[c]ourts interpreting ATSA have likewise rejected the notion that Congress intended to foreclose constitutional review." Dkt. 24, ¶ 6. But *Stone* involved a probationary screener who, by virtue of that status, had "no administrative scheme that would afford [plaintiff] . . . with any administrative form in which to seek relief for [their] discharge." 502 F.3d at 1030. Plaintiff had such a forum in his EEOC appeal. Dkt. 1, ¶ 314. Further, the Tenth Circuit has implicitly rejected *Stone*'s reasoning. *See Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 743 n.11 (10th Cir. 2021) (noting *Stone*'s reasoning but

*accord Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1020 (9th Cir. 1999) ("[W]e have consistently held that the CSRA preempts *Bivens* actions and other suits for constitutional violations arising from governmental personnel actions."); *Tompkins v. U.S. Dep't of Veterans Affs.*, 16 F.4th 733, 743 (2021) (noting the CSRA "is a comprehensive federal employment scheme intended to displace judicial remedies," including for constitutional claims); *Arron v. United States*, Nos. 96-2086, 96-2288, 1997 WL 265103, at *6 (10th Cir. May 20, 1997) (holding plaintiff's "constitutional claims are preempted by the CSRA"). And to the extent Plaintiff seeks damages from TSA for an alleged constitutional violation, the Supreme Court has rejected such a remedy against federal agencies, generally.[5] *Meyer*, 510 U.S. at 486 ("An extension of *Bivens* to agencies of the Federal Government is not supported by the logic of *Bivens* itself.").

Plaintiff also argues that Defendants should be estopped from raising their CSRA or ATSA arguments because they were not raised during the administrative proceedings below. Dkt. 24, pp.7-8. But "'a litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action'—even on appeal."

---

finding the Tenth Circuit was bound by prior Circuit caselaw establishing that the CSRA "precluded judicial review of agency employment decisions even if the employee's complaint raised constitutional claims and merely sought injunctive relief").

[5] The Complaint is clear that Plaintiff does not seek a remedy against Secretary Noem under *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), and that "all [damages] relief is directed at the agency level." Dkt. 1, ¶ 10.

*Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)).

The Court lacks jurisdiction over Count 8, in which Plaintiff alleges "retaliation for protected whistleblower activity" under §§ 2302(b)(8) and 2302(b)(9) of the CSRA, for an additional reason. Dkt. 1 ¶¶ 321-23. Whistleblower claims under those two subsections must be brought before the Merit Systems Protection Board (MSPB), and any appeal of an MSPB decision involving claims under those subsections "shall be filed in the United States Court of Appeals for the Federal Circuit." 5 U.S.C. § 7703(b)(1)(A). Accordingly, the Court lacks jurisdiction over Count 8 on this additional basis.

***Rehabilitation Act claims.*** The Court also agrees with Defendants that Plaintiff's Rehabilitation Act claims are preempted by the ATSA.

The balance of Plaintiff's non-FMLA employment claims are brought under the Rehabilitation Act. *See* Dkt. ¶¶ 338-55. "[F]ederal employees are expressly excluded from coverage under the [Americans with Disabilities Act], and [their] exclusive remedy is under the Rehabilitation Act" for employment-related disability claims. *Padilla v. Mnuchin*, 836 F. App'x 674, 676 n.1 (10th Cir. 2020) (citations omitted). Here, Plaintiff alleges TSA subjected him to a hostile work environment because he requested disability-related accommodations, discriminated against him, retaliated against him by penalizing him because of his disability, and treated him less fairly than nondisabled coworkers. *See id.*

But as with the CSRA, there is a consensus among federal courts that the ATSA preempts disability discrimination claims under the Rehabilitation Act. *See Scull*, 2020 WL 7384842, at *5 ("[W]hile the Tenth Circuit has not yet addressed the issue, '[e]very circuit to address [it] has agreed that the language of the ATSA precludes security screeners from bringing suit under . . . the Rehabilitation Act.'") (quoting *Field v. Napolitano*, 663 F.3d 505, 512 (1st Cir. 2011)); *Mattson*, 2010 WL 11553697, at *1 (holding the "TSA is not bound by the Rehabilitation Act when making employment decisions regarding security screeners"); *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011) ("We now join every other circuit to have considered the question and conclude that the plain language of the ATSA preempts application of the Rehabilitation Act to security screeners.").

The Court recognizes Plaintiff alleges enduring significant hardship, including being forced to choose between his continued employment and receiving appropriate healthcare as determined by his physician. And it can appreciate the time and effort it took to bring those claims before a federal court, and the frustration of being told that, after all that effort, Plaintiff has no remedy. But the United States, "as a sovereign nation, has the authority to either assert, or waive, its immunity to lawsuit." *Hadfield*, 2019 WL 6038064, at *2. And here, "[t]his concept of sovereign immunity precludes federal court jurisdiction in the absence of a specific waiver." *Id.*

### B. No Private Right of Action Under the FMLA

Defendants further assert Plaintiff is without a remedy for his FMLA claims because he is subject to Title II, which does not provide a right of action for federal employees. Dkt. 18, pp.14-15. The Court agrees.

"Titles I and II [of the FMLA] grant employees equivalent rights regarding leave. However, permanent, federal civil service employees under Title II have no direct right of action to pursue claims under the FMLA in federal district court." *Berry*, 2005 WL 8172979, at *5; *see also Mattson v. Chertoff*, No. 07-cv-02432-PAB-BNB, 2009 WL 564289, at *5 (D. Colo. Mar. 5, 2009) ("Because Title II of the FMLA does not expressly waive the government's sovereign immunity, all of the circuit courts addressing the issue have held that a Title II employee is precluded from bringing a private action to enforce FMLA rights.").

Plaintiff brings several claims under the FMLA, including claims under Count 3, which allege that TSA "interfere[d] with rights under the FMLA" by failing to provide Plaintiff accommodations based on his prescribed use of benzodiazepines (Dkt. 1 ¶ 303), and Counts 10 and 11, which allege TSA impeded Plaintiff's exercise of his rights under the FMLA and then retaliated against him for exercising those rights. *Id.* ¶¶ 328-37.

Turning to the factual allegations in Plaintiff's Complaint, the conduct giving rise to Plaintiff's claims occurred well after he served as a TSA employee for one year. Plaintiff was hired in October 2012 (*id.* ¶ 14), but the earliest misconduct he alleges

occurred in 2015. *See id.* ¶¶ 20-31. By that point, Plaintiff was an "employee" under Title II, having "completed at least 12 months of service." 5 U.S.C. § 6381(1). Accordingly, Plaintiff "has no direct right of action to pursue [an FMLA] claim in federal district court." *Berry*, 2005 WL 8172979, at *5; *accord Chertoff*, 2009 WL 564289, at *5 (same).

**C. No Cognizable Legal Claim**

Defendants argue Plaintiff's remaining claims should be dismissed under Rule 12(b)(6) because Plaintiff fails to identify a cognizable legal theory. Dkt. 18, pp.20, 22. The Court agrees.

Plaintiff's Count 4, "Entitlement to De Novo Review Due to Administrative Flaws," appears to be a request for this Court to review the underlying EEOC decision under the *de novo* standard. Dkt. 1 ¶¶ 305-07. In support, Plaintiff cites a provision of the CSRA. *See id.* (citing 5 U.S.C. § 7702). The Court agrees with Defendants that Count 4, to the extent it is not preempted by the ATSA as explained above, merely identifies an applicable standard of review; it does not state a cognizable legal claim. Because Plaintiff has "fail[ed] to state a claim upon which relief can be granted," Count 4 is dismissed without prejudice. Fed. R. Civ. P. 12(b)(6).

Plaintiff's Count 7 alleges the TSA spoliated evidence in his EEOC appeal by failing to acknowledge critical documents, selectively reviewing documents, "falsely describ[ing] documents, and otherwise "corrupt[ing]" and "alter[ing]" the agency's record of Plaintiff's termination. Dkt. 1 ¶¶ 314-20. As a result, Plaintiff says the TSA

"impaired [his] ability to fully litigate or appeal his claims," thus violating "the procedural fairness doctrine" and depriving him of a property interest in continued federal employment in violation of the Due Process Clause of the Fifth Amendment.[6] *Id.*

Reviewing the Complaint, the Court agrees with Defendants that Count 7 must fail because Plaintiff identifies no legal authority creating a valid right of action for his claims. *See id.* ¶¶ 314-20. Indeed, federal courts have generally found that the nonbinding nature of EEOC proceedings renders them per se incapable of giving rise to a Fifth Amendment injury. "Because EEOC determinations are both non-final and non-binding, courts have held that they may not be challenged under . . . the Due Process Clause." *Harris v. McDonald*, 2017 WL 4217101, at *6 (D.D.C. Sep. 19, 2017); *see also Georator Corp. v. EEOC*, 592 F.2d 765, 768 (4th Cir. 1979) ("No such finality exists with respect to the EEOC's determination of reasonable cause. Standing alone, it is lifeless, and can fix no obligation nor impose any liability on the plaintiff."); *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 18 (1st Cir. 1979) ("Because a determination of reasonable cause is nonbinding and nonfinal, investigative and not adjudicative, we cannot say that the failure to receive such a determination represents any loss that implicates the Due Process Clause.").

Nonetheless, Plaintiff cites two cases that he asserts "require judicial scrutiny" for "procedural defects and evidentiary irregularities"—*Walkingstick Dixon v. Okla.*

[6] Plaintiff also seeks *de novo* review of the EEOC's decision. Dkt. 1 ¶ 317.

*ex rel. Reg'l Univ. Sys. of Okla. Bd. of Regents*, 125 F.4th 1321 (10th Cir. 2025) (alleging discrimination and retaliation under Title VII and retaliation under the FMLA) and *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (alleging discrimination under Title VII). Dkt. 1 ¶ 317. But as noted above, Plaintiff has no right of action under the FMLA, and he does not allege any cognizable claim under Title VII. *See Morrison v. Beemer*, 2021 WL 4710304, at *3 (D. Colo. Oct. 7, 2021) ("Title VII does not support claims for disability discrimination."); *Omogbehin v. Cino*, 485 F. App'x 606, 609 (3d Cir. 2012) (same); *Snay v. USPS*, 31 F. Supp. 2d 92, 100 (N.D.N.Y. 1998) (same). Plaintiff also asserts that Count 7 "warrant[s] judicial scrutiny under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)." Dkt. 1 ¶ 317. But *Chambers* concerned only whether district courts have the inherent authority to impose attorney's fees as a sanction for bad-faith conduct. *See generally* 501 U.S. 32.

In sum, Plaintiff does not identify a cognizable cause of action for Counts 4 and 7. The Court thus dismisses those claims without prejudice. Further, because this marks the disposition of all Plaintiff's claims, the Court does not reach Defendants' arguments under Civil Rules 8 and 41(b).

* * *

For the reasons shared above, Defendants' Motion to Dismiss Complaint (Dkt. 18) is **GRANTED**, and Plaintiff's Complaint (Dkt. 1) is **DISMISSED without prejudice**.

The Clerk of Court shall enter judgment and close this case.

DATED: September 29, 2026.

BY THE COURT:

S. Kato Crews
United States District Judge